IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel., JOHN BECKER, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:05-CV-0627-L** (consolidated with Civil Action No. 3:05-CV-2301-L) |
| TOOLS & METALS, INC., TODD LOFTIS, LOCKHEED MARTIN CORPORATION, and BYRON YOUNG, et al., | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Defendant Linda Loehr's Motion to Dismiss [Government's] Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (doc. 97), filed March 27, 2008; (2) Defendant Lockheed Martin Corporation's Motion to Dismiss the Government's Complaint (doc. 117), filed April 30, 2008; and (3) Motion by the United States to Strike New Argument Presented in Reply Brief of Defendant Linda Loehr to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (doc. 150), filed June 25, 2008.[1]

After carefully considering the motions, briefs, record, and applicable law, the court **grants** Defendant Linda Loehr's Motion to Dismiss [Government's] Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (doc. 97); **denies** Defendant Lockheed Martin Corporation's Motion to

---

[1]The court's requirements for courtesy copies include all dispositive motions, responses, replies, and appendices therefor, and any filings more than twenty-five pages in length. Every notice of electronic filing includes a link to a document stating each judge's requirements for courtesy copies. Nonetheless, despite the number of lengthy, dispositive motions filed by the parties in this case (and the repeated requests for extensions of page limitations), several parties failed entirely to send any courtesy copies to the court. In the future, **all parties must meet the court's courtesy copy requirements**.

**Memorandum Opinion and Order – Page 1**

Dismiss the Government's Complaint (doc. 117); and **denies** Motion by the United States to Strike New Argument Presented in Reply Brief of Defendant Linda Loehr to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (doc. 150).[2]

## I. Factual and Procedural Background

This *qui tam* action was originally filed by relator John Becker ("Becker") on March 30, 2005. Becker alleged violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729a(1) and (2), by Defendant Tools and Metals, Inc. a/k/a TMI Integrated Services ("TMI") based upon TMI's conduct as a government subcontractor with respect to its tool sales to Lockheed-Martin Company ("Lockheed") in Fort Worth, Texas, and Marietta, Georgia. On September 26, 2005, relator Robert B. Spencer ("Spencer") filed a separate *qui tam* complaint against Lockheed, Byron Young ("Young"), TMI, and Todd Loftis ("Loftis"). Civil Action No. 3:05-CV-2301-L. Spencer also alleged violations of the FCA. On December 9, 2005, the court consolidated the actions brought by Becker and Spencer.

The government sought, and was granted, several extensions of its deadline to intervene in the *qui tam* actions. During this time, the relators filed their *Qui Tam* Plaintiffs' Joint Amended Complaint on May 24, 2007, adding additional claims and Defendants. On October 30, 2007, the government elected to intervene. The government filed its Complaint of the United States of America ("Government Complaint"), alleging claims against TMI, Loftis, Lockheed, and Linda Loehr ("Linda Loehr"). The government asserted claims of violations of the FCA, breach of contract, unauthorized payment to Lockheed, violations of the Truth-in-Negotiations Act, 10 U.S.C.

---

[2]Also pending, but not addressed in this memorandum opinion and order, are the government's motion for redactions on certain documents still under seal and Defendants' motions to dismiss the Relators' Complaint. The court will address these motions by subsequent orders.

§ 2306(f), unjust enrichment, and negligence. The government declined to intervene on Spencer's bid collusion allegations, Becker's conspiracy allegations under section 3729(a)(3), and Becker's claims predating the Master Agreement. The government also declined to intervene on any claims against William C. Johnson ("Johnson"), TMI Integrated Holdings Corporation ("TMI Integrated"), Greentree Capital LP ("Greentree"), Robert Chartener ("Chartener"), Harriet Stroh ("Stroh"), or Young.

On March 28, 2008, the relators filed their live pleading, *Qui Tam* Plaintiffs' Second Joint Amended Complaint ("Relators' Complaint"). In this complaint, Becker and Spencer allege claims against TMI, TMI Integrated, Loftis, Johnson, Linda Loehr, Lockheed, Young, Stroh, Greentree, and Chartener. All of their claims are for various violations of the FCA.

## II. Legal Standards

### A. Rule 12(b)(1) – Subject Matter Jurisdiction

A federal court has subject matter jurisdiction over cases "arising under" the Constitution, laws, or treaties of the United States, or in cases where the matter in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.; Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject

matter jurisdiction over a case. *See Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*").

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.), *cert. denied*, 534 U.S. 1127 (2002); *see also Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

### B. Rule 12(b)(6) – Failure to State a Claim

To defeat a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to

relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). A court, however, is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### III. Analysis

#### A. Linda Loehr's Motion to Dismiss Government Complaint

The government brings only negligence and unjust enrichment claims against Linda Loehr and she has moved to dismiss these claims. She contends that this court lacks personal jurisdiction over her and, in the alternative, that the government has failed to state a claim upon which relief can be granted. The government responds that Linda Loehr has sufficient contacts with the state of Texas to warrant the exercise of personal jurisdiction over her and that it has stated claims upon which relief can be granted against her.

Before reaching the substantive arguments raised by the parties, the court considers the Motion by the United States to Strike New Argument Presented in Reply Brief of Defendant Linda Loehr to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (doc. 150). The government moves to strike what it contends is a new argument raised by Linda Loehr for the first time in her reply brief or, in the alternative, seeks leave to file a surreply. The court **denies** the government's motion. The court will not consider new arguments and cases raised for the first time in Linda Loehr's reply brief, and it determines that allowing further briefing on this issue is unwarranted.

Assuming *arguendo* that the court has personal jurisdiction over Defendant Linda Loehr, the court considers her arguments that the government has failed to state a claim upon which relief can be granted. Linda Loehr argues that the unjust enrichment claim fails because the government cannot pursue such a claim unless there is a basis to pierce the corporate veil. She contends that the negligence claim fails because the government's contention that she failed to uncover fraud fails to

state a claim upon which relief can be granted. The government argues that both of these common law claims state a claim upon which relief can be granted.

### 1. Unjust Enrichment

The court considers first the unjust enrichment claim. The government alleges that Linda Loehr was unjustly enriched through disbursements of TMI dividends and sale proceeds from the Gerald G. Loehr Separate Property Trust (the "Trust") of approximately $5 million. Gov't Compl. ¶ 116. It contends that Linda Loehr failed to exercise reasonable care in her duties as officer, director, and beneficial owner of TMI. *Id*. Linda Loehr argues that there is no basis to pierce the corporate veil, and therefore no unjust enrichment claim can be brought against her.

In *United States ex rel. Purcell v. MWI Corp.*, a district court in the District of Columbia held that common law claims, including an unjust enrichment claim, brought against a stockholder failed unless the government could successfully pierce the corporate veil. 520 F. Supp. 2d 158, 173 (D.D.C. 2007). The court noted that "[t]he plaintiff may only rely on an inference that stockholder by means of his corporate entity received a benefit if the plaintiff shows that the stockholder abused the corporate form, using it as his own alter ego to perpetrate fraud – in which case, the corporate veil should be pierced." *Id*. (citation omitted).

The government contends that it need only show that Linda Loehr was unjustly enriched to recover from her on this theory. It cites *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603 (8th Cir. 1999). That case considered whether an unjust enrichment claim can lie where there is an express contract between the United States and the defendant corporation. *Id*. at 604-605. While the court did hold that the corporate defendant and individual defendant were jointly and severally liable under a theory of unjust enrichment, the opinion does not discuss specific acts taken

by the individual or whether the corporate veil had been pierced. The same is true of a case from this court cited by the government, *United States v. Medica-Rents Co.*, 285 F. Supp. 2d 742, 777 (N.D. Tex. 2003) (Means, J.), *aff'd*, 2008 WL 3876307 (5th Cir. 2008). This court finds that *Applied Pharmacy* and *Medica-Rents* are inapposite to Linda Loehr's arguments.

In the alternative, the government argues that the facts support piercing the corporate veil in this case. Citing California law, it contends that under the theory of alter ego liability, Linda Loehr can be held liable. It argues that Linda Loehr received between 90 and 100 percent of the dividends of TMI, which were tainted by fraud, and that she was a director of the board of TMI and actively participated in its management. It further argues that Linda Loehr was on notice of the fraud, yet she reasonably failed to stop it.

In reply, Linda Loehr argues that there are no allegations that anyone, including her, abused the corporate form. Moreover, she contends that she was not an actor in the fraud and the government does not even allege that she participated in the fraud.

The court determines that the government must pierce the corporate veil to hold Linda Loehr accountable under a theory of unjust enrichment for acts done by the corporate entity. The government has failed to allege facts to support a finding of alter ego liability on Linda Loehr under California law. Accordingly it has failed to state a claim against Linda Loehr for unjust enrichment, and this claim is dismissed with prejudice.

    **2.**    **Negligence**

The government alleges that Linda Loehr "breached her duty of care to the United States by failing to exercise reasonable care in performing her duties as an officer, director, and beneficial owner of TMI" and seeks $15 million in damages on this claim. Gov't Compl. ¶ 114. Linda Loehr

moves to dismiss this claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and contends that it is a novel claim because the government does not allege that she participated or even knew of the alleged fraud, but rather that she failed to uncover the fraud. She contends that such a theory would transform director and officer liability, holding individuals liable even if they did not personally breach any duty. She argues that, under California law, directors and officers are only liable for a corporation's torts if they participate in the tort or authorize or direct such action. She contends that she was under no duty to the government and therefore did not breach any duty.

The government responds that under the factors set forth by California law, Linda Loehr did have a legal duty, and that imposing a duty to act reasonably upon directors and officers in situations such as this serves the public interest. It argues that Linda Loehr was on notice of the fraud and her only response was to seek a response for the alleged perpetrator, Loftis. The government describes this response as a negligent investigation, which amounts to a breach of a duty to the United States.

The court has reviewed the arguments and the cases cited by the parties and determines that the government's claim that Linda Loehr breached a duty to it by her failure to investigate the alleged fraud fails to state a claim upon which relief can be granted because there is no legal duty alleged to have been breached. Accordingly, the court dismisses with prejudice the negligence claim against Linda Loehr. For these reasons, the court **grants** Defendant Linda Loehr's Motion to Dismiss [Government's] Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (doc. 97).

### B. Lockheed's Motion to Dismiss the Government's Complaint

Defendant Lockheed Martin moves to dismiss the Government's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Lockheed moves to dismiss the government's FCA claims against it pursuant to Rule 12(b)(6), and argues that these claims are

barred by the doctrines of judicial and collateral estoppel. Defendant also argues that the government's remaining claims against it should be dismissed for lack of subject matter jurisdiction. The government opposes Defendant's motion and argues that its FCA claims are not estopped and that this court has jurisdiction over the remaining claims because they arise from the same facts as the fraud claims.

### 1. FCA Claims

Lockheed argues that the government's position in the criminal prosecution of Loftis that Lockheed was a victim of Loftis and TMI is inconsistent with the FCA claims it now brings, and that they are therefore barred by the doctrines of judicial or collateral estoppel. The government contends that these doctrines are not applicable to the facts in this case, and that the government's position in the criminal prosecution of Loftis and this civil case are consistent.

Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position. *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir. 1988). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689 (1895). The doctrine's primary purpose is to protect the integrity of the judicial process by preventing parties from "playing fast and loose with the courts to suit the exigencies of self interest." *Brandon*, 858 F.2d at 268 (internal quotation marks, parentheses, and citations omitted). There are two general limitations on the doctrine of judicial estoppel: (1) the party is judicially estopped only

if its position is clearly inconsistent with the previous one; and (2) the court must have accepted the previous position. *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999).

Collateral estoppel, also known as issue preclusion, "applies to prevent issues of ultimate fact from being relitigated between the same parties in a future lawsuit if those issues have once been determined by a valid and final judgment." *Vines v. University of Louisiana at Monroe*, 398 F.3d 700, 705 (5th Cir. 2005), *cert. denied*, 546 U.S. 1089 (2006) (citing *Ashe v. Swenson,* 397 U.S. 436, 443 (1970); Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between parties, whether on the same or a different claim.") (cited in *Grogan v. Garner,* 498 U.S. 279, 284 (1991))). Collateral estoppel "is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City School Bd.*, 403 F.3d 272, 290 (5th Cir.), *cert. denied*, 546 U.S. 933 (2005) (citing *Southmark Corp. v. Coopers & Lybrand (In re: Southmark Corp.),* 163 F.3d 925, 932 (5th Cir. 1999), *cert. denied*, 527 U.S. 2004); *see Falcon v. Transportes Aeros de Coahuila. S.A.* 169 F.3d 309, 312 (5th Cir. 1999).

In addition to these three elements, the court must also determine that there is no special circumstance that would make it unfair to apply the doctrine of collateral estoppel. *Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387, 391 (5th Cir. 1998), *cert. denied*, 526 U.S. 1034 (1999). "[A] right, question, or fact distinctly put in issue and directly determined as a ground of recovery by a court of competent jurisdiction collaterally estops a party or his privy from relitigating the issue in a subsequent action." *Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860, 862 (5th

Cir. 1985) (quoting *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982)). If a litigant has fully and fairly litigated an issue, third parties unrelated to the original action can bar the litigant from relitigating that same issue in a subsequent suit through the principle of nonmutual collateral estoppel. *See United States v. Mollier,* 853 F.2d 1169, 1175 n.7 (5th Cir. 1988). While complete identity of all parties is not required, the party against whom the collateral estoppel would be applied generally must either have been a party, or privy to a party, in the prior litigation. *Vines*, 398 F.3d at 705.

Lockheed argues that both estoppel doctrines apply to the government's FCA claims against it. It contends that the government's prior representations in the criminal case that Lockheed is a victim of Loftis and TMI's fraud is inconsistent with its position in this case that Lockheed is also liable to the government for fraud. Specifically, Lockheed points to the factual resume, plea agreement, statements by the court during the sentencing hearing, and judgment from the Loftis criminal case. It argues that the government is seeking damages against Lockheed now because Loftis has been incarcerated and TMI has filed for bankruptcy.

The government responds that its position in the criminal case is consistent with its position in this case; Lockheed was a victim of TMI and Loftis's fraud, but Lockheed was on notice no later than May 23, 2000 of the fraud, and it failed to take steps to prevent the fraud. It argues that it is only seeking damages from Lockheed's conduct after it was on notice of the fraud because it received an e-mail from relator Becker alleging fraud, and Lockheed managers complained about price gouging by TMI within a few months of the implementation of the Master Agreement in 1998. Gov't Compl. ¶¶ 31-32. It also points out that Defendant has not cited, and cannot, a single case that held that the government can be estopped based on events that occurred in a criminal proceeding.

The court has reviewed the evidence presented by Lockheed and before reaching the specific elements of either doctrine determines that Defendant has failed to establish any inconsistency in the government's position. While it is indisputable that the government referred to Lockheed as a "victim" in the criminal case, none of the documents or statements made by the government can be read to state that Lockheed did not engage in any conduct that could give rise to a FCA claim. Loftis's admission that he misled Lockheed is not necessarily inconsistent with the government's position that Lockheed failed to investigate upon learning of the fraud. Moreover, the government, even in a filing with the court identifying Lockheed as a victim, stated that it would "participate in civil damage claim litigation following this prosecution and without prejudice herein to those claims against those parties the government will assert its civil monetary damages therein, based on civil tort/contract causes of action." Def.'s App. 17. Lockheed does not argue or present evidence that the government ever affirmatively agreed not to pursue it in a civil case. Finally, Loftis's own statement that "there are [no] other responsible parties," is not a statement of the government and should not be read to extend to the civil liability of other entities. *Id*. at 72.

Given that the court determines that the government has not taken inconsistent positions in the criminal prosecution of Loftis and in this case, the court determines that there is no basis for precluding the government's claims against Lockheed under a theory of judicial or equitable estoppel. Accordingly, the court finds that the government has stated a claim upon which relief can be granted for its FCA claims against Lockheed.

### 2. Remaining Claims

Lockheed also argues that the breach of contract, unauthorized payment, and Truth-in-Negotiations Act claims (the "remaining claims") asserted against it by the government are barred

by the Contract Disputes Act, 41 U.S.C. § 601, *et seq*. It contends that these are independent claims and that this court does not have jurisdiction over them. It argues that the CDA's fraud exception does not extend to these claims, which are contract disputes totally separate and apart from the government's fraud claims against Lockheed. The government argues that the court has supplemental jurisdiction over the remaining claims and that these claims fall within the CDA's fraud exception.

Pursuant to the CDA, certain claims between the United States and government contractors are subject to its statutory scheme to resolve contractual conflicts. Initially, such claims must be decided by the contracting officer. 41 U.S.C. §§ 601(3), 605(a). An appeal of this decision may be taken to an agency board of contract appeals or to the United States Court of Federal Claims. *Id*. at §§ 607(d), 609(c). "The review procedures under the CDA are exclusive of jurisdiction in any other forum. Thus, federal district courts lack jurisdiction over government claims against contractors which are subject to the CDA." *United States v. J & E Salvage Co.*, 55 F.3d 985, 987 (4th Cir. 1995).

The government does not dispute the statutory scheme for decisionmaking under the CDA; the parties' dispute is whether the remaining claims fall within the statute's exception for fraud. 41 U.S.C. § 605(a) ("This section shall not authorize any agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud."). Defendant contends that these additional claims are unrelated to the fraud claims brought pursuant to the FCA and therefore do not fall within the fraud exception. It argues that the FCA claims are based upon TMI passing inflated costs onto the government, but that the remaining claims consider whether a certain contract provision between Lockheed and TMI was lawful. Because of this distinction, Lockheed argues that these remaining

claims do not arise from the same actions that underlie the fraud claims. Lockheed also argues that the different damages sought by the government – TMI's inflated costs for the FCA claims versus percentage markups for the remaining claims – also demonstrate that the claims do not meet the fraud exception.

The government responds that the fraud exception is more broad and includes any claim "involving fraud." It contends that the case authority cited by Defendant is inapposite, and that the same events, transactions, and contracts that give rise to the FCA claims also give rise to the remaining claims. The government argues that the challenged provision of the Master Agreement is part of its contention that Lockheed was reckless in auditing TMI, and that the mechanism by which Lockheed committed fraud and overcharged the government is identical. Moreover, it argues that its proof for all of the claims against Lockheed will require similar witnesses and documents.

The court has reviewed the parties' arguments and cited cases and determines that the remaining claims fall within the fraud exception to the CDA and therefore it has subject matter jurisdiction over these claims. In this case, the government has brought FCA and other claims against Lockheed. The government alleges that Lockheed should have uncovered the fraud that was perpetrated, in part, by the provisions of the Master Agreement that it challenges. The court therefore determines that it has jurisdiction over the remaining claims because "the events, transactions, and contracts at issue in the lawsuit give rise to fraud allegations." *United States v. Rockwell Int'l Corp.*, 795 F. Supp. 1131, 1135 (N.D. Ga. 1992); *see also United States v. Unified Indus., Inc.*, 929 F. Supp. 947, 950-51 (E.D. Va. 1996). The court finds Lockheed's reliance on *United States v. Marovic*, 69 F. Supp. 2d 1190 (N.D. Cal. 1999), unpersuasive because the court found that there was no allegation of fraud against the defendants against whom the contract claims

were brought. The court finds that the government's remaining claims against Lockheed involve fraud; accordingly, the CDA fraud exception applies, and the court has subject matter jurisdiction over these claims. For these reasons, the court **denies** Defendant Lockheed Martin Corporation's Motion to Dismiss the Government's Complaint (doc. 117).

## IV. Conclusion

For the reasons stated herein, the court **grants** Defendant Linda Loehr's Motion to Dismiss [Government's] Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (doc. 97); **denies** Defendant Lockheed Martin Corporation's Motion to Dismiss the Government's Complaint (doc. 117); and **denies** Motion by the United States to Strike New Argument Presented in Reply Brief of Defendant Linda Loehr to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (doc. 150). The court **dismisses with prejudice** the government's unjust enrichment and negligence claims against Defendant Linda Loehr.

**It is so ordered** this 5th day of March, 2009.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge