IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | § | |
| JOHN BECKER, et al., | § | ECF |
| | § | |
| Plaintiffs, | § | Civil Action No. 3:05-CV-0627-L |
| | § | (Consolidated with 3:05-CV-2301-L) |
| v. | § | |
| | § | |
| TOOLS & METALS, INC., et al., | § | |
| | § | |
| Defendants. | § | |

**UNITED STATES OF AMERICA'S RESPONSE AND BRIEF
IN OPPOSITION TO DEFENDANT LOCKHEED MARTIN
CORPORATION'S MOTION TO COMPEL**

To the Honorable United States Magistrate Judge:

Respectfully submitted,

TONY WEST
Assistant Attorney General

JAMES T. JACKS
United States Attorney

s/ J. Scott Hogan
J. Scott Hogan
Assistant United States Attorney
Texas Bar No. 24032425
Burnett Plaza, Suite 1700
801 Cherry Street, Unit 4
Fort Worth, Texas 76102-6882
Telephone: 817. 252.5271
Facsimile: 817.978.6350
scott.hogan@usdoj.gov

i

s/Russell B. Kinner
Joyce R. Branda
Michael D. Granston
Russell B. Kinner
Elizabeth A. Strawn
Douglas J. Rosenthal
Attorneys, Civil Division
U.S. Department of Justice
Commercial Litigation Branch
Post Office Box 261, Ben Franklin Station
Washington, D.C.  20044

Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2010, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the Electronic Case Files system of the Court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Procedure 5(b)(2).

s/ J. Scott Hogan
J. Scott Hogan
Assistant United States Attorney

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.     INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.    Lockheed Martin's Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       B.    The Government Investigation  . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       C.    The Garnishment Proceeding  . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       A.    The Investigative Material Sought by Lockheed Martin is Irrelevant
             to Lockheed Martin's Defense and Privileged  . . . . . . . . . . . . . . . 9

       B.    The Facts Established by Loftis's Conviction For Conspiracy to
             Defraud the United States Are Publicly Available and
             Are Known to Lockheed Martin . . . . . . . . . . . . . . . . . . . . . . . . . 12

       C.    The Investigative Files Privilege Protects the Government
             Mischarging Investigation and Has Not Been Waived . . . . . . . . . . . . 13

       D.    The United States Did Not Waive Its Work Product Protection by
             Disclosing Very Limited Facts About its Investigation While Acting
             For Lockheed Martin's Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . 19

       E.    Lockheed Martin Has Not Shown That It Has Attempted to Interview
             Or Depose a Single Witness, Thus Not Even the Qualified Privilege
             Protecting Factual Materials Prepared in Anticipation of Litigation
             Can Be Abrogated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

### Federal Cases

*Alder, Coleman, Clearing Corp. v. Mishkin, SIPC*, 1999 WL 1747410 (S.D.N.Y. Dec. 8, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Allnutt v. DOJ*, 99 F. Supp. 2d 673 (D. Md. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Arinder v. Lee*, 2000 WL 680343 (E.D. La. May 23, 2000) . . . . . . . . . . . . . . . . . . . . . 14

*Bd. of Educ. of Evanston v. Admiral Heating and Ventilating Inc.*, 104 F.R.D. 23 (N.D. Ill. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Black v. Sheraton Corp.*, 564 F.2d 531 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . 14, 16

*Carter v. Cornell Univ.*, 173 F.R.D. 92 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . 17

*Commonwealth v. First Nat'l Supermarkets*, 112 F.R.D. 149 (D. Mass.1986) . . . . . . . . 17

*Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122 (7th Cir. 1997) . . . . . . . . . . . . . 15

*Derrick Mfg. Corp. v. Southwestern Wire Cloth, Inc.*, 934 F. Supp.813 (S.D. Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*EPA v. Mink*, 410 U.S. 73 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Frankel v. Sec. and Exch. Comm'n*, 460 F.2d 813 (2nd Cir. 1972) . . . . . . . . . . . . . . . . 14

*Frankhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336 (D.C. Cir.1984) . . . . . . 14

*Grand Jury Subpoena Duces Tecum dated February 18, 1988*, 685 F. Supp. 49 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hickman v. Taylor*, 329 U.S. 495 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*In re Dep't of Investigation of the City of New York*, 856 F.2d 481 (2nd
    Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Echostar Commc'n Corp.*, 448 F.3d *1294 (D.C. Cir. 2006)* . . . . . . . . . . . . . . . . . 23

*In re Grand Jury Subpoena (General Counsel, John Doe Inc.)*, 599 F.2d
    504 (2nd Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Micron Tech., Inc.*, 264 F.R.D. 7 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . 16, 18

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    478 F. Supp. 2d 164, 174 (D. Mass. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In Re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006) . . . . . . . . . . . 14, 15, 16

*Irons v. Bell*, 596 F.2d 468 (1st Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kallas v. Carnival Corp.*, 2008 WL 2222152 (S.D. Fla. May 27, 2008) . . . . . . . . . 23, 24

*Lamar v. Williams Commc'n*, 2007 WL 445511 (N.D. Okla. 2007) . . . . . . . . . . . . . . . 17

*Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Baltimore*,
    508 F.2d 945 (4th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*SCM Corp.*, 473 F. Supp. 791 (Cust. Ct. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*The Shinnecock Indian Nation v. Kempthorne*,
    652 F. Supp. 2d 345 (E.D. N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Thorn EMI North America, Inc. v. Micron Tech. Inc.*,
    837 F. Supp. 616 (D. Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Tuite v. Henry*, 181 F.R.D. 175 (D.D.C. 1998),
    *aff'd* 203 F.3d 53 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 491
    F.3d 254 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States ex rel. Schwedt v. Planning Research Corp.*,
    59 F.3d 196 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Varel v. Banc One Capital Partners, Inc.*, 1997 U.S. Dist. LEXIS 4711
    (N.D. Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 23

## **Federal Statutes**

31 U.S.C. § 3729(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed R. Civ. P. 26 (b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed. R. Civ. P. 26 (b)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed. R. Civ. P. 37(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 25

Fed. R. Crim. P. 6(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

Fed. R. Evid. 106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Evid. 502(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

Fed. R. Evid. 502(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

## **Other**

Wright & Miller, 26A Federal Practice & Procedure §5692 (1994) . . . . . . . . . . . . . . 15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | § | |
| JOHN BECKER, et al., | § | ECF |
| | § | |
| Plaintiffs, | § | Civil Action No. 3:05-CV-0627-L |
| | § | (Consolidated with 3:05-CV-2301-L) |
| v. | § | |
| | § | |
| TOOLS & METALS, INC., et al., | § | |
| | § | |
| Defendants. | § | |

**UNITED STATES OF AMERICA'S RESPONSE AND BRIEF
IN OPPOSITION TO DEFENDANT LOCKHEED MARTIN
CORPORATION'S MOTION TO COMPEL**

To the Honorable United States Magistrate Judge:

## I.  INTRODUCTION

On August 16, 2010, defendant Lockheed Martin Corporation (Lockheed Martin) moved for an order under Fed. R. Civ. P. 37(a) compelling the United States of America (United States) to produce the Government's investigative file related to the conviction of Todd Brian Loftis, then-president of Tools & Metals, Inc. (TMI), that the United States has withheld on privilege grounds.  *See* Appendix in Support of Lockheed Martin Corp.'s Motion to Compel at 278 (hereafter "LMC App. at __").

Claiming that all it seeks to discover are the "facts" related to the Government's criminal investigation, Lockheed Martin requests an order holding that:

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL - PAGE 1**

- The investigative/law enforcement privilege no longer applies to the criminal investigation of TMI and Loftis;

- The Government must identify the names of the witnesses that were interviewed in the course of the criminal investigation of TMI and Todd Loftis, as well as the facts obtained from those witnesses (see Topics 2, 3.c., 3.e., and 4 of Lockheed Martin's Rule 30(b)(6) notice, Lockheed Martin's First Interrogs. No. 6, and Lockheed Martin's First Req. for Prod. of Docs. Nos. 14-15, 21-22);

- The Government must identify the number of investigators used in the criminal investigation of TMI and Todd Loftis, as well as the number of hours spent investigating (see Topic 3 of Lockheed Martin's Rule 30(b)(6) Notice);

- The Government must identify the type and nature of investigative tools used by the Government in its investigation of TMI and Todd Loftis, such as informal requests for documents, searches or seizures of property, offers of immunity, subpoenas, and grand jury proceedings (see Topics 2-4 of Lockheed Martin's Rule 30(b)(6) Notice and Lockheed Martin's First Req. for Admiss. Nos. 1-2); and

- The Government must provide an unqualified admission or denial to Lockheed Martin's requests for admission regarding the existence of grand jury testimony (Lockheed Martin's First Req. for Admiss. Nos. 1 and 2).[1]

Defendant Lockheed Martin Corporation's Motion to Compel the United States at 21

(hereinafter "LMC Mtn. at __"). These demands are unfounded.

Lockheed Martin's motion should fail for several reasons. First, the nature of the

Government's investigation, which began in 2002, after many of the false claims at issue

in this case had been submitted, cannot provide a defense to the Government's allegations

---

[1] As the Civil Division has repeatedly stated to Lockheed Martin in response to its discovery requests, its attorneys do not have access to Grand Jury transcripts and, at this time, no records available to it indicate that any such transcripts exist. If the Court deems it necessary to discuss the application of Rule 6(e) to its files, the United States requests that the filing be *in camera*.

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL - PAGE 2**

concerning Lockheed Martin's knowing mishandling of John Becker's allegations in

2000.  Second, the "facts" established by Loftis's criminal conviction for conspiracy to

defraud the United States are a matter of public record and all of those facts are known to

Lockheed Martin.  Third, Lockheed Martin's apparent belief that the Government's

protections and privileges were abrogated by a 2005 criminal conviction that was but one

part of a broader ongoing investigation is not supported by any authority.  Fourth, the

United States did not waive the protection of the investigative files privilege, the attorney

work product rule or any other privilege by providing very limited testimony from two

investigating agents in a separate garnishment proceeding seeking to undo a partition of

assets between Loftis and his wife and brought for the benefit of Lockheed Martin.

Lastly, Lockheed Martin has made no showing of substantial need to justify disclosure of

any information contained in the Government's investigative files and work product.

Lockheed Martin has not claimed that it interviewed or deposed a single witness.  Instead,

Lockheed Martin seeks to piggyback off of the Government's investigation and gain

impermissible access to the fruits of that investigation.  For these reasons, as discussed in

detail below, Lockheed Martin's motion to compel should be denied.

## II.   BACKGROUND

### A.   Lockheed Martin's Misconduct

As an initial matter, Lockheed Martin misrepresents the allegations of the United

States when it says that the "Government's central allegation in this case is that Lockheed

Martin recklessly failed to uncover proof of TMI's illegal pricing scheme." LMC Mtn. at

1; *see also id.* at 5.  Rather, the United States alleges that Lockheed Martin is liable for

submitting false claims to the United States from October 2000 to May 2006, because: (1)

Lockheed Martin entered into a statutorily prohibited cost-plus-a-percentage-of-cost

contract with TMI that incentivized fraud and then failed to provide meaningful

oversight; (2) TMI unlawfully inflated costs that were placed by Lockheed Martin in its

overhead accounts and charged to the United States in false claims for payment; and (3)

after Lockheed Martin received credible allegations of TMI's fraud in 2000, it continued

to submit TMI's inflated costs to the United States with "actual knowledge," "deliberate

ignorance" or "reckless disregard for the truth or falsity" of those claims for payment.

*See* Complaint of the United States, ¶¶ 16, 18, 25-26 & 29-33 (Docket No. 61, Nov. 30,

2007) (hereinafter U.S. Compl. ¶ __); *see also* LMC App. at 8-12.

   Effective January 1, 1998, Lockheed Martin entered into a contract with TMI

which called for TMI to supply Lockheed Martin with perishable tools.  U.S. Compl. ¶

13.  That contract contained the following prohibited provision:

> Category "C" pricing shall consist of SUPPLIER's acquisition cost plus a
> transaction fee of $7.50 or 15% markup over net, whichever is less[,] for
> line items with a unit cost of $50.00 or less.  A $375.00 transaction fee or
> 15% markup over net, whichever is less[,] will be applied to line items with
> a unit price which exceeds $50.00 and does not exceed $2,500.00 per line
> item (regardless of quantity).  This pricing shall include all SUPPLIER
> shipping and other costs.

U.S. Compl. ¶¶ 16, 75-76.  The contract granted audit rights to Lockheed Martin and the

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 4**

parties had agreements protecting TMI's proprietary data. U.S. Compl. ¶¶ 28, 30 & 31.

Despite these contractual provisions – and despite Lockheed Martin's obligations to its customers who paid the inflated costs (along with an additional mark-up by Lockheed Martin for G&A and profit) – Lockheed Martin performed no meaningful audits. U.S. Compl. ¶¶ 29-30. Shortly after the contract became effective on January 1, 1998, Lockheed Martin agreed with TMI to limit its audits of TMI costs to pre-scheduled twice-yearly reviews by the Lockheed Martin buyer, Byron Young, who developed a close relationship with TMI and Loftis. U.S. Compl. ¶¶ 28-30. On every occasion, Young reviewed only a small, predetermined number of TMI-selected xeroxed vendor invoices and worksheets prepared by TMI before Young's arrival. At no point in time did Lockheed Martin inspect TMI's computerized books and records, original invoices or its financial reports, where TMI's true costs and contract revenue were reported. U.S. Compl. ¶¶ 19 & 24. Nor did Lockheed Martin review TMI's costs by contacting any of TMI's suppliers to verify the costs that TMI had reported, even though Lockheed Martin had purchased perishable tools from many of the same suppliers prior to January 1, 1998. Indeed, the methods used by Young for his audits of TMI were so deficient that Lockheed Martin's own Senior Manager of Process Integrity, Harry Davis, admitted at his deposition that he did not think they were worthy of the label "audits."[2] Lockheed Martin's "audits" of TMI continued in that fashion despite complaints of TMI price

---

[2] *See* Davis Deposition at pp. 83-84, U.S. App. at 205.

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 5**

gouging by Lockheed Martin's own managers.[3]  Indeed, these deficient "audits"

continued more than four years after relator Becker's warning about TMI excessive prices

in a May 23, 2000, e-mail to Harriet Stroh, a Lockheed procurement manager who

supervised Young.[4]  U.S. Compl. ¶¶ 31-33.

      In his email, entitled "irregularities worth looking into further," Becker, a former

TMI national account executive, stated that the subject was "fraud."  U.S. Compl. ¶32;

U.S. App. at 210; 213; 220.  Becker stated that one of the reasons that he had left TMI

was to distance himself from what he believed was an ongoing fraud by TMI.  *Id.*  Becker

stated that he became suspicious because TMI's agreement with Lockheed could lead to

"margins closer to 40%" when the Master Agreement "calls for a 15% markup."  *Id.*

Becker's e-mail was shared among several Lockheed Martin managers and employees,

including its in-house counsel.  *Id.*  Despite this warning, Lockheed Martin continued its

deficient "audits" for years and informed no one in the Government of the allegations

despite daily contact with government officials.

      Lockheed Martin not only failed to audit TMI's costs, it also failed to report

Becker's allegations to law enforcement or utilize any of the many resources at its

disposal, such as the audit resources in its Process Integrity unit, or its Government

---

[3]  *See, e.g.,* Barnard L. Gilley e-mail dated July 26, 2000 to Byron Young (U.S. App. at 211); Robert
L. Getty e-mail dated September 6, 2000 to Ralph Eckert (U.S. App. at 227); Byron Young e-mail dated
August 2, 2000 to Cathy Gadway (U.S. App. at 215) ("This integrated supply contract has been
challenged by various LM-FW, LM-GA and non-LM personnel since it was established.")

[4]  *See* John Becker e-mail dated May 23, 2000 to Harriet Stroh (U.S. App. at 210).

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 6**

Accounting Directorate, or its material cost analysts, or any number of outside professionals.[5]  Instead, Lockheed Martin – to the detriment of the United States – turned a blind eye to the allegations.[6]  Lockheed Martin did not even report the allegations to the Government employees with whom it had daily contact.  Lockheed Martin did not in any way withhold or delay payments to TMI in an attempt to enforce its audit rights; nor did it withhold or qualify its presentations for payment to the United States.  Rather, Lockheed Martin continued to present inflated false claims for payment to the United States with "actual knowledge," "deliberate ignorance" or "reckless disregard for the truth or falsity" from October 2000 until May 2006, when overhead rates free from the influence of TMI mischarging were presented and agreed to by the United States.  *Id.* ¶¶ 32-33, 62-63 & 66.

**B.      The Government Investigation**

In December 2001, acting on a tip from Becker, the Department of Justice, Civil Division, advised the Defense Criminal Investigative Service of Becker's mischarging allegations for its action.[7]  Thereafter, the Criminal Division at the U.S. Attorney's Office for the Northern District of Texas initiated a related criminal investigation and on October 1, 2004, Loftis was given a letter stating that he was the target of a criminal investigation.

---

[5]   *See* Deposition of Charles Sterne, Lockheed Martin investigator, at pp. 111-12, U.S. App. at 240; p. 187, U.S. App. at 245.

[6]   *See* Sterne Deposition at pp. 123-24, U.S. App. at 243.  The United States has included in its Appendix a chronological presentation of the e-mails between (1) Becker and Lockheed Martin personnel, (2) among key Lockheed Martin personnel, and (3) between Lockheed Martin personnel and TMI employees.  U.S. App. at 209-233.

[7]   *See* U.S. App. at 44 [entries 6 and 7].

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 7**

In April and September 2005, Becker and Spencer filed their *qui tam* complaints under seal.  In December 2005, Loftis pleaded guilty to conspiracy to defraud the United States. He was sentenced in March 2006, with Lockheed Martin identified as victim number one[8] and the United States as victim number two.  The court entered a restitution order in favor of Lockheed Martin.  However, even after Loftis's plea, Lockheed Martin continued to present claims to the United States containing TMI's inflated costs through May 2006.  In October 2007, the United States intervened in this FCA civil enforcement action.

### C.     The Garnishment Proceeding

In September 2006, the Government filed a garnishment proceeding to collect on the restitution order and in order to prevent Loftis from absconding with the fruits of his fraud.  During that proceeding, the United States elicited limited testimony from two investigators who participated in the mischarging investigation.  This testimony concerned the agents' contact with individuals outside of the Government who provided Loftis with notice of the purpose of the Government's investigation before September 2004, the month Loftis executed a partition agreement turning over his assets to his wife.

## III.    <u>ARGUMENT</u>

### A.     The Investigative Material Sought by Lockheed Martin is Irrelevant to Lockheed Martin's Defense and Privileged.

---

[8]  The Court has already rejected a motion to dismiss by Lockheed Martin and held that Lockheed Martin's position as victim number one did not create an estoppel against the United States because, among many other reasons, its reservation of civil claims at the sentencing hearing.  *See* Memorandum Opinion and Order at 9-13 (Docket. No. 212, March 5, 2009).

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 8**

The crucial disputed element of the FCA claims against Lockheed Martin is whether it acted with "actual knowledge," "deliberate ignorance" or "reckless disregard" of the truth or falsity of its claims for payment that included fraudulently inflated TMI costs. The trier of fact will have to decide what Lockheed Martin's *scienter* was at the time it presented those tainted claims to the United States. The only facts relevant to that question are those within Lockheed Martin's knowledge at the time of those presentations for payment. Just as the United States cannot impute to Lockheed Martin facts not known to it when it presented those false claims, Lockheed Martin cannot use events outside its knowledge to disprove its *scienter* at the time. Therefore, contrary to Lockheed Martin's argument, the information and files that it seeks relating to the Government's mischarging investigation cannot be relevant to its *scienter*.

Lockheed Martin purports to seek the files from the "criminal" investigation on the grounds that the amount of effort the United States put into the conviction of Loftis is relevant to the adequacy of Lockheed Martin's efforts years earlier.[9]  However, whether and how the Government uncovered the fraud is irrelevant to whether Lockheed Martin's efforts were in good faith or reckless. The latter question depends upon the actions and knowledge of Lockheed Martin – not the Government. Therefore, the lengths to which

---

[9] This argument also fails on the merits: the Government did not uncover the TMI fraud any earlier in part because it did not have all the information in Lockheed Martin's possession, such as the sham "audits" performed by Byron Young and allegations of TMI mispricing by Lockheed Martin's employees, all in the context of a prohibited contract that incentivized fraud. Moreover, the criminal investigation was an effort to discover evidence to prove the specific intent "beyond a reasonable doubt" required for a criminal conviction - a higher *scienter* and higher burden of proof.

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL - PAGE 9**

the investigators went in order to secure the criminal conviction do not speak to whether Lockheed Martin acted with "actual knowledge," "reckless disregard" or "deliberate ignorance" under the FCA.

Lockheed Martin also argues that it is entitled to examine the Government's investigative files because as the investigation progressed, the United States uncovered TMI's fraud and knew more than Lockheed Martin knew, yet continued to accept Lockheed Martin's overhead cost proposals and claims for payment. LMC Mtn. at 5. However, it is well-established that government knowledge of the falsity of a defendant's claim is not a defense under the FCA. *See, e.g., United States ex rel. Schwedt v. Planning Research Corp.,* 59 F.3d 196, 199 (D.C. Cir. 1995); 31 U.S.C. § 3729(a), (b).

In certain, limited circumstances, evidence that the defendant was aware that Government officials knew and approved of the defendant's conduct may be relevant to the question of whether the defendant possessed the requisite *scienter* under the FCA. But to negate *scienter* under this theory, Lockheed Martin must show (1) that the Government was fully informed of the particulars of the claim for payment, (2) that the Government approved of the specific conduct at issue, and (3) that Lockheed Martin was aware of this Government knowledge and approval. *See In re Pharm. Indus. Average Wholesale Price Litig.,* 478 F. Supp. 2d 164, 174 (D. Mass. 2007) (motion to dismiss California FCA claim denied, noting that state approval of the particulars is needed to negate *scienter*).

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 10**

If it exists, any evidence relevant to this defense would lie not in the Government's investigative files but with Lockheed Martin itself (which can hardly claim that it relied on the Government's knowledge and approval if it cannot provide evidence that it was aware of it) or with the agency to which Lockheed Martin was presenting its false claims. *See, e.g., United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 491 F.3d 254, 263 (5th Cir. 2007) (allowing the Government knowledge defense in a declined case where NASA, the agency to which Lockheed Martin presented its claims for payment, knew and approved of all the particulars of the claims which relator alleged made them fraudulent). Thus, Lockheed Martin's unsupported allegation of "Government knowledge" is a legally inadequate excuse to abrogate the Government's investigative files, attorney-client privilege and work product protections. To the extent the investigative team learned of the allegations of fraud and discovered evidence substantiating them, it is irrelevant to the question of whether Lockheed Martin previously acted with "reckless disregard" or "deliberate ignorance" in presenting false claims.

Lockheed Martin's motion also purports to seek only those files pertaining to the "criminal" investigation, as if that were a closed universe entirely separate from a civil investigation and the action before the Court. LMC Mtn. at 4-5. As counsel for the United States has informed Lockheed Martin, however, the criminal investigation did not occur before or entirely separately from the civil investigation and this civil enforcement

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 11**

action. Rather, the allegations regarding TMI mischarging and harm to the United States were first brought to the attention of the Department of Justice's Civil Division, which requested an investigation and later intervened in this civil enforcement action. *See* Note 7, above. During the resulting investigation, agents learned of evidence of potential criminal liability and a criminal Assistant United States Attorney used that evidence to obtain the Loftis conviction. The civil and criminal investigations were often conducted by the same investigators; except as required by Rule 6(e), the criminal and civil files are not separate. Moreover, abrogation of the investigative files privilege would result in the disclosure of the investigative material containing the civil prosecution's privileged material and work product relating to this pending litigation - a grossly unfair window into a civil opponent's litigation strategy and breach of the attorney-client privilege and work product doctrines.

**B.    The Facts Established by Loftis's Conviction For Conspiracy to Defraud the United States Are Publicly Available And Are Known to Lockheed Martin.**

Lockheed Martin claims that its wholesale attack on the Government's privileges and protections – designed to shield the Government's deliberations and assessments at various stages of an investigation – is justified because it just wants to know the "facts" of the criminal investigation.[10] Lockheed Martin's motion reaches far beyond the "facts"

---

[10] Lockheed Martin provides the Court no guidance concerning its view of when the Government's mischarging investigation became a criminal investigation or when the criminal investigation ended and a civil investigation began.

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 12**

of the criminal prosecution because those facts are known to Lockheed Martin.

Loftis's plea to conspiracy to defraud the United States sets forth the facts supporting his 2005 conviction; it is a matter of public record and was attached to the Government's 2007 complaint. In addition, several TMI employees – Mark George Andos, Tammy Louise Calvert, Danny Wayne Holladay, Timothy Ryan Lee, and Daniel Louis Miller, as well as Loftis and Tools & Metals, Inc. – were publicly debarred from Government contracting by the United States Air Force in January 2008, and Lockheed Martin has known that since no later than September 17, 2009 and has received a copy of the uncontested complaint brought against them.[11] LMC App. at 287. It is not clear what other "facts" related to the "criminal" investigation Lockheed Martin seeks other than the mental impressions and confidential communications of government attorneys and investigators which are both privileged and irrelevant.

**C.    The Investigative Files Privilege Protects the Government Mischarging Investigation and Has Not Been Waived.**

Lockheed Martin claims that the Government's mischarging investigation file is no longer protected by the investigative files privilege, claiming that "the Government's criminal investigation has been closed for several years." *See* LMC Mtn. at 14. Lockheed Martin is wrong.

---

[11]    In the garnishment proceeding, the agents acknowledged speaking with Andos, Lee, Loftis, Sarah Proctor and John Becker, Lockheed Martin's informant, among unidentified others. The Government's Rule 26(a)(1) disclosure lists a number of TMI, Lockheed Martin, and Government personnel who could be interviewed and/or deposed by Lockheed Martin. *See* U.S. App. at 249-282.

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 13**

Documents created by the United States in the course of a Government investigation are privileged to the extent that their disclosure would reveal investigative techniques and procedures, evaluative summaries, potential targets, the identities of investigators or witnesses or result in interference with an ongoing investigation. *In re Dep't of Investigation of the City of New York*, 856 F.2d 481, 484 (2nd Cir. 1988) (hereafter *DOI*). In addition, the Government's investigative files privilege applies to testimony concerning their contents. *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988); *Arinder v. Lee*, 2000 WL 680343 at *2 (E.D. La. May 23, 2000).

This privilege protects not just criminal investigations but also protects investigative files prepared for civil law enforcement purposes. *DOI*, 856 F.2d at 485; *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984); *Irons v. Bell*, 596 F.2d 468, 474 (1st Cir. 1979); *Black v. Sheraton Corp.*, 564 F.2d 531, 545 (D.C. Cir. 1977); *Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Baltimore*, 508 F.2d 945, 949 (4th Cir. 1974); *Frankel v. Sec. and Exch. Comm'n*, 460 F.2d 813 (2nd Cir. 1972); *Allnutt v. DOJ*, 99 F. Supp. 2d 673, 679 (D. Md. 2000); *Alder, Coleman, Clearing Corp. v. Mishkin, SIPC*, 1999 WL 1747410 at *3 (S.D.N.Y. Dec. 8, 1999); *Tuite v. Henry*, 181 F.R.D. 175 (D.D.C. 1998), *aff'd* 203 F.3d 53 (D.C. Cir. 1999) (DOJ Office of Professional Responsibility investigation).[12]

_____

[12] The Fifth Circuit in *In re Department of Homeland Security*, 459 F.3d 565 (5th Cir. 2006), regarding the application of the law enforcement privilege in the criminal context cited with approval *DOI* and *Tuite*, which sustained the application of the law enforcement privilege in a civil context. *See* 459 F.3d at 569 n.1 (hereafter *DHS*).

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 14**

Indeed, the latest expression by the Fifth Circuit concerning the scope of the privilege in a criminal context, *DHS*, also states that in an appropriate case, the privilege may extend for a reasonable time after the close of a criminal investigation. The enforcement of the Government's civil FCA claims simultaneously investigated, and in fact predating and triggering the criminal case, is an appropriate reason to extend the reach of the privilege in this case beyond Loftis's conviction and sentencing. Accordingly, the investigative files privilege should extend beyond the criminal prosecution because it is simply a continuation of the original mischarging investigation requested by the Civil Division. *See* Note 7, above.

The United States recognizes that, like other privileges, the investigative files privilege can be waived by voluntary disclosure. *See Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126 (7th Cir. 1997).[13] However, broad subject matter waiver of the investigative files privilege, a subcategory of the executive privilege, "should not be lightly inferred." *See In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) (quoting *SCM Corp. v. United States*, 473 F.Supp. 791, 796 (Cust. Ct. 1979)); *In re D.H.S.*, 459 F.3d 565, 570 (5th Cir. 2006). "It seems to us, however, and not only to us, that there ought to be a pretty strong presumption against lifting the privilege." *Dellwood Farms* at 1125 (citing *Black v. Sheraton Corp.*, 564 F.2d 531, 545-47 (D.C. Cir. 1977)).

---

[13] *See* Wright & Miller, 26A FEDERAL PRACTICE & PROCEDURE §5692 (1992) ("True waiver of the governmental privileges is accomplished in the same fashion as waiver of other privileges, *i.e.*, by voluntary disclosure of a **significant portion** of the information claimed to be privileged.") (emphasis added).

U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 15

The determination of whether the United States waived the investigative files privilege calls for a fact-specific balancing test that is intertwined with the analysis of whether the qualified privilege should prevent disclosure. *In re Micron Tech., Inc.* 264 F.R.D. 7, 14 (D.D.C. 2010).  Among the factors to be evaluated by the court prior to any release is: (1) the extent to which disclosure will interfere with government processes; (2) the impact of disclosure on people who have provided information to the government; (3) the impact of disclosure on government programs; (4) whether the information sought is factual data or evaluative summary; (5) the moving party's relationship to the investigation; (6) whether the investigation has been completed; (7) whether any internal proceedings exist relating to the investigation; (8) whether the party's claims are non-frivolous and are brought in good faith; (9) whether the information sought is available elsewhere through discovery; and (10) the importance of the information sought. *Frankhauser v. Rizzo*, 59 F.R.d. 339, 344 (E.D. Pa. 1973); *see* DHS, 459 F.3d at 570 (holding that the court "should consider the *Frankenhauser* factors" in evaluating the law enforcement privilege).  There can be little doubt that the Government's assertion of privilege withstands such scrutiny in this case.

The United States disclosed very limited facts in the garnishment proceeding. Indeed, such information was no greater than what was disclosed to Lockheed Martin in the Government's Rule 26(a)(1) disclosure and its privilege log, each of which are

intended to preserve its privileges, not waive them.[14]  U.S. App. at 249-282; 1-198.

Accordingly, the limited facts disclosed during the garnishment proceeding should in no

way constitute a subject matter waiver unveiling the entire contents of the mischarging

investigation.

    In the garnishment proceeding, the United States elicited limited testimony from

two investigators, one of whom, Special Agent Zuniga, participated directly in obtaining

the Loftis conviction.  The agents' testimony was limited to their contacts with

individuals outside of the Government who could have provided notice of the purpose of

the investigation to Loftis and/or TMI before September 2004, the month Loftis executed

a partition agreement turning over essentially all of his assets to his wife.  The United

States did not elicit testimony about any other contacts with witnesses that occurred

---

[14]  The Government's privilege log in this case ends at March 31, 2006, after Lockheed Martin was notified of the existence of the pending *qui tam* lawsuits and after Loftis had been sentenced. Additionally, the Government's log does not identify interviewees since witnesses with knowledge are identified in the Government's Rule 26(a)(1) disclosure statement along with the topics about which they have knowledge.  Courts have not required parties to disclose the names of witnesses that have been interviewed by investigative teams in anticipation of litigation.  *See, e.g., In re Grand Jury Subpoena (General Counsel, John Doe Inc.),* 599 F.2d 504, 511 (2nd Cir. 1979)(refusing to compel testimony regarding counsel's interviews, including the identity of interviewees); *Lamar v. Williams Commc'n,* 2007 WL 445511 at *3 (N.D. Okla. 2007)(identities of witnesses for whom memoranda of interview were created need not be disclosed on privilege log); *Carter v. Cornell Univ.,* 173 F.R.D. 92, 95-96 (S.D.N.Y. 1997)(investigator's report to attorney protected); *Grand Jury Subpoena Duces Tecum dated February 18, 1988,* 685 F. Supp. 49, 51 (S.D.N.Y. 1988)(defense's private investigator cannot be forced to reveal list of names of persons interviewed); *Commonwealth v. First Nat'l Supermarkets,* 112 F.R.D. 149, 153 (D. Mass. 1986)(refusing to order further identification of documents relating to witness interviews); *Bd. of Educ. of Evanston v. Admiral Heating and Ventilating Inc.,* 104 F.R.D. 23, 32 (N.D. Ill. 1984)("to tell plaintiffs whom defendants have interviewed, where and when such interviews took place and whether or not a record was made is to give plaintiffs no more knowledge of substantive relevant facts, but rather to afford them the potential for significant insights into the defense lawyer's preparation of their case (and their mental processes)").

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 17**

during the investigation, although one agent speculated that he participated in the interviews of between 60 and 100 people. *Compare* U.S. Rule 26(a)(1) Discl., U.S. App. at 251-271; Responses to Lockheed Martin's First Interrog., LMC App. at 13-35.

The United States did not present testimony about Loftis's underlying criminal conduct; it did not introduce any documents obtained during the Government's mischarging investigation; it did not seek testimony about meetings (other than the October 1 meeting where Loftis received a formal target letter) or the investigative techniques used during the investigation; it did not reveal discussions with Government counsel, auditors or employees; nor did it introduce any of the investigators' notes or documents relating to their contacts with witnesses. The testimony the United States solicited was limited to those facts required to unwind Loftis's fraudulent transfer.

Lockheed Martin's claim that these limited disclosures waived the investigative files privilege in its entirety is simply unsupportable. *See In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) ("[T]his all or nothing approach has not been adopted with regard to executive privileges . . .); *see also In re Micron Tech., Inc.*, 264 F.R.D. 7 (D.D.C. 2010) (law enforcement privilege covering agent's interview memorandums was not waived by producing them to defense counsel in criminal proceeding).

Indeed, the majority of relevant factors weigh against Lockheed Martin's position: (factor 3) disclosure of the Government's investigative file would set a precedent that would significantly impact law enforcement investigations across the country; (factor 4)

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL - PAGE 18**

the information sought by Lockheed Martin is not factual in nature, but is instead

information regarding the Government's efforts; (factor 5) Lockheed Martin is a civil

defendant along with TMI and Loftis; (factor 9) the facts contained in the investigative

file are available elsewhere and Lockheed Martin has not demonstrated any effort to

interview or depose any witnesses; and (factor 10), as discussed above, the Government's

mischarging file, which begins in 2002, is not relevant to and cannot provide a defense

for Lockheed Martin's conduct.  For these reasons, Lockheed Martin's argument that the

investigative file privilege has been waived should be rejected.

> **D.**  **The United States Did Not Waive Its Work Product Protection by Disclosing Very Limited Facts About its Investigation While Acting for Lockheed Martin's Benefit.**

Similarly, the United States in no way waived its work product protection during

the garnishment proceeding.  Citing FRE 502(a), Lockheed Martin claims that by

disclosing limited facts in a separate garnishment  proceeding, *for Lockheed Martin's*

*benefit,*[15] the Government should be forced to release all its work product contained in its

entire investigative file.  This argument is unfounded.  While the information disclosed

during the garnishment proceeding may concern the same subject matter as some of the

communications and information the United States seeks to protect (for example, a

---

[15] Lockheed Martin claims that the United States brandished a "sword" in the garnishment proceeding, LMC Mtn. at 18, entirely ignoring that the garnishment benefitted Lockheed Martin.  This is hardly the circumstance giving rise to a subject matter waiver.  As discussed below in cases cited by Lockheed Martin, subject matter waivers are found where a party uses the information solely for its own benefit rather than for the public benefit or the benefit of an unrelated private claimant in a separate suit.

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 19**

handful of reports of interviews and/or activities), (1) the Government's disclosure was in a separate proceeding and not sufficiently detailed to constitute a waiver of work product under FRE 502(a), and (2) the communications and information that remain undisclosed should not in fairness be considered in combination with any disclosed communication under FRE 502(a)(3). Only in the rarest of circumstances does the disclosure of information protected by the work product doctrine entitle a party to discover undisclosed, protected information and materials. *See generally* FRE 502(a).

As discussed in detail above regarding the investigative files privilege, the United States disclosed very minimal facts in the separate garnishment proceeding. These disclosures did not vitiate the Government's work product protections. In *Hickman v. Taylor*, 329 U.S. 495 (1946), the Supreme Court explained the rationale for protecting work product, stating:

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant facts, prepare his legal theories and plan his strategies without undue and needless interference . . . . This work is reflected, of course in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways – aptly though roughly termed . . . the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL - PAGE 20**

*Id.* at 511.  *Compare EPA v. Mink*, 410 U.S. 73, 87 (1973).

As Justice Jackson stated in his concurrence in *Hickman*, "Discovery was hardly intended to enable a learned profession to perform its function either without wits or on wits borrowed from the adversary." *Hickman*, 329 U.S. at 516. Lockheed Martin is attempting to do just that.

As then-Magistrate Judge Boyle has stated, "Not every disclosure of information that is arguably work-product is inconsistent with the goals of an adversarial dispute resolution process." *Varel v. Banc One Capital Partners, Inc.*, 1997 U.S. Dist. LEXIS 4711, at *8 (N.D. Tex. 1997). Only in the rarest of circumstances does the voluntary disclosure of information protected by the work product doctrine entitle a party to discover other undisclosed information and materials. "[A] general subject-matter waiver of work-product immunity is warranted only when the facts relevant to a narrow issue are in dispute and have been disclosed in such a way that it would be unfair to deny the other party access to other facts relevant to the same subject matter." *Varel* at *9 (*citing Thorn EMI North America, Inc. v. Micron Tech., Inc.,* 837 F. Supp. 616, 621 (D. Del. 1993)).

Even if the United States had used work product protected information offensively against Lockheed Martin (which it did not), the Northern District has concluded that such disclosure does not result in an automatic subject matter waiver.  In *Varel*, plaintiff complained about the defendants' sale of promissory notes and equity securities in violation of his rights to first refusal.  Varel alleged that the Phelps defendants waived

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 21**

their work product protection over an investigation's conclusions and findings (referred to as the Altman Investigation) by (1) disclosing a letter containing an initial review by the investigator by attaching it to court filings; (2) disclosing a summary of various relevant payments; and (3) eliciting deposition testimony regarding the letter and, more generally, the investigation. Then-Magistrate Judge Boyle analyzed each disclosure by the defendants and concluded that the disclosures were not so substantial as to warrant a subject matter waiver because (1) the letter was very limited and primarily factual in nature, (2) the deposition testimony revealed little more than the facts in the letter, and (3) disclosure of the information was not inconsistent with the purpose of the work product doctrine. *Varel* at *10. Similarly, the Government has not put any part of the government investigation underlying Loftis's criminal conviction at issue in this case; rather, the United States has placed only Lockheed Martin's investigation, conducted two years earlier, at issue.

The Explanatory Note to FRE 502(a) bolsters the analysis performed by Judge Boyle in *Varel*: "Subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner . . . Under both Rules [referring to the "ought in fairness" language contained in FRE 106 and 502(a)], a party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation." Explanatory Note to FRE 502(a) (revised 11/28/2007). Accordingly, inasmuch the

Explanatory Note indicates that application of FRE 502(a)(3) was intended to follow prior case law, the Court should follow Judge Boyle's analysis in *Varel* in this case and deny Lockheed Martin's motion to compel.[16]

The cases relied upon by Lockheed Martin in support of its subject matter waiver argument present completely different circumstances than those currently before the Court. In those cases where the court concluded a waiver had occurred, the party alleged to have waived made affirmative use of work product to further its own goals within the pending litigation.

In *In re Echostar Communications Corporation,* 448 F.3d 1294 (D.C. Cir. 2006), the court analyzed the waiver of attorney-client privilege and the work-product doctrine because Echostar raised an advice of counsel defense in response to allegations of willful patent infringement. The court properly concluded that by invoking an advice of counsel defense, Echostar waived these privileges as to factual or non-opinion work product. In this case, however, the United States has not asserted any allegations or claims which would warrant such a finding.

In *Kallas v. Carnival Corporation*, 2008 WL 2222152 (S.D. Fla. May 27, 2008), a class action arising from the alleged spread of Norovirus aboard Carnival's cruise ship,

---

[16] *See also Derrick Mfg. Corp. v. Southwestern Wire Cloth, Inc.*, 934 F. Supp. 813, 817 (S.D. Tex. 1996)(the Court rejected the defendants' argument that Derrick Manufacturing Corporation waived the attorney-client privilege by its representative testifying during a deposition that he had no memory of discussing prior art with its patent attorney); *The Shinnecock Indian Nation v. Kempthorne*, 652 F.Supp.2d 345 (E.D. N.Y. 2009)(the court rejected The Shinnecock Indian Nation's contention that the Department of Interior waived the attorney work product with regard to an entire document by producing a redacted version of the document releasing non-opinion work product).

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL - PAGE 23**

the plaintiffs affirmatively used paralegal affidavits explaining their investigation to support its amended motion for class certification.  While the court allowed discovery into the paralegals' investigation and the documents they relied upon, it concluded "[t]hat also does not require the production of all work product that may have been generated from counsel's factual investigation or even this particular survey."  *Id.* at *6.  Thus, Lockheed Martin's assertion that the Government's 2006 disclosures resulted in a subject matter waiver over the entire mischarging investigation simply is not supported by the result in the *Kallas* case.

In a last attempt to convince the Court that the Government's investigation is at issue here, Lockheed Martin recites a litany of rhetorical questions concerning Becker's discussions with investigatory agents, undisclosed interviews conducted by the agents, obstacles the criminal investigation encountered, what the United States revealed to Lockheed Martin during the investigation, and the Government's sources regarding the financial impact of Loftis's crime. LMC Mtn. at 19-20.  None of these questions are relevant, in any way, to Lockheed Martin's conduct two years earlier.  For example, that the Government's mischarging investigation did not "break" until 2004 has no bearing or relevance whatsoever on Lockheed Martin's actions and intent four years earlier.  Indeed, as we discussed in detail above, Lockheed Martin's assertion that the Government's mischarging investigation has some relevance to or bearing on Lockheed Martin's conduct and *scienter* lacks merit and should be rejected.  For this reason, Lockheed

Martin's motion to compel the Government's work product should be denied.

> **E.   Lockheed Martin Has Not Shown That It Has Attempted to Interview or Depose a Single Witness, Thus Not Even the Qualified Privilege Protecting Factual Materials Prepared in Anticipation of Litigation Can Be Abrogated.**

Lockheed Martin's extraordinary attempt to intrude into Government counsels's and its representatives's deliberations and assessments during an on-going investigation should also be rejected because it has made no showing that it cannot obtain the requested information elsewhere.  Thus, Lockheed Martin cannot even make the showing required to obtain factual work product information.

FRCP 26 (b)(3) states that certain factual materials prepared in anticipation of litigation become discoverable upon a showing of substantial need and inability to obtain the substantial equivalent by other means.[17]  Since Lockheed Martin has not claimed that it does not have ready access to all witnesses with personal knowledge of the facts underlying this lawsuit, it has not identified any reason why the Government's interest in maintaining the confidentiality of its work product and investigative files should not be protected.  Thus, Lockheed Martin's motion should be denied.

**IV.   CONCLUSION**

For the foregoing reasons, Lockheed Martin's motion to compel should be denied.

---

[17] Under FRCP 26 (b)(3)(B), the mental impressions, conclusions, opinions, or legal theories of counsel or other party representatives concerning the litigation remain absolutely privileged.

**U. S. RESPONSE TO LOCKHEED MARTIN CORP.'S MOTION TO COMPEL  - PAGE 25**

Respectfully submitted,

TONY WEST
Assistant Attorney General

JAMES T. JACKS
United States Attorney


s/ J. Scott Hogan
J. Scott Hogan
Assistant United States Attorney
Texas Bar No.  24032425
Burnett Plaza, Suite 1700
801 Cherry Street, Unit 4
Fort Worth, Texas 76102-6882
Telephone:  817. 252.5271
Facsimile:   817.978.6350
scott.hogan@usdoj.gov



s/Russell B. Kinner
Joyce R. Branda
Michael D. Granston
Russell B. Kinner
Elizabeth A. Strawn
Douglas J. Rosenthal
Attorneys, Civil Division
U.S. Department of Justice
Commercial Litigation Branch
Post Office Box 261, Ben Franklin Station
Washington, D.C.  20044

Attorneys for the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2010, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the Electronic Case Files system of the Court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Procedure 5(b)(2).

s/ J. Scott Hogan
J. Scott Hogan
Assistant United States Attorney