## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

**JOHN BECKER, UNITED STATES**
**ex rel. JOHN BECKER, and ROBERT**
**B. SPENCER,**

        **Plaintiffs,**

**v.**                                **Civil Action No. 3:05-CV-0627-L-BK**

**TOOLS & METALS, INC., et al.,**

      **Defendants.**

### FINDINGS, CONCLUSIONS AND RECOMMENDATION

This cause is presently before the Court for a recommendation on (1) Plaintiff Becker's *Motion for Stay of Proceedings Regarding Recovery of Costs, Fees, and Expenses Pending Resolution of Jurisdictional Questions Regarding the First and Third Claims in the Qui Tam Plaintiffs' Second Joint Amended Complaint* (Doc. 340) ("*Motion for Stay*"); (2) Plaintiff Becker's *Motion on Public Disclosure Grounds (31 U.S.C. § 3730(e)(4)) Challenging the Court's Jurisdiction to Award Costs, Attorney's Fees and Expenses to Qui Tam Plaintiff Spencer, with Respect to the First and Third Claims in the Qui Tam Plaintiffs' Second Joint Amended Complaint* (Doc. 341) ("*Public Disclosure Motion*"); (3) Plaintiff Spencer's *Amended Motion for Attorneys' Fees* (Doc. 365); and (4) *Lockheed Martin Corporation's Motion to Stay Determination of All Proceedings Relating to Attorneys' Fees, Expenses and Costs Until Relator Becker's Jurisdictional Challenge is Resolved* ("*Motion for Stay*") (Doc. 353).

For the reasons that follow, the undersigned recommends that the District Court **DENY** Plaintiff Becker's *Public Disclosure Motion* (Doc. 341) and **DENY AS MOOT** Plaintiff Becker's *Motion for Stay* (Doc. 340) and Lockheed's *Motion for Stay* (Doc. 353). Further, the

undersigned recommends that Plaintiff Spencer's *Amended Motion for Attorneys' Fees* (Doc. 365) be **GRANTED** to the extent that Spencer be awarded $1,761,206.28 in attorneys' fees and $550,930.54 in costs.

## BACKGROUND

This *qui tam* action originally was filed by relator John Becker ("Becker") in March 2005.[1]  Becker alleged violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729(a)(1) and (2), by Defendant Tools and Metals, Inc. ("TMI") based upon TMI's conduct as a government subcontractor with respect to its tool sales to the Lockheed Martin Company ("Lockheed").  In September 2005, relator Robert Spencer ("Spencer") filed a separate *qui tam* complaint alleging violations of the FCA by (1) Lockheed, (2) TMI, (3) TMI's former president and CEO Todd Loftis ("Loftis"), and (4) Byron Young, a Lockheed employee.

In December 2005, the Court consolidated the actions brought by Becker and Spencer (collectively, "the Relators").  The Government was granted several extensions of its deadline to intervene in the *qui tam* case.  During this time, Becker and Spencer filed a joint amended complaint, adding additional claims and defendants.  In October 2007, the Government elected to intervene and filed its complaint, alleging various claims against TMI, Loftis, Lockheed, and others.

In March 2008, the Relators filed their *Qui Tam Plaintiffs' Second Joint Amended Complaint* (the "Relators' Complaint").  (Doc. 101).  Becker and Spencer alleged various FCA claims (1) against TMI, Loftis, Lockheed, Young, and various other TMI and Lockheed

---

[1]Unless otherwise noted, the facts are drawn from the District Court's March 31, 2009 order ruling on several Defendants' motions to dismiss.  (Doc. 215).

employees for conspiracy to defraud the Government by getting fraudulent claims submitted by TMI to Lockheed approved, and getting fraudulent claims submitted by Lockheed to the United States paid ("Claim 1"); (2) against Loftis, TMI and others for knowingly submitting false claims to a contractor of the United States, and knowingly using false statements to get the claims paid ("Claim 2"); and (3) against Lockheed for knowingly submitting false claims for payment to the United States and knowingly using false statements to get the claims paid ("Claim 3").  Spencer also raised his own claim against TMI, Loftis, Lockheed and Young for violating the FCA by engaging in collusive bidding ("Claim 4").  (Doc. 101).

Defendants moved to dismiss the Relators' Complaint.  In its motion, the Lockheed Defendants (a group comprised of Lockheed, Young, and Lockheed purchasing agent Harriet Stroh) argued that the Relators' Complaint had to be dismissed for lack of subject matter jurisdiction due to the FCA's "public disclosure" bar.  (Doc. 119 at 6).  In particular, the Lockheed Defendants contended that non-party Andrew Loehr was the true whistleblower who revealed the fraudulent scheme at issue and publicly disclosed it in a 1997 lawsuit against TMI (the "Loehr Litigation").  *Id.* at 5-15.

In a footnote, the Lockheed Defendants also anticipated that they would move to dismiss either Spencer's or Becker's claims based on the FCA's "first-to-file bar," which precludes a second relator from bringing an action based on the same material facts as alleged in a previously filed *qui tam* suit.  *Id.* at I-ii, n.1.  The Lockheed Defendants stated that they could not yet assert the bar because the Relators' initial complaints were sealed.  *Id.*

After the Relators' original complaints were unsealed, the Lockheed Defendants moved to dismiss based on alternative first-to-file theories.  (Doc. 172 at 1).  Specifically, they asserted

3

that Becker was the second relator to assert FCA claims against them based on the alleged

fraudulent pricing scheme by Lockheed Martin and TMI, and his claims therefore should be

dismissed for lack of subject matter jurisdiction.  Alternatively, the Lockheed Defendants urged,

if the Court ruled that Becker's first-filed FCA action against TMI was broad enough to provide

the Government with notice of Spencer's later-filed claims against the Lockheed Defendants,

then Spencer's claims against the Lockheed Defendants should be dismissed for lack of subject

matter jurisdiction based on the first-to-file bar.  *Id.* at 2.

Separately, Defendant Linda Loehr, a Vice President of TMI, moved to dismiss the

Relators' sole claim against her – Claim 1 – for lack of subject matter jurisdiction.  Her motion

was also based on the FCA's public disclosure bar.  This public disclosure, however, was alleged

to result from a different lawsuit, filed in March 2005, namely *JHW Greentree Capital, L.P., et

al. v. Whittier Trust Co.*, Case No. 1:05-CV-02985 (S.D.N.Y.) (the "Greentree Capital case").

(Doc. 181 at 2-4).  Loehr argued that the Relators had drawn facts from the Greentree Capital

case, which they used to support the allegations against her in Claim 1 of the Relators'

Complaint.  *Id.*  Defendant William Johnson, a member of TMI's board, moved to dismiss Claim

1 of the Relators' Complaint against him for the identical reason.  (Doc. 196 at 5-6).

In March 2009, the District Court ruled that the Loehr Litigation public disclosure bar did

not apply to the Relators' claims against the Lockheed Defendants because the Loehr Litigation

did not publicly disclose any claims against those defendants.  (Doc. 215 at 9).  Next, the Court

dismissed Claim 1 as to Defendants Loehr and Johnson due to the Relators' failure to state a

claim against them.  The Court thus denied as moot their requests for dismissal based on the

Greentree Capital public disclosure bar.  *Id.* at 18-19, 21-22.

Finally, the Court turned to the Lockheed Defendants' argument that one of the Relators' claims against them should be dismissed based on the FCA's first-to-file rule.  In reviewing their original complaints, the Court found that there was a material difference.  Becker's original allegations cast Lockheed as a victim, while Spencer painted Lockheed and certain of its employees as participants in the fraud with TMI.  *Id.* at 26.  The Court thus found that Spencer was the first to allege that the Lockheed Defendants were liable for the fraud upon the Government.  *Id.*  Accordingly, the Court determined that dismissal of Becker's claims against the Lockheed Defendants was required due to Spencer's first-filed claims against those defendants.  The Court thus dismissed Becker's FCA claims against the Lockheed Defendants (Claims One and Three) for lack of subject matter jurisdiction, noting that Becker could not participate or recover on those claims.[2]  *Id.* at 11, 27; (Doc. 264 at 4-5).

In April 2012, the parties notified the Court that they had settled their dispute except as to the Relators' statutory claims against the Lockheed Defendants for attorneys' fees, costs, and expenses.  (Doc. 338).  The Court thus dismissed the claims against the Lockheed Defendants.  (Doc. 339).  The parties then filed the motions that are presently before the Court.

## ARGUMENT, APPLICABLE LAW, AND ANALYSIS

A.    *Becker's Public Disclosure Motion and Becker's and Lockheed's Requests for a Stay*

In his *Public Disclosure Motion*, Becker raises two challenges.  He argues that the District Court (1) erred in ruling in 2009 that Spencer was the first to file Claims 1 and 3 against

---

[2] In its original order, the Court dismissed Relators' Claim Three as duplicative of the Government's first and second claims.  (Doc. 215 at 11, 27).  The Court corrected this on reconsideration.  (Doc. 264 at 4-5).

the Lockheed Defendants; and (2) erred in ruling on the Lockheed Defendants' first-to-file challenge before addressing whether the public disclosure bar precluded Spencer from pursuing Claims 1and 3.  (Doc. 341 at 8-9).  Becker contends that before this Court can make an attorneys' fee finding, it must determine whether it has jurisdiction to do so.  *Id.* at 8-9.  If the Court finds Becker's *Public Disclosure Motion* to have merit, he contends that the Court must then revisit the 2009 first-to-file jurisdictional ruling made in Spencer's favor.  *Id.* at 9-10.  Becker seeks a stay in anticipation of a favorable ruling on his *Public Disclosure Motion*, so that he can then file a separate challenge to the Court's first-to-file ruling.  (Doc. 340 at 3).  The Lockheed Defendants join Becker's request for a stay.  (Doc. 353 at 14-19).

On the merits of his public disclosure challenge, Becker argues that the Greentree Capital case publicly disclosed Lockheed's role in knowingly passing along TMI's inflated costs to the Government.  (Doc. 341 at 12-17, 22).  Becker asserts that both his and Spencer's later-filed claims against the Lockheed Defendants were based on the disclosures contained in the Greentree Capital case to the extent that each Relator alleged a claim predicated on TMI's fraudulent pricing scheme.  *Id.* at 11, 17-22.  However, Becker urges that he, not Spencer, was the original source of the information upon which Claims 1 and 3 were based; therefore, his Claims 1 and 3 survive the public disclosure bar, and Spencer's do not.  *Id.* at 22-30.

Spencer responds, *inter alia,* that the Court should not revisit its 2009 decision that denied as moot Loehr's and Johnson's requests for dismissal based on the public disclosures allegedly made in the Greentree Capital case.  (Doc. 355 at 7-11).  Spencer further contends that even if the Court were to address Becker's public disclosure argument, it would fail on the merits.  *Id*. at 9-10, 15-18, 20-21, 23-35, 44-45.  Spencer surmises that the intent behind Becker's

*Public Disclosure Motion* and request for a stay is to forestall Spencer's fee award in the hope of forcing Spencer to agree to share that award with Becker because Lockheed has indicated that Becker is not entitled to any such recovery. *Id.* at 46. Becker replies that he is not asking for reconsideration of the Court's ruling on Loehr's and Johnson's requests for dismissal on public disclosure grounds because this Court never ruled on the public disclosure issue. (Doc. 361-1 at 5).

Be that as it may, Becker's arguments still lack merit. His central contention is that, in its 2009 ruling, the Court should have addressed the applicability of the public disclosure bar to the Lockheed Defendants – vis á vis the Greentree Capital case – before addressing the Lockheed Defendants' first-to-file challenge. The Court, however, had no cause to address whether the Greentree Capital case barred the Relators' claims against the Lockheed Defendants for one very simple reason – the Lockheed Defendants never raised that issue. Indeed, although Becker urges the Court to "now address the jurisdictional question which it declined to address in 2009," the Lockheed Defendants argued only that the *Loehr Litigation* was a public disclosure bar to the Relators' claims. (Doc. 119 at 10-21; Doc. 341 at 7). It was only Defendants Loehr and Johnson who raised a public disclosure bar based on the *Greentree Capital* case. (Doc. 181 at 2-4; Doc. 196 at 5-6). The Court dismissed that argument as moot after finding that the Relators had failed to state a claim against Loehr and Johnson. (Doc. 215 at 23).

Becker suggests that the Court nevertheless must now address whether the public disclosure in the Greentree Capital case is a jurisdictional barrier to Spencer's raising Claims 1 and 3 against the Lockheed Defendants. However, the Court rejected that argument over three years ago when Becker contended that the Court should have *sua sponte* applied the Greentree

Capital public-disclosure argument to the Lockheed Defendants before addressing the Lockheed

Defendants' first-to-file argument.  (Doc. 231 at 1, n.3 & 16) (Becker's *Motion for Certification*

*of Order for Interlocutory Appeal*); (Doc. 256 at 5-6) (*Order* denying *Motion for Certification*,

stating that the Court was not required "to scour the record, without motion or argument from

[the Lockheed] Defendants, to determine if claims against those other Defendants are

jurisdictionally prohibited").  Becker's current argument is merely a variation of that previously-

rejected contention, and the Court should not revisit it.  Becker's *Public Disclosure Motion*

(Doc. 341) should be **DENIED**.  Consequently, Becker's *Motion for Stay* (Doc. 340) and the

Lockheed Defendants' *Motion for Stay* (Doc. 353) should be **DENIED AS MOOT**.[3]  Spencer's

*Amended Motion for Attorneys' Fees* (Doc. 365) is therefore ripe for consideration.

B.      *Plaintiff Spencer's Amended Motion for Attorneys' Fees (Doc. 365)*

        The award of fees, costs, and expenses in a successful FCA action is mandatory, while

the amount of the award is discretionary.  *U.S. ex rel. Longhi v. Lithium Power Technologies,*

*Inc.*, 575 F.3d 458, 475 (5th Cir. 2009); 31 U.S.C. § 3730(d)(1) & (d)(2) (providing that the

prevailing plaintiff is entitled to "an amount for reasonable expenses which the court finds to

have been necessarily incurred, plus reasonable attorneys' fees and costs.").  As the fee applicant,

Spencer has the burden of demonstrating the reasonableness of the number of hours expended on

the prevailing claims.  *See Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990) (noting that the

burden "does not shift to the opposing party merely because that party does not show that the

hours are unreasonable or that it did not make specific objections to the hours claimed").  The

---

[3] Becker's *Objections* (Doc. 360) to Spencer's *Appendix* in support of his response to
Becker's *Public Disclosure Motion* are moot.  The Court did not rely on the appendix in making
a recommendation on the *Public Disclosure Motion*.

majority position seems to be that the prevailing party must demonstrate its entitlement to any challenged costs.  *See, e.g.*, *Asphalt Supply & Service, Inc. v. United States,* 75 Fed.Cl. 598, 602 (Fed. Cl. 2007); *Pehr v. Rubbermaid, Inc.*, 196 F.R.D. 404, 408 (D.Kan. 2000); *John G. v. Board of Educ. of Mount Vernon Public Schools*, 891 F.Supp. 122, 123 (S.D.N.Y. 1995).

Spencer requests from the Lockheed Defendants reimbursement for attorneys' fees, expenses, and costs that he incurred from December 2004 through October 23, 2012, totaling $2,905,198.81.  (Doc. 365 at 1; Doc. 406 at 26).  This figure includes $944,610.51 in costs and $1,960,588.30 in attorneys' fees.  (Doc. 407-2 at 1; Doc. 407-9 at 21).  In support, he has filed under seal unredacted copies of his billing invoices.  (Doc. 396; Doc. 408).  The Lockheed Defendants respond that Spencer's recovery should be limited to a total of $664,387.02.[4]  (Doc. 398 at 12).  They take issue with a number of Spencer's requested reimbursements, which will be addressed separately below.[5]

1.  The E-Discovery Invoices

The Lockheed Defendants first argue that Spencer is improperly seeking reimbursement for electronic discovery ("e-discovery") costs that were not billed to him until after the case was

---

[4] In their original response to Spencer's *Amended Motion for Attorneys' Fees*, the Lockheed Defendants argued that Spencer's fee motion was deficient because much of the information necessary to determine what work was done on Spencer's behalf had been redacted. (Doc. 375 at 14).  Pursuant to the Court's subsequent order requiring Spencer to submit unredacted billing statements, (Doc. 394 at 3), that situation has now been rectified.  The Lockheed Defendants have thus submitted a new response (Doc. 398), and Spencer has filed a new reply (Doc. 406).  Therefore, it has become unnecessary for the Court to address the arguments made in the original response and reply.  *See* Docs. 375, 383.

[5] The Lockheed Defendants also argue that the Court should deny without prejudice Spencer's fee motion pending resolution of Becker's jurisdictional challenge.  (Doc. 398 at 10-12).  That request is now moot in light of the Court's recommendation as to Becker's jurisdictional argument.

settled and which he has not paid.  (Doc. 398 at 13-15).  In response, Spencer filed the affidavit

of Douglas Herman, managing director and partner of UHY Advisors ("UHY"), the company

that provided the electronically stored information ("ESI") services to Spencer during this case.

(Doc. 407-1 at 1).  Mr. Herman states that UHY billed Spencer in three intervals, and its fees

remain outstanding based on an agreement it had with Spencer's attorneys to be paid when the

case settled.  *Id.* at 2-3.

In surreply, the Lockheed Defendants argue that it appears UHY entered into a void

contingency arrangement with Spencer's counsel whereby UHY would get paid only if Spencer's

instant motion is granted.  (Doc. 412 at 5-7).  The Lockheed Defendants contend that Mr.

Herman's expert testimony in support of Spencer's fee petition is inherently biased and should

either be excluded or heavily discounted because of UHY's financial interest in the case.  *Id.* at

6-8.  Further, the Lockheed Defendants urge that this arrangement encouraged UHY to bill

excessively because Spencer's counsel exercised virtually no oversight over UHY's activities.

*Id.* at 9-10.

Spencer counters that he did not enter into a contingency fee arrangement with UHY

because UHY billed its normal hourly rates and expenses and will be reimbursed for them

regardless of the recovery Spencer obtains.  (Doc. 420 at 3-4).  He also argues that Mr. Herman is

not an expert or a merits fact witness who might be barred from testifying in exchange for a

portion of the fee award.  *Id.* at 5-6.  Mr. Herman filed a supporting declaration stating that UHY

and counsel worked pursuant to a verbal agreement, under which UHY would accept deferred

payment for its services if the case resulted in a recovery of statutory fees, expenses, and costs.

(Doc. 420-3 at 3).  If the award was not enough to pay UHY's invoices, Spencer's counsel would

make payments to UHY from future awards in other FCA cases.  *Id.*  If the case was not successful, UHY would receive no compensation.  *Id.*

Because UHY's recovery is conditioned on Spencer's award of costs, it is obvious that UHY has an interest in Spencer recovering its costs in the amount sought.  Further, although the verbal agreement suggests that UHY will ultimately be compensated for all services it provided, even if it is out of counsel's future recoveries in other cases, it also seems obvious that UHY would prefer to be paid now rather than at a future unknown time.  Nevertheless, the Court has not excluded Mr. Herman's testimony from its analysis, but has discounted it to some degree in making its recommendations as to the amount of costs to which Spencer is entitled in the following sections.  *See United States v. Cervantes-Pacheco*, 826 F.2d 310, 316 (5th Cir. 1987) (holding that the credibility of the compensated witness is for the factfinder to decide).

2.  E-Discovery Costs

Under the FCA, in addition to attorneys' fees, both "expenses," and "costs" are recoverable by a prevailing plaintiff.  31 U.S.C. § 3730(d).  Allowable expenses have been held to include expert witness fees, attorney travel costs, and copies of charts used at trial.  *Alcatec, LLC v. United States*, 100 Fed. Cl. 502, 528 (Ct. Fed. Cl. 2011), *aff'd* 471 Fed. Appx. 899 (Fed. Cir. 2012) (expert witnesses); *United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 46 F. Supp. 2d 546, 567 (E.D. La. 1999) (expert witness fees, attorney travel costs, and charts), *vacated on other grounds*, 244 F.3d 486 (5th Cir. 2001); *see also Salazar v. District of Columbia*, 123 F.Supp.2d 8, 16-17 (D.D.C. 2000) (noting that reasonable expenses in 42 U.S.C. § 1983 case included "out-of-pocket litigation expenses for postage, photocopying, telephone calls, facsimile transmissions, messengers, local travel, Westlaw, [and] transcripts.").

Spencer seeks reimbursement of costs in the amount of $944,610.51, of which the Lockheed Defendants challenge $904,923.55, leaving $39,686.96 in costs unchallenged.  (Doc. 400 at 136; Doc. 406 at 24 (noting that UHY gave Spencer a $9,625.00 credit for seven user accounts); Doc. 407-3 at 467).  The Lockheed Defendants first argue that most of the e-discovery costs sought by Spencer are not reimbursable.  (Doc. 398 at 13-20).  In support of their contention, they have supplied an affidavit from George Socha, the president of a company that provides e-discovery consulting and expert services.  (Doc. 399 at 3).

   a) *Uploading and formatting electronically stored information*

The Lockheed Defendants first contend that the $299,710.34 Spencer seeks for uploading and formatting ESI is not recoverable, and only the cost of converting the ESI to a usable format is reimbursable.  (Doc. 398 at 15).  Even if all of the services are reimbursable, the Lockheed Defendants argue that Spencer's costs are unreasonable because (1) he did not format all of his own ESI into the standard format the parties had jointly agreed to, and (2) he did not have to format the Lockheed Defendants' production at all because they produced all ESI in the agreed format.  *Id.* at 15-16.  Mr. Socha opines that, considering the process followed and the description of the work performed (which involved quality checking, minimal formatting, and uploading), a reasonable fee would be $20,000.00.  (Doc. 399 at 4).

Spencer responds that, under the FCA, all costs associated with e-discovery are recoverable.  (Doc. 406 at 22-23).  Mr. Herman of UHY explains that $261,593.36 of the amount Spencer seeks in this category was the cost of technician time for data processing and uploading and creating a search index.  (Doc. 407-1 at 6).  Contrary to Mr. Socha's representation, Mr. Herman contends that the Lockheed Defendants' production was not in "ready to use" format and

12

had an "exceptional amount of errors." *Id.* Thus, another $38,116.38 was spent on necessary repairs to Lockheed's broken and/or corrupt data files. *Id.*

The Lockheed Defendants contend in their surreply that their data was not flawed because they used the same data with no problem and, when contacted by Spencer's counsel on rare occasion about flawed production, they promptly provided a replacement disc. (Doc. 412 at 10-11). Moreover, they point out that if there were problems with their production, Spencer should have just asked them for free, corrected copies rather than have UHY re-process and format the documents at a cost of hundreds of thousands of dollars. *Id.* at 11. In support, Mr. Socha contests Mr. Herman's representation that the Lockheed Defendants' data was corrupt or in an improper format. (Doc. 412-1 at 15). He states that they reviewed all of the production in question and determined that the documents were produced properly in accordance with the parties' joint ESI agreement. *Id.*

As an initial matter, the Lockheed Defendants' reliance on *Fast Memory Erase, LLC v. Spansion, Inc.*, 2010 WL 5093945, *5-6 (N.D. Tex. 2010) for the contention that certain ESI costs are not recoverable is misplaced. *Fast Memory* involved application of a different cost-shifting statute, 28 U.S.C. § 1920, which does not separately allow reimbursement for "expenses." *See, e.g.*, *United States ex. rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1172 (10th Cir. 2009) (holding that "costs" under Federal Rule of Civil Procedure 54 are different from "expenses" under the FCA). Considering that the purpose of the FCA is to recover money defrauded from the government, including the costs to recover the defrauded money, Spencer is theoretically entitled to recover the costs of converting, uploading, and formatting ESI. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537, 551-52 (1943) (noting

that the FCA's purpose is to make "sure that the government would be made completely whole.").

Next, considering the parties' arguments, the law, and the equities, the Court first finds that Spencer should not recover the $38,116.38 that it cost to have UHY fix allegedly broken and/or corrupt data files because Spencer should have contacted the Lockheed Defendants to obtain useable files at no cost.  Moreover, the Court notes that there is a conflict in the evidence regarding whether the Lockheed Defendants' files were in the agreed-upon TIFF file format or whether they required re-processing.  Where, as here, the evidence is in equipoise, Spencer, as the moving party, cannot prove his entitlement to the costs UHY incurred in re-processing the data into the agreed-upon format.  *Asphalt Supply*, 75 Fed.Cl. at 602.  UHY billed Spencer a total of $261,593.36 for re-processing and uploading the Lockheed Defendants' data and creating a search index.  In the absence of more segregated billing records from UHY, the Court finds that one-third of the time billed by UHY was for re-processing the data, one-third was spent on uploading the data, and one-third was spent on creating a search index.  Spencer should recover only for the time UHY spent uploading the data and creating a search index, i.e., two-thirds of the time, which amounts to **$174,395.97**.  *See, e.g.*, *Salazar*, 123 F.Supp.2d at 16-17.

b) *Hosting of electronic database*

The Lockheed Defendants next urge that Spencer improperly requests $440,039.80 for UHY hosting an electronic database.  (Doc. 398 at 16-17, 23).  They argue that expense is non-reimburseable as a matter of law and is, in any event, unreasonably high, inconsistent with Spencer's billing entries, and dubious because the database appears to have been accessible to 13 people even though Spencer's billing entries reflect that no more than three timekeepers were

14

accessing it.[6]  *Id.* at 17.

In support, Mr. Socha points out that during long blocks of time, UHY invoiced Spencer only occasionally and did not provide any breakdown of the charges.  (Doc. 399 at 12, 14, 16-18).  He contends that this is contrary to industry standards, which usually provide for monthly billing and payment as well as a detailed cost breakdown.  *Id.* at 13-14.  For comparison, Mr. Socha provides excerpts of the receipts from RenewData Corp., which provided e-discovery services to the Lockheed Defendants.  *Id.* at 5, 14-16.

Next, Mr. Socha points out a perceived credibility issue with UHY's invoices covering the time period from June 2011 until April 2012, during which UHY billed Spencer $19,739.30 per month for hosting data for a total of $217,214.61.  *Id.* at 16-18.  In particular, Mr. Socha argues that each month UHY charged the identical amount, meaning that the amount of data hosted never changed, which is contradicted by Spencer's attorneys' billing entries.  *Id.* at 4, 17-18.  Thus, Mr. Socha surmises that UHY's invoices and fees were created after the fact rather than contemporaneously with the service provided.  *Id.* at 18.

Additionally, Mr. Socha takes issue with UHY's user access charges for this time period of $1,625.00 per month, noting that the cost reveals that 13 users had access to the system, but the billing records do not reflect that number of actual users.  *Id.* at 18-23.  Mr. Socha thus concludes that UHY's invoice for hosting and user access amounting to $440,039.80 is not credible.  *Id.* at 23.

---

[6] The Lockheed Defendants rely on *Neal v. Honeywell Inc.*, 191 F.3d 827, 834 (7th Cir. 1999) for the proposition that the costs Spencer seeks in this regard are constrained by the list of reimbursable costs contained in 28 U.S.C. § 1920.  However, the *Neal* case involved a different FCA section, which did not provide reimbursement to successful *qui tam* plaintiffs for attorneys' fees, costs, *and* expenses.

In reply, Spencer relies on Mr. Herman's affidavit.  (Doc. 406 at 24-25).  Mr. Herman avers that UHY charged Spencer $39.00 per GB per month for hosting services, which is in line with industry standards, considering the large investment in hardware, software, space, security and maintenance required for the project.  (Doc. 407-1 at 7).  Next, Mr. Herman points out that, while UHY did receive additional data on the dates noted by Mr. Socha, it was either replacement data or small files that did not affect the amount of GB hosted.  *Id.* at 8.

Further, Mr. Herman states that UHY charged Spencer $125.00 per month for each of the 13 user accounts, in line with industry standards, but has since credited Spencer for seven erroneously established accounts for a total credit of $9,625.00.  *Id.* at 6-7; (Doc. 406 at 24).  Last, Mr. Herman notes that UHY created summary invoices for Spencer when asked to do so by counsel and, pursuant to UHY's agreement with counsel, carefully tracked its project manager's hours and tasks.  (Doc. 407-1 at 2-3, 7-8).

In surreply, the Lockheed Defendants note that Spencer did not exercise sufficient oversight over UHY, resulting in UHY billing $440,039.80 over a two-year time frame during which Spencer used only five documents in support of the litigation.  (Doc. 412 at 12).  Further, they point out that UHY billed Spencer for hosting and user access costs of over $235,000.00 between June 2011 and April 2012, even though the case was settled in principle in October 2011.  (Doc. 412 at 12-13; Doc. 412-1 at 13).  Mr. Socha avers that Spencer and UHY should have implemented a cost-effective way to preserve the collected data so it could be retrieved if needed while accounting for the fact that access and searching capabilities were no longer necessary.  (Doc. 412-1 at 13).  Further, the Lockheed Defendants question why even six user accounts were necessary when Spencer's counsel is a two-person law firm.  (Doc. 412 at 12 n.4).

16

Upon consideration of the parties' arguments, the law, and the equities, the Court finds that Spencer is entitled to recover all data hosting charges except for those he incurred from the period of October 2011 through April 2012.  As an initial matter, the $440,039.80 figure appears to be the total of 2 invoices for data hosting services submitted by UHY.  (Doc 400 at 56-57).  The Court notes, however, that the total of the monthly itemizations submitted in support of that figure is significantly less.  (Doc. 407-1 at 15).  Accordingly, the Court will use the lower total.

The parties largely agree that the case was settled in October 2011, and the Court agrees with the Lockheed Defendants' suggestion that Spencer and UHY should have worked together to effectuate a less costly way to preserve the data so it could be retrieved if necessary in the event the settlement fell through.  Accordingly, the Court will deduct from Spencer's cost request $118,435.80, which represents six months of hosting at a cost of $19,739.30 per month.  It is recommended that Spencer is thus entitled to an award of costs of **$257,985.23**, which represents the total cost of UHY's hosting charges from February 2010 through September 2011.[7]  (Doc. 407-1 at 15).

Additionally, although UHY reduced the number of users given access to the data from 13 to six, there does not appear to be any reason why that many accounts were necessary given counsel's representation that his firm consists of only two attorneys and two or three full or part-time support staff.  Accordingly, the Court should allow compensation only for five user accounts.  Thus, the Court recommends reducing UHY's total of $43,875.00 ($1,625.00 monthly fee x 27 months of hosting) to $13,125 ($125.00 x 5 users x 21 months of hosting).  Spencer

---

[7] The cost of hosting the data was not always $19,739.30 each month.  At the start of UHY's hosting duties, the amount of data hosted was much smaller.  (Doc. 407-1 at 15).

should be granted an award of costs for the balance of **$13,125.00**.  That amount, coupled with the Court's recommended award for UHY hosting of data equals an award of costs in Spencer's favor under this category for **$271,110.23**.

c) *ESI extraction and travel costs*

The Lockheed Defendants next contend that Spencer improperly requests reimbursement for unreasonable ESI extraction and related travel costs of more than $100,000.00.  (Doc. 398 at 18).  They maintain that UHY and their vendor, RenewData, both traveled to Arlington, Texas to extract ESI from a collection of about 80 hard drives that were stored there by the Government. RenewData billed the Lockheed Defendants approximately $17,000.00 to travel to Arlington, image the appropriate devices, and extract relevant ESI, but UHY billed Spencer $104,716.10 to perform similar services, including over $10,201.10 in travel costs alone.  The Lockheed Defendants argue that Spencer's request should be reduced by at least $84,716.10.  *Id.*

Spencer replies that the work performed by the respective vendors during the trip was different.  (Doc. 406 at 25).  Mr. Herman avers in support that based on conversations UHY personnel had with RenewData personnel, RenewData was not imaging all of the hard drives as UHY was, but rather was scanning the hard drives for particular information and then imaging just that data.  (Doc. 407-1 at 8).  Attached documentation reflects that UHY provided two examiners to image dozens of hard drives at a fixed cost per hard drive for a total of $61,890.00. (Doc. 407-1 at 16-18).  The cost of the associated media was $12,750.00, for a total of $74,640.00.  *Id.*  The "travel-associated" costs of $10,206.10 were broken down as follows: (1) eight hours of travel time billed at $125.00 an hour for a total of $1,000.00; (2) three days of meals for a total of $687.50; (3) two flights for a total of $970.00; (4) ground transportation for

18

$128.60; (5) 11 hours of onsite preparation billed at $245.00 per hour for a total of $2,695.00; and (6) 13.5 hours of onsite waiting time billed at $350.00 per hour for a total of $4,725.00. *Id.* at 8, 18.  Based on the information provided in the attachment to Mr. Herman's affidavit, the total charge associated with UHY's trip to Arlington was thus $84,846.10.[8]  *Id.* at 18.

The Lockheed Defendants contend in their surreply that, based on the information revealed by the Government's investigation of TMI, RenewData was able to conduct a targeted extraction from the hard drives in Arlington, ultimately requiring imaging of fewer than a dozen documents and largely avoiding extraction of irrelevant material belonging to employees who were not involved in the fraud.  (Doc. 412 at 13).  In contrast, the Lockheed Defendants point out, UHY and Spencer's approach was to copy everything whether it was relevant or not.  *Id.* They assert that Spencer did not use a single document extracted from the 102 hard drives at any deposition or in any discovery response or filing in this case, and they should not have to reimburse Spencer for this frivolous expenditure.  *Id.* at 13 n.7 & 14.  Mr. Socha contends that UHY's extraction of so much data was wasteful and indicative of counsel's lack of oversight. (Doc. 412-1 at 14).

Upon consideration of the parties' arguments, the law, and the equities, the Court finds that Spencer is entitled to recover $20,000.00 for their ESI extraction and travel costs.  The Court finds particularly persuasive the Lockheed Defendants' argument that Spencer could have conducted a more targeted search for relevant documents, thereby saving considerable time and

---

[8] The Court accepts this lower total as the accurate cost due to the explanation provided by counsel and Mr. Herman in support of the lower figure and the lack of documentation to support the higher figure of $104,716.10 presented in UHY's invoice to Spencer.  *See* Doc. 399 at 23.

19

associated expense.  Spencer's course of action was not prudent under the circumstances, considering that he could have conducted depositions to determine how best to conduct more limited discovery, rather than copy all materials even those that were highly unlikely to contain relevant information.  Accordingly, the Court should deduct from Spencer's cost award the sum of $64,846.10, resulting in an award of **$20,000.00**.

      d) *Project management costs*

The Lockheed Defendants next maintain that Spencer improperly requests reimbursement for $35,268.75 in unspecified UHY "project management" costs and $3,245.73 in other unspecified costs identified in Spencer's billing entries of April 30, 2009.  (Doc. 398 at 19).  The Lockheed Defendants also insist that project management costs are not recoverable under 28 U.S.C. § 1920.  *Id.*

Spencer replies through Mr. Herman's affidavit that UHY assigned a project manager solely to this project given its magnitude and complexity, and the project manager tracked his time and efforts.  (Doc. 407-1 at 9).  Attached to Mr. Herman's affidavit is a "detailed listing of project & review management time logged," which contains a list of dates, a notation of hours billed, and the cost per hour charged.  *Id.* at 19-21.  There is no description of the services provided, and on many days the hours billed were minimal, e.g., 30 minutes to a few hours. Mr. Herman represents that this project manager was dedicated solely to this matter and could not substantively manage any other UHY projects for several periods of time.  *Id.* at 9.  The records indicate, however, that the project manager worked for relatively short bursts of time on this case and often went many days, sometimes weeks, and once for several months without doing any work on the case at all.  *Id.* at 19-21.

20

Upon review of the parties' arguments and supporting documentation, as well as consideration of the equities, the Court recommends denial of reimbursement for any of these charges. The record does not reflect the need for a project manager dedicated solely to this case. Even if the Court was inclined to award reimbursement for the hourly costs incurred, UHY did not describe any tasks in relation to the hours logged, so the Court cannot determine if the tasks were necessary or even related to the instant case. Similarly, UHY's invoice did not describe the nature of the $3,245.73 in other unspecified costs. (Doc. 399 at 50). Given the burden of proof, Spencer is not entitled to reimbursement of those costs.

e) *Meal costs*

The Lockheed Defendants next urge the Court to disallow $1,385.62 for "working meals" because such costs are not compensable under either Rule 54 or 28 U.S.C. § 1920. (Doc. 398 at 26). As previously noted, both "expenses," and "costs" are recoverable by a prevailing plaintiff in an FCA action, so the limitations imposed by section 1920 and Rule 54 are not applicable. 31 U.S.C. § 3730(d); *cf. Fast Memory Erase*, 2010 WL 5093945 at *5-6; *Ritchie*, 558 F.3d at 1172. Nevertheless, none of the charges appear to have been incurred while counsel was traveling in connection with the case, so the Court finds them to be unreasonable and recommends that they be excluded. *See United States ex rel. Marchese v. Cell Therapeutics, Inc.*, 2008 WL 4950938, *2 (W.D. Wash. 2008) (excluding cost of meals requested by attorney under FCA "expenses" provision because costs were not incurred while attorney was traveling).

f) *$40,000.00 in sales tax*

Finally, the Lockheed Defendants argue that Spencer is wrongfully seeking reimbursement of the $40,000.00 in sales tax that UHY charged him on non-reimbursable costs.

21

+ (Doc. 398 at 20; Doc. 399 at 54).  Due to the recalculation of the costs described above, the

Court finds that Spencer is entitled to reimbursement for a total of **$546,871.60** ($465,506.20 in

court-ordered costs + $39,686.96 in unchallenged costs x 8.25% tax rate).

    4.  Attorneys' Fee Award

    The most common starting point for assessing a reasonable attorneys' fee under fee-

shifting statutes is to multiply the number of hours reasonably expended on the litigation by a

reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (considering a fee award

under Civil Rights Attorney's Fee Awards Act, 42 U.S.C. § 1988).  When calculating this

"lodestar" figure, the district court should exclude hours that were not reasonably expended, for

example, if the case was overstaffed or the hours were redundant or unnecessary.  *Id.*  Further,

"work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the

ultimate result achieved,'" and no fee is justified for services rendered on such a claim.  *Id.* at

435.

    Spencer seeks an award of $1,960,588.30 in attorneys' fees.[9]  (Doc. 407-2 at 1; Doc. 407-

9 at 21).  As an initial matter, the Lockheed Defendants do not challenge Spencer's attorneys',

legal assistants', or clerical workers' hourly rates as unreasonable.  Spencer's counsel states that

partners charged $600.00 per hour, senior associates charged between $225.00 and $400.00 per

hour, legal assistants charged between $110.00 and $150.00 per hour, and clerical workers

charged between $30.00 and $50.00 an hour.  (Doc. 365 at 6).  Further, Spencer's counsel

submitted an affidavit attesting to the reasonableness of those fees in relation to those charged by

---

    [9] This includes $116,820.00 in fees that Spencer incurred from September 3, 2012
through October 23, 2012 litigating the instant fee petition.  (Doc. 407-9 at 1-21).

other firms of similar size in the area.  (Doc. 366-1 at 2-4).  Given those facts, and the Court's knowledge of fees charged by attorneys and support staff in the local community with reasonably comparable skill, experience, and reputation, the Court finds the rates reasonable.  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (noting that reasonable rates are determined by reference to "those prevailing in the community for lawyers of reasonably comparable skill, experience and reputation.").  In terms of calculating the other half of the lodestar figure, namely the number of reasonable hours expended, the Lockheed Defendants challenge many of the hours Spencer's counsel billed.  The Court will address each challenge in turn.

a)  *Secretarial and Administrative Overhead Costs*

The Lockheed Defendants first object to $193,425.70 charged by counsel for allegedly non-reimbursable administrative overhead and secretarial tasks such as "update document file," "Query PACER regarding blank document received ECF," and "Open new file."  (Doc. 398 at 20-21) (citing App'x, Doc. 399 at 136; Doc. 399-3 at 37-126).

Spencer avers that he wrote off all administrative time to zero.  (Doc. 384-1 at 2; Doc. 407-8 at 4).  Further, Spencer notes, virtually all of the hours the Lockheed Defendants challenge helped Spencer's counsel prepare the case for settlement or trial and are thus reimbursable. (Doc. 406 at 22).  Finally, Spencer points out that his firm is comprised of only two attorneys and two to three full or part-time support staff and, under those circumstances, courts allow recovery at reduced rates for clerical work necessarily performed by attorneys.  *Id.*  He concedes that, upon review, he has located $3,060.00 in entries that might constitute clerical work and deleted those charges.  *Id.*; *see* Doc. 408-4 at 1-6, 9, 11-13, 15-16, 19, 21-22, 24-25, 27-30, 32-33, 37-38, 46, and 48-50.  That leaves $190,365.70 in dispute.

23

On review of a fee application, the Court considers "whether the work performed was 'legal work in the strict sense' or was merely clerical work that happened to be performed by a lawyer." *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 536 (5th Cir. 1986). Nevertheless, a court does not err in refusing to reduce hours sought for work that could have been performed by office personnel as long as the work was done in preparation for trial. *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1583 (5th Cir. 1989); *cf. Corman v. Lifecare Acquisitions Corp.*, 1998 WL 185517, at *2 (N.D. Tex. 1998) (Fitzwater, J.) (holding that clerical and secretarial tasks are not properly the subject of a fee application even if performed by paralegals, but instead are considered part of office overhead and reflected in the attorneys' billing rate).

In light of the Lockheed Defendants' detailed objections to the attorney and support staff hours expended in this matter, this Court has carefully reviewed Spencer's attorneys' time records in conjunction with the parties' written submissions for the purpose of identifying and excluding any "excessive, redundant, or otherwise unnecessary" hours. While the Court will not undertake to recount here every hour found to be properly billed or properly stricken, the undersigned will generally set forth its conclusions in that regard.

While there are several entries indicating that a secretary could have performed the work, such as "filed mediation documents," "marshaled copies of discovery for file," and "arrange for hand delivery of responses to Judge Lindsay," there are many more billing entries supporting Spencer's position that the tasks were best suited to billing paralegals or attorneys. These include entries such as "interoffice meeting regarding Benson's potential appellate plan . . . Rule 26(f) upcoming conference and case law on collusive bidding," "confer regarding redaction of

24

evidence in casemap for privilege purposes," and "email to Hughes at Mills' office re whether Johnson has extension to respond to 2nd Amended Joint Complaint."

Upon review of Spencer's attorney's billing records, the Court finds that roughly 22% of the approximately 600 tasks that the Lockheed Defendants challenge as "administrative/clerical" in nature could have been performed by a secretary rather than by personnel who billed $110.00 to $150.00 per hour and that an adjustment is warranted. Although some tasks were billed at rates as low as $90.00 per hour and a few as high as $600.00 per hour, the vast majority of the challenged entries in this category were billed at the rate of either $110.00 or $150.00.

Nevertheless, Spencer's counsel represents that his is a two-lawyer firm that utilized two or three full or part-time support staffers at any time during this action. (Doc. 406 at 22). The Court thus finds that Spencer is entitled to some compensation for the disputed clerical tasks considering the small size of the firm and the fact that some of the work was necessarily done by paralegals and law clerks rather than by secretaries or other personnel whose salaries are accounted for in a firm's overhead costs. *See Walker*, 99 F.3d at 770 (noting that clerical work should be compensated at a different rate from legal work and reducing hourly rates of attorneys by 64% to 72% for performance of clerical work); *see also Cookston v. Freeman, Inc.*, 1999 WL 714760, *3 n.5 (N.D. Tex. 1999) (Fitzwater, J.) (awarding reduced rate of $35.00 per hour for fees for clerical work performed by solo practitioner with one full time secretary, rather than $200.00 lawyer rate). The Court will thus adjust its original 22% calculation excessive costs downward to a 20% to allow for some compensation of billable staff performing such administrative tasks, and apply a 20% across-the-board reduction. Accordingly, the Lockheed Defendants' request for a reduction of fees should be granted to the extent that attorneys' fees

25

should be reduced by 20% of the challenged total in this category, which equals **$38,073.14**.

   b)  *Fees associated with disputes between Becker and Spencer*

The Lockheed Defendants next assert that Spencer impermissibly seeks reimbursement of attorneys' fees related to disputes between himself and Becker.  (Doc. 398 at 21) (citing App'x, Doc. 399 at 136; Doc. 399-3 at 127-40).  They argue that they did not participate in those disputes and are thus not required to reimburse Spencer for those fees.  *Id.*  The total fees the Lockheed Defendants challenge under this category are $140,372.00.  (Doc. 399-3 at 140).

Spencer replies that there are no attorneys' fees attributable solely to Becker because there were no disputes between them until the instant motion to stay the determination of the attorneys' fee award.  (Doc. 406 at 21).  Moreover, Spencer points out, the Lockheed Defendants have joined Becker in seeking this stay.  *Id.*  Spencer urges that the Lockheed Defendants have not identified any other disputes that did not involve them or inure to their benefit had Spencer not expended time on such issues.  *Id.*

Various courts have held that relators are not entitled to recover their attorneys' fees for litigation against a co-plaintiff regarding their share of a *qui tam* recovery.  *See, e.g.*, *United States ex rel. Taxpayers Against Fraud v. General Electric Co.*, 41 F.3d 1032, 1046 (6th Cir. 1994).  The Court of Appeals for the Sixth Circuit held that the defendant in that case, General Electric, was not responsible for the fees because, although GE assisted in the government's efforts to reduce the relators' award, its role was relatively small.  It had no legal standing or right to participate in the relators' share litigation.  Additionally, nothing in the record suggested that the government initiated its contest against the relators because of GE or that GE prolonged the litigation process or could have hastened its conclusion.  *Id.*; *see also Bigby v. City of*

26

*Chicago*, 927 F.2d 1426 (7th Cir. 1991) (refusing to award plaintiffs the attorneys' fees they incurred during the course of collateral litigation against third-party intervenors); *United States ex rel. Thompson v. Walgreen Co.*, 621 F. Supp. 2d 710, 727 (D. Minn. 2009) ("The greater weight of authority disallows compensation for attorneys' fees and costs incurred in connection with the relator's share negotiation/litigation. Defendant here had no involvement in that collateral proceeding and should not be required to bear the expense.").

The Court finds the *Taxpayers Against Fraud* approach to be well reasoned and adopts it here, particularly since Spencer has not cited to any caselaw to the contrary.  The initial litigation between Becker and Spencer regarding how they would share the proceeds at stake involved only themselves and the Government, not the Lockheed Defendants.  *See* Doc. 338 at 1 (Settlement Agreement indicating that Becker, Spencer, and the Government had agreed how to share settlement proceeds).  There is no suggestion that the Lockheed Defendants had any particular legal interest in how the parties would divide up any settlement.  Moreover, it does not appear that the Lockheed Defendants had any right to participate in that portion of the litigation or that they prolonged the litigation process or could have hastened its conclusion.  *Taxpayers Against Fraud*, 41 F.3d at 1046.  Upon review of Spencer's attorney's billing records, the Court finds that the litigation that directly related to the sharing agreement involved approximately one-third of the time disputed by the Lockheed Defendants.

As to the remaining hours that the Lockheed Defendants dispute, however – roughly from June 2011 forward – the litigation focused mainly on the settlement of the action.  All parties were directly involved in that process, which necessarily involved Spencer's consideration of how the sharing agreement he had negotiated with Becker impacted any proposal or agreement to

settle.  At that point, the Lockheed Defendants were actively participating in the process, and the Court finds that the fees billed by Spencer's counsel thereafter are compensable even if the billing statements mention the sharing agreement in passing.

Further, immediately following settlement, Becker filed the instant *Motion to Stay* and jurisdictional challenges, and the Lockheed Defendants also seek a stay pending the Court's ruling and are benefitting from the instant proceedings because they have had a reprieve from paying Spencer's attorneys' fees.  Accordingly, the Court finds that the fees billed by Spencer's counsel following the settlement of this case also are compensable.  A sampling of the attorney fee records reveals that roughly one-third of Spencer's counsels' time was devoted to each phase of this disputed category, namely (1) negotiation of the sharing agreement, (2) settlement of the case, and (3) the post-settlement attorneys' fee litigation.  Therefore, the Lockheed Defendants are only entitled to a one-third reduction of the fees in this category, representing a deduction of the time spent on the negotiation of the sharing agreement.  This results in a reduction of **$46,743.88** from Spencer's attorneys' fees.

c)  *Fees associated with disputes between Spencer and other defendants*

The Lockheed Defendants next argue that Spencer improperly seeks $136,763.00 in fees for work performed in his pursuit of unsuccessful claims against Linda Loehr.  (Doc. 398 at 21-22) (citing App'x, Doc. 399 at 136; Doc. 399-3 at 141-54 ).  Further, they argue that it would be unfair to require them to pay all of Spencer's fees and costs, which cover claims against the bankrupt TMI, its former beneficial owner Loehr, and its imprisoned former CEO Loftis, simply because Lockheed Martin is solvent and made the business decision to settle the case.  *Id.* at 22.

Spencer replies that his fees need not be apportioned among the other defendants because

28

his settled claims against the Lockheed Defendants were inextricably tied to his claims against the other conspirators.  (Doc. 406 at 19-21).  Spencer also contends that the Court should impose joint and several liability for attorneys' fees against the Lockheed Defendants because there existed in this case a "single indivisible injury," and "each party played a substantial role in the litigation."  (Doc. 383 at 15-16).

The most critical factor in determining the amount of attorney's fees to award is the degree of success obtained.  *Hensley*, 461 U.S. at 436.  Where a litigant succeeds on a claim against only some of the defendants, his attorneys' fees should not be reduced to a *pro rata* share if he is unsuccessful against some of them as long as the claims are interrelated and stem from the same facts.  *Cobb v. Miller*, 818 F.2d 1227, 1233-34 (5th Cir. 1987); *see also Longhi*, 575 F.3d at 476 (holding that the district court properly awarded attorneys' fees for successful *qui tam* relator for entire action even though relator was only successful on four claims out of 21, because the claims were not factually distinct, they arose from the same actors, and involved the same illegal intent to defraud).

Claim 1, the only claim filed against Loehr, was also brought against all of the other Defendants.  The claim charged conspiracy to defraud the Government by submitting fraudulent claims (1) from TMI to Lockheed for approval, and (2) from Lockheed to the United States for payment.  (Doc. 101 at 10-14).  Loehr was alleged to have been involved in the fraud by virtue of her positions as Vice President of TMI and a member of the board of directors from 1997 until at least 2004.  *Id.* at 4, 11.  Spencer and Becker alleged that she became aware of the fraudulent charges underlying Claim 1 through Andrew Loehr's statements and warnings about TMI's overcharges of Lockheed.  *Id.* at 10-11.  Loehr moved to dismiss the claim against her for lack of

subject matter jurisdiction as well as failure to state a claim, and her motion was granted on the latter grounds.  (Doc. 181; Doc.  215 at 18-19).  Upon review of the complaint, it is evident that the case against Loehr, although not successful, was interrelated with the claims against the other Defendants and stemmed from the same facts.  Accordingly, the Court should decline to reduce Spencer's attorneys' fees to a *pro rata* share based on the lack of success on his claim against Loehr.  *Cobb*, 818 F.2d at 1233-34.

d)  *Fees for editing and reviewing attorney billing statements*

The Lockheed Defendants next argue that Spencer improperly seeks reimbursement for $115,710.00 for approximately 200 hours (at a rate of $600.00 per hour) his lead counsel spent reviewing and correcting his firm's billing statements.  (Doc. 398 at 22-23) (citing App'x, Doc. 399 at 136; Doc. 399-3 at 155-59).  The Lockheed Defendants maintain that the time expended on this administrative task was unreasonable, especially considering that counsel included many billing entries for non-reimbursable tasks.  *Id.*  Spencer replies that time spent preparing counsel's fee application and litigating the fee award is compensable.  (Doc. 406 at 9, 13-14).

Generally, attorneys' fees requested to prepare a fee application are compensable.  *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996).  Nevertheless, the fees must be reasonable and necessary.  *See Hensley*, 461 U.S. at 433.  Upon review of the parties' arguments, the caselaw, and the billing records in question, the Court concludes that a 30% reduction in the fees that Spencer requests is appropriate.  The Court recognizes that Spencer's counsel necessarily spent time reviewing the firm's billing records in the exercise of his billing judgment as he was required to do.  *Walker*, 99 F.3d at 770 (noting that counsel is required to demonstrate the exercise of billing judgment).  Nevertheless, the undersigned believes that (1) the Lockheed

30

Defendants should not be penalized because Spencer's counsel had to correct his billing records

to eliminate duplicate and erroneous entries that were not attributable to them, and (2) the task

could have been completed more efficiently.  The Court also takes into consideration the fact that

it found numerous administrative/clerical entries that had to be redacted from the records,

suggesting that counsel's review was not as painstaking as the number of hours billed for

reviewing the billing records suggests.  For the above reasons, the Court should deduct

**$34,713.00** from the attorneys' fees owed to Spencer.

    e)  *Work unrelated to the case*

    The Lockheed Defendants next urge that Spencer improperly seeks $69,825.00 in fees for

work unrelated to this litigation, such as (1) reviewing pleadings in TMI's bankruptcy case; (2)

researching garnishment issues relating to Todd Loftis; (3) advising Spencer about personal and

business matters; (4) working on other current or potential FCA cases; and (5) press and media

relations.  (Doc. 398 at 23-24) (citing App'x, Doc. 399 at 136; Doc. 399-3 at 160-76).

    Spencer replies that his attorneys' bills are not padded with work attributable to other

cases or collateral matters.  (Doc. 406 at 14-15); *see also* Doc. 408-5 at 28-29; Doc. 408-6 at 1-9

(Spencer's App'x containing responses to Lockheed Defendants' objections).  Spencer also

reiterates that his settled claims against the Lockheed Defendants were inextricably tied to his

claims against the other conspiring defendants, and all fees related to the other defendants are

therefore recoverable.  (Doc. 383 at 1-5, 11-12, 15-16; Doc. 406 at 17-21).

    As already noted, where a litigant succeeds on a claim against some defendants, he is

entitled to full attorneys' fees if the claims against all of the defendants stemmed from the same

facts.  *Cobb*, 818 F.2d at 1233-34.  The Court has reviewed the Lockheed Defendants'

complaints as to the particular charges in this category.  Upon consideration of the parties' arguments and the law, the undersigned finds that Spencer is entitled to attorneys' fees for reviewing the pleadings in TMI's bankruptcy case and researching garnishment issues relating to Todd Loftis.  In short, the claims against the Lockheed Defendants, TMI, and Todd Loftis arose out of the same facts, Spencer and the Government jointly sought relief against the bankrupt TMI, and Spencer's research related to the available damages.

Further, the Lockheed Defendants' arguments that counsel was advising Spencer about personal and business matters is not well taken.  The Court's review reveals that the entries in question involved counsel's discussion of the risks of litigation with Spencer, which is a permissible category of recovery.  *See, e.g.*, Doc. 400-3 at 160 ("extensive commo with client re potential exposure, loss of business and retirement"); *id.* ("commo with client re continued communication re concerns voiced").

As to the very few entries addressing press and media relations, those appear to relate to actual or potential inquiries from the press in terms of what Spencer could expect to face *vis á vis* the risks of litigation, which the Court has already found to be a compensable category.  *See, e.g.*, Doc. 408-5 at 29 ("Commo with client re contacts from press, exposure risks, specific inquiries by press"); *id.* ("Commo with client re possible PR . . . contacts").  Finally, the Lockheed Defendants' complaints about Spencer's counsel charging for work conducted on other cases is moot as counsel has agreed to adjust his bills to delete those amounts.  (Doc. 408-5 at 29; Doc. 408-6 at 3-5).  The total adjustments thus made result in the deduction of **$420.00**.

f) *Excessive hours for work performed*

The Lockheed Defendants next claim that Spencer's billing statements include

32

$56,160.00 in fees for numerous entries that are excessive for the work performed.  (Doc. 398 at 24) (citing App'x, Doc. 399 at 136; Doc. 399-3 at 177-80).  Spencer responds that he has made appropriate adjustments to the few errors that the Lockheed Defendants have pointed out.  (Doc. 406 at 12, 24).  In relation to one double entry, counsel has deleted $8,760.00.  (Doc. 408-6 at 10).

Upon review of the parties' arguments, including those contained in their respective billing spreadsheets, the Court finds that several hours that counsel spent "reviewing" pleadings and summarizing emails were excessive, totaling $8,550.00.  (Doc. 400-3 at 177-80).  Additionally, Spencer's counsel agreed to remove one more duplicate entry totaling $3,360.00.  (Doc. 408-6 at 12).  The Court, thus, should deduct a total of **$20,670.00** from Spencer's fee award.

g) *Vague billing entries*

The Lockheed Defendants next assert that Spencer's records contain $51,373.00 worth of entries that are too vague to allow a determination of whether the hours were reasonably spent on this case.  (Doc. 398 at 24).  Spencer responds that his attorneys' fees are sufficiently documented and, in any event, courts do not typically reduce hours for vague entries if the context of the entry makes its meaning clear.  (Doc. 406 at 14-15).

The Court has broad discretion to eliminate billing entries that are unduly vague.  *Walker v. City of Mesquite, Tx.*, 313 F.3d 246, 252 (5th Cir. 2002).  Upon review of the parties' arguments, including those contained in their respective billing spreadsheets, and the Court's knowledge of the case chronology, the Court finds that there is a small percentage of unduly vague billing entries, which cannot readily be correlated with the timeline of the litigation.  *See,*

33

*e.g.*, Doc. 400-3 at 182 ("Review transmittal from client"); Doc. 400-3 at 184 ("Attention to case activity"); Doc. 400-3 at 185 ("Discovery").  *Cf. Walker*, 313 F.3d at 252 n.4 (stating that "research regarding" and "research legal issues" were vague billing entries) and *League of United Latin American Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997) (finding billing entry "research and review of cases" vague).

Due to the vagueness of a small percentage of the entries the Lockheed Defendants listed, the undersigned finds that an across-the-board reduction amounting to 10% of the requested cutbacks in this category is appropriate.  *See Freiler v. Tangipahoa Parish Bd. of Education*, 185 F.3d 337, 349 (5th Cir. 1999) (noting that reducing the overall number of hours by a percentage did not constitute error).  Accordingly, the Court should reduce Spencer's attorneys' fees by **$5,137.00** for vagueness.

h)  *Fees associated with Spencer's motion to compel ESI in native format*

The Lockheed Defendants next urge the Court to disallow $46,650.00 in fees that Spencer seeks for work performed on a frivolous motion to compel the production of all ESI in native format.  (Doc. 398 at 25).  The Lockheed Defendants urge that the relief sought in the motion was contrary to the terms of the parties' ESI agreement, and Spencer ultimately withdrew it.  *Id.*

Spencer responds that his motion to compel was not frivolous because the parties' agreement supported the understanding that native documents could be requested as the agreement required that the material be maintained in that format.  (Doc. 406 at 19).  Further, Spencer maintains that he withdrew his motion at the request of the Government after circumstances changed, not because it was frivolous.  *Id.*  Spencer does not contest the amount of attorneys' fees spent litigating the motion.

34

Even if Spencer's ESI motion was not frivolous, he withdrew it, and "plaintiffs do not

have the right to bill for . . . time on issues on which they do not prevail . . . [P]laintiffs cannot

have prevailed on issues they did not pursue." *Walker*, 99 F.3d at 769.  Because Spencer did not

pursue the motion, it is appropriate to reduce his attorneys' fees by the **$46,650.00** involved in

litigating it.  *See Onix Cornejo v. SY Food, Inc.*, 2009 WL 3013519, *4 (S.D. Tex. 2009)

(eliminating attorneys' fees for time spent litigating frivolous summary judgment motion).

I)  *Fees related to redacting non-privileged billing entries*

The Lockheed Defendants next urge the Court to reduce Spencer's fee award by the

$11,625.00 that counsel spent redacting billing entries that are the subject of the instant motion

for fees, which this Court previously determined were not privileged.  (Doc. 398 at 25-26).

Spencer responds that time spent redacting billing records is part of fee application litigation and

is thus compensable.  (Doc. 406 at 13-14).

Upon review of the parties' arguments, the Court finds that Spencer is entitled to

compensation for attorney time spent redacting billing records.  While the Court did note that it

could discern no reason that Spencer would need to redact any of the billing invoices, that was

after the fact.  (Doc. 394 at 3).  The undersigned cannot say that Spencer's redactions were made

frivolously or in bad faith at the time that he made them.  Accordingly, no deduction is warranted

in this category.

j)  *Motions that were never filed*

The Lockheed Defendants next ask the Court to deduct from Spencer's fee award

$3,915.00 for attorneys' fees incurred in preparing motions and pleadings that were never filed.

(Doc. 398 at 26).  Spencer responds that because fees are awarded to a relator in a successful

35

action, it is inappropriate to deny fees for motions that, after being prepared, were not needed. (Doc. 406 at 18).

Spencer is not entitled to compensation for the attorney time spent drafting the unfiled motions and pleadings in question. *Walker*, 99 F.3d at 769 ("plaintiffs do not have the right to bill for . . . time on issues on which they do not prevail [and] plaintiffs cannot have prevailed on issues they did not pursue."). Accordingly, a **$3,915.00** deduction is warranted in this category.

   k) *Billing judgment*

The Lockheed Defendants additionally request that the Court reduce Spencer's fee award by 15% because Spencer's counsel failed to exercise billing judgment. (Doc. 398 at 27-28). In particular, the Lockheed Defendants argue that counsel's sworn statement that he did exercise such judgment is insufficient when multiple entries suggest that counsel failed to make any effort to write off unproductive or excessive time. *Id.* at 28-29.

Spencer responds that counsel's exercise of billing judgment is evidenced by numerous entries in the time slips that reflect "no charge" as well as counsel's sworn declaration that he spent almost 190 hours writing all administrative charges off, deleting various entries, and reviewing the time sheets to avoid duplicate billings. (Doc. 384-1 at 2; Doc. 406 at 9-10; Doc. 407-8 at 4). Counsel further states that he is aware of no method to "redline" entries in his firm's billing software to show changes, but he believes accuracy is best served by using the software rather than paper time slips. (Doc. 406 at 10; Doc. 407-8 at 4). He notes that the few entries the Lockheed Defendants specifically criticize from a seven-year billing period were minor, and he has deleted them. (Doc. 406 at 11-12).

The exercise of billing judgment refers to the usual practice of law firms writing off

unproductive, excessive, or duplicative hours.  *Walker*, 99 F.3d at 769.  The party seeking an award of attorneys' fees bears the burden of proving that it exercised billing judgment.  *Id.* at 770.  "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment."  *Id.*  The appellate court has found no evidence of billing judgment where a law firm did not charge for (1) inadequately documented time; (2) time spent on losing issues; and (3) time spent on issues that ultimately were not pursued.  *Id.* at 769.  The court noted that the deletion of those items did not indicate the exercise of billing judgment because the firm had no right to bill for them.  *Id.*  Further, the appellate court noted that the district judge did not find that any other time had been written off, and indeed there was no record of such since the attorneys claimed to have written the hours off before recording them.  *Id.*  The panel ruled that the district court's finding that the firm had exercised billing judgment was clearly erroneous, and a 15% reduction in the fee award was warranted.  *Id.*

In *Hopwood v. Texas*, 236 F.3d 256 (5th Cir. 2000), the district court described specific instances of lack of billing judgment, such as the thousands of dollars spent "repeatedly reading and reviewing the same Supreme Court cases," "reading a national best seller on affirmative action," and "attending a panel discussion regarding the impact of the case."  The appellate court held that the district court did not abuse its discretion in reducing the fee award by 25% for failure to exercise billing judgment even though counsel had countered on appeal with an affidavit attesting that he did exercise billing judgment.  236 F.3d at 279.

Upon review of the parties' arguments, the caselaw, and counsel's billing records, the undersigned concludes that counsel has produced sufficient evidence that he exercised billing

37

judgment.  In addition to his sworn statement and the entries in his timesheets indicating that he

dedicated substantial time to revising and compiling the timesheets for submission to the Court,

there are notations in the bills themselves that indicate that considerable time was written off.

*See, e.g.*, Doc. 407-3 at 8, 11, 14-16, 21-22, 24, 29, 31-32, 38.  Accordingly, the Court will not

reduce Spencer's fee award for failure to exercise billing judgment.

l) *Disproportionality of fee award*

Lastly, the Lockheed Defendants urge the undersigned to reduce Spencer's fee award by

30% because the amount of fees claimed is disproportionate to his level of success in the

litigation.  (Doc. 398 at 28, 30).  They claim that they settled the case for a total of $15.85

million, which is far less than the hundreds of millions of dollars the Plaintiffs and Government

sought.  *Id.* at 29.  Of the total amount awarded, the Lockheed Defendants note that Spencer

received only $1.4 million.

Spencer responds that in cases brought under private attorney general statutes such as the

FCA, public policy supports the award of attorneys' fees even in cases where the damages are

nominal.  (Doc. 406 at 15-16).  Additionally, Spencer argues that the Lockheed Defendants

should not compare Spencer's share to his attorneys' fees, but rather to the total damages

obtained for the Government as well since the purpose of the FCA is to encourage

whistleblowers to spend their time and resources to prosecute actions on behalf of the

government.  *Id.* at 17.

Cases interpreting the attorneys' fee provision of the FCA are limited.  Thus, case law

discussing 42 U.S.C. § 1988, which provides for the recovery of attorneys' fees for successful

civil rights plaintiffs, is useful in interpreting the FCA's fee provisions.  *See, e.g., Fox v. Vice*,

38

131 S. Ct. 2205, __ (2011) ("When a plaintiff succeeds in remedying a civil rights violation, . . .

he serves as a private attorney general, vindicating a policy that Congress considered of the

highest priority.") (alterations omitted); *cf. United States ex rel. Jamison v. McKesson Corp.*, 649

F.3d 322, 330 (5th Cir. 2011) (quotation omitted) (noting that the purpose of FCA is to cast a

wide net to catch wrongdoers by use of "private attorneys general.").

An award of attorneys' fees need not be commensurate with the actual dollars awarded to

the plaintiff. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395 (5th Cir. 2003) (civil rights

action). The Supreme Court has held that the amount of damages a plaintiff recovers is relevant

to the amount of attorneys' fees to be awarded, but it is only one of many considerations. *City of*

*Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (civil rights action). In *Brantley v. Surles*, 804

F.2d 321, 326-27 (5th Cir. 1986), the appellate court upheld an attorney's fee award nearly twice

as large as the damages recovered. The court noted that there is "no rule of proportionality

between fee awards under section 1988 and the amount of damages a civil rights plaintiff

actually recovers." *See also Rivera*, 477 U.S. at 564-65, 581 (1986) (affirming award of

$245,000.00 in attorney's fees where prevailing plaintiff recovered only $66,700.00 in damages).

In *Cobb v. Brantley*, the court held that the district court had erred in reducing the lodestar by

two-thirds where the plaintiff was awarded essentially nominal damages and was successful

against only one of the three defendants. 818 F.2d 1227, 1232-33 (5th Cir. 1987) (discussing

section 1988). The court reversed for entry of the lodestar award. *Id.* at 1235.

After the above deductions, Spencer's attorney fee award now stands at $1,761,206.28

($1,960,588.30 minus total deductions of $199,382.02). This amount is $361,206.28 more than

the $1.4 million in damages that Spencer received, and it is $14,638,793.72 less than the total

amount of the settlement.  Viewed another way, the fee award the Court proposes is

approximately 26% higher than Spencer's recovery and less than one/ninth the size of the entire

recovery.  As noted above, attorneys' fee awards of similar proportions have been upheld in the

past.  Considering the scale of the fraud allegedly perpetrated upon the Government in this case,

the investment of time and effort expended by Spencer and his counsel to litigate this case, and

whether viewed as a proportion of the award Spencer obtained or the total amount of the

settlement, the undersigned finds that Spencer's proposed fee award of $1,764,266.28 is not

disproportionate.

     m)  *Application of the Johnson factors*

Once the lodestar figure is calculated, it then may be adjusted "upward or downward

depending upon the respective weights of the 12 factors set forth in *Johnson v. Georgia Highway

Express, Inc.*"  *Matter of Fender*, 12 F.3d 480, 487 (5th Cir. 1994).  The *Johnson* factors consist

of: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions

presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the

fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the

amount involved and the result obtained; (9) the experience, reputation and ability of the

attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional

relationship with the client; and (12) awards in similar cases.  *Migis v. Pearle Vision, Inc.*, 135

F.3d 1041, 1047 (5th Cir. 1998) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d

714, 717-719 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeson*, 489 U.S.

871 (1989)).

As the Fifth Circuit explained in *Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761 (5th Cir. 1996):

> The first factor already is included in the lodestar, and the district court must be careful . . . not to double count a *Johnson* factor already considered in calculating the lodestar[.]  The Supreme Court has limited greatly the use of the second, third, eighth, and ninth factors, and we have held that enhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts . . . An enhancement based on the eighth factor is appropriate only when the fee applicant can demonstrate that it is customary in the area for attorneys to charge an additional fee above their hourly rates for an exceptional result[.] . . .  The Supreme Court has barred any use of the sixth factor.  The seventh factor is subsumed in the number of hours reasonably expended.

*Id.* at 771-72 (citations, quotations, and footnote omitted).  The lodestar is presumptively reasonable and should be modified only in exceptional cases.  *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

Spencer contends that the application of the *Johnson* factors supports the fee he requests in this case, and he does not seek any adjustment to the fee award based on *Johnson*.[10]  (Doc. 365 at 10; Doc. 406 at 25-26)).  Upon independent review of the *Johnson* factors, there does not appear to be any justification for enhancing or lowering the lodestar.  The time and labor required for the litigation (factor 1) have already been accounted for in calculation of the lodestar.  *Walker*, 99 F.3d at 771.  Moreover, there is no specific evidence to warrant an enhancement based on (1) novelty and difficulty (factor 2), (2) the skill required to litigate the case (factor 3), (3) the amount involved and results obtained (factor 8), and (4) the experience, reputation, and ability of Spencer's attorneys (factor 9).  Regarding whether other employment was precluded

---

[10] The Lockheed Defendants do not directly address any of the *Johnson* factors in their response brief.

due to the case (factor 4), while Spencer's representation may have precluded some other work, counsel does not state that it was significant. Additionally, the Court already has found the hourly fees charged to be reasonable (factor 5). The Supreme Court bars consideration of whether the fee was contingent (factor 6). *Walker*, 99 F.3d at 772. In relation to the remaining considerations (factors 7, 10-12), counsel does not suggest that the application of the *Johnson* factors resulted in problems that were outside the norm in a large FCA case such as this which is well within his realm of expertise. (Doc. 365 at 9-10).

n) *Enhancement of the fee due to other extraordinary circumstances*

If the Court reduces the lodestar for any reason, Spencer requests that it award a fee enhancement pursuant to *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010) due to counsel's extraordinary outlay of expenses and the protracted duration of this action. (Doc. 406 at 24-25). Because the Court recommended reduction of some of counsel's hours, thereby affecting the lodestar calculation, the undersigned will address Spencer's argument for a fee enhancement based on *Perdue*. "A fee applicant seeking an enhancement must produce 'specific evidence' that supports the award." 130 S.Ct. at 1673.

In *Perdue*, the Supreme Court noted as an initial matter that an attorney who represents a civil rights litigant should understand that payment of fees will generally not come until the end of the case, if at all. *Id.* at 1675. However, the Court found that an enhancement due to delay in payment may be appropriate where an attorney met with unanticipated delay, particularly delay unjustifiably caused by the defense. *Id.* Nevertheless, there must be proof in the record that the delay was out of the ordinary range that should be expected by attorneys who litigate the particular type of case. *Id.* at 1676.

In this case, the Court does not find any record evidence demonstrating that the delay involved was extraordinary considering the scope of the allegations.  Indeed, Spencer's counsel has acknowledged that the representation of plaintiffs in FCA litigation is inherently time consuming.  (Doc. 365 at 9).  Counsel also has not directed the Court to any particular record evidence showing that the case involved unanticipated delay, particularly delay unjustifiably caused by the Lockheed Defendants.  Accordingly, the Court does not recommend an enhancement of the lodestar based on *Perdue*.  Therefore, the undersigned recommends that the District Court award the fees, expenses, and costs in the amounts set forth above.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that the District Court **DENY** Plaintiff Becker's *Public Disclosure Motion* (Doc. 341) and **DENY AS MOOT** Plaintiff Becker's *Motion for Stay* (Doc. 340) and Lockheed's *Motion for Stay* (Doc. 353).  Further, the undersigned recommends that Plaintiff Spencer's *Amended Motion for Attorneys' Fees* (Doc. 365) be **GRANTED** to the extent that Spencer be awarded **$1,761,206.28** in attorneys' fees and **$546,871.60** in costs.

**SO RECOMMENDED** on December 12, 2012.


RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE