IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel*., | § | |
| **JOHN BECKER,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:05-CV-0627-L** |
| | § | (Consolidated with 3:05-CV-2301-L) |
| **TOOLS & METALS, INC.,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are the following motions:

1.   Qui Tam Plaintiff Becker's Motion for Stay of Proceedings Regarding Recovery of Costs,

Fees, and Expenses Pending Resolution of Jurisdictional Questions Regarding the First and

Third Claims in the Qui Tam Plaintiffs' Second Joint Amended Complaint (Doc. 340)

("Becker's Motion to Stay"), filed on April 11, 2012;

2.   Qui Tam Plaintiff Becker's Motion on Public Disclosure Grounds (31 U.S.C. § 3730(e)(4))

Challenging the Court's Jurisdiction to Award Costs, Attorney's Fees and Expenses to Qui

Tam Plaintiff Spencer, with Respect to the First and Third Claims in the Qui Tam Plaintiffs'

Second Joint Amended Complaint (Doc. 341) ("Jurisdictional Challenge"), filed on April 11,

2012;

3.   Relator Robert B. Spencer's First Amended Motion for Statutory Attorneys' Fees and Costs

Pursuant to 31 U.S.C. § 3730(d) (Doc. 365) ("Motion for Attorney's Fees"), filed on June

14, 2012; and

4.   Lockheed Martin Corporation's Motion to Stay Determination of All Proceedings Relating

**Memorandum Opinion and Order – Page 1**

to Attorneys' Fees, Expenses and Costs Until Relator Becker's Jurisdictional Challenge is Resolved (Doc. 353) ("Lockheed's Motion to Stay"), filed on April 11, 2012.[1]

The above motions were referred to Magistrate Judge Renee Harris Toliver, who entered Findings, Conclusions and Recommendation of the United States Magistrate Judge ("Report") on December 12, 2012, recommending that the court: deny Becker's Jurisdictional Challenge (Doc. 341); deny as moot Becker's Motion to Stay (Doc. 340) and Lockheed's Motion to Stay (Doc. 353); and grant Spencer's Motion for Attorneys' Fees (Doc. 365) to the extent that Spencer be awarded $1,761,206.28 in attorneys' fees and $550,930.54 in costs. Qui tam Plaintiffs John Becker ("Becker") and Robert Spencer ("Spencer") both filed objections to the Report. Lockheed Martin Corporation ("Lockheed") also filed objections to the Report.

Except for the motions to stay, which are reviewed under a different standard, the court has made a de novo review of the portions of the magistrate's findings and conclusion that were objected to by the parties. After careful consideration of the parties' motions, briefing, evidence, applicable law, the record in this case, and the findings and conclusions of the magistrate judge, the court determines that the findings and conclusions of the magistrate judge are correct, **except as herein stated**. The court determines that the award of expenses and costs should be reduced by $1,650 from that recommended in the Report and that the award of attorney's fees should be reduced by $85,883 from the amount recommended. The court therefore **sustains in part and overrules as moot in part** Becker's objections made in support of his Jurisdictional Challenge and Motion to Stay; **overrules** Spencer's objections to the Report regarding Spencer's Motion for Attorney's Fees;

---

[1] Lockheed also moved to strike Spencer's Motion for Attorney's Fees, and in the alternative for limited discovery and an extension of the time to respond to relator Spencer's motion for attorney's fees and costs. These motions were resolved by the magistrate judge and are no longer pending.

**Memorandum Opinion and Order - Page 2**

**sustains in part and overrules in part** Lockheed's objections to the Report regarding Spencer's Motion for Attorney's Fees; and **accepts as modified** the magistrate judge's findings and conclusions as those of the court. Accordingly, the court **denies** Becker's Jurisdictional Challenge (Doc. 341); **denies as moot** Becker's Motion to Stay (Doc. 340) and Lockheed's Motion to Stay (Doc. 353); and **grants** Spencer's Motion for Attorneys' Fees (Doc. 365) to the extent that Spencer be awarded **$1,675,323.28** in attorneys' fees and **$549,280.54** in costs.

## I.    Procedural Background

This qui tam action was originally filed by relator John Becker ("Becker") on March 30, 2005.  In his Original Complaint, Becker  alleged violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729a(1) and (2), by Defendant Tools and Metals, Inc. a/k/a TMI Integrated Services ("TMI") based upon TMI's conduct as a government subcontractor with respect to its tool sales to Lockheed-Martin Company ("Lockheed") in Fort Worth, Texas, and Marietta, Georgia.  Becker, who was employed by TMI from 1999 to 2000 as a sales manager, alleged that TMI "routinely deceived Lockheed" and "routinely falsified and misrepresented its actual costs of goods" in its dealings with Lockheed to obtain excessive mark-ups and profit margins.  Becker's Compl. (Doc. 1) ¶¶ 7-9.

On September 26, 2005, relator Robert B. Spencer ("Spencer") filed a separate qui tam complaint against Lockheed; Byron Young ("Young"), a purchasing agent for Lockheed; TMI; and Todd Loftis ("Loftis"), former president and chief executive officer of TMI. Civil Action No. 3:05-CV-2301-L. Spencer is a co-owner and president of Spenro Industrial Supply ("Spenro"), a supplier of perishable tools to Lockheed and competitor of TMI.  In his Original Complaint, Spencer alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and section 3729 of the FCA.  Rather than painting Lockheed as the victim, Spencer's Original Complaint

focused on an alleged conspiracy between TMI and Lockheed to defraud the Government. Spencer alleged that, unbeknownst to the United States government ("United States"), TMI and Lockheed conspired to defraud the United States and submitted fraudulently inflated invoices and claims to the Government for payment or approval as part of an unlawful enterprise that enabled both TMI and Lockheed to seek and be paid fraudulently inflated prices under the "cost plus contracts." Doc. 1, ¶¶ 30-35, 42-44. On December 9, 2005, the court consolidated the actions brought by Becker and Spencer.

On May 24, 2007, Becker and Spencer filed a consolidated Joint Amended Complaint ("Joint Complaint"), alleging three claims for alleged FCA violations against TMI; Lockheed; Young; Loftis; William C. Johnson, a TMI director from 1997 to March 30, 2004; Linda Loehr ("Loehr"), director and vice president of TMI from 1997 to March 30, 2004; Harriet Stroh ("Stroh"), a purchasing agent for Lockheed; JHW Greentree Capital, L.P. ("Greentree"), which purchased TMI on March 30, 2004; and Robert Chartener, a principal of Greentree who was instrumental in bringing about the TMI merger (collectively, "Defendants").

On October 30, 2007, the United States elected to intervene in the action with regard to Loftis and certain other Defendants. On November 30, 2007, the United States filed a Complaint for alleged FCA violations against TMI, Loftis, and Lockheed. The United States also asserted common law claims against these defendants, as well as Loehr, who was a former officer, director, and beneficial owner of TMI.

On March 28, 2008, Becker and Spencer filed their Qui Tam Plaintiffs' Second Amended Complaint ("Joint Amended Complaint"), asserting four claims, all for alleged violations of sections 3729(a)(1)-(3) of the FCA, against Defendants. The first claim is against Defendants for alleged

**Memorandum Opinion and Order - Page 4**

violations of section 3729(a)(3).  The second claim is against Loftis, TMI, Greentree, and Chartener for alleged violations of sections 3729(a)(1) and (2).  The third claim is against Lockheed for alleged violations of sections 3729(a)(1) and (2).  The fourth claim is brought only by Spencer against TMI, Loftis, Young, and Lockheed for alleged violations of sections 3729(a)(1)-(3).  All claims against the parties have been resolved via dismissals or settlement, and the only issues remaining concern Spencer's entitlement to attorney's fees and costs and Becker's challenge to the court's jurisdiction to award Spencer attorney's fees and costs based on the public disclosure bar.

## II.    Standard of Review

A magistrate judge's determination regarding a dispositive matter is reviewed de novo if a party timely objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  A magistrate judge's determination regarding a nondispositive matter is reviewed under the "clearly erroneous or contrary to law" standard.  28 U.S.C. 636(b)(1)(A); Fed. R. Civ. P. 72(a) ("[t]he district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law.").  This highly deferential standard requires the court to affirm the decision of the magistrate judge unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *United States v. Unites States Gypsum Co.*, 333 U.S. 364, 395 (1948).  As explained by the court in *Arters v. Univision Radio Broadcasting TX, L.P.*, No. 3:07-CV-0957-D, 2009 WL 1313285 (N.D. Tex. May 12, 2009):

> The clearly erroneous standard applies to the factual components of the magistrate judge's decision. The district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. If a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, a district judge may not reverse it. The legal conclusions of the magistrate judge are reviewable de novo, and the district judge reverses if the magistrate judge erred in some respect in [his] legal conclusions.  [T]he abuse of

discretion standard governs review of that vast area of choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous.

*Id.* at *2 (citations and internal quotations marks omitted).

Motions to stay are nondispositive in nature and thus are subject to the "clearly erroneous or contrary to law" standard of review. A posttrial motion for attorney's fees is considered to be a dispositive matter. *Millennium Restaurants Group, Inc. v. City of Dallas, Texas*, No. 3-01-CV-0857-G, 2002 WL 1042117, at *1 n.1 (N.D. Tex. May 21, 2002); *Blair v. Sealift*, 848 F. Supp. 670, 678-79 (E. D. La. 1994); *see also* Fed. R. Civ. P. 54(d)(2)(D) ("Special Procedures by Local Rule; Reference to a Master or a Magistrate Judge. By local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings. Also, the court may refer . . . a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter."). The court was unable to find any authority addressing the issue of whether a jurisdictional motion is dispositive. The court nevertheless assumes for purposes of this order that Becker's Challenge to Jurisdiction is dispositive and reviews it and Spencer's Motion for Attorney's Fees de novo.

## III.   Becker's Objections (Jurisdictional Challenge and Motion to Stay)

### A.   The Parties' Contentions and the Magistrate Judge's Ruling

Becker's Jurisdictional Challenge is limited to the first and third FCA claims in the Second Amended Complaint against Lockheed, Stroh, and Young, which Becker refers to as "the Lockheed defendants." Becker contends that the New York *Greentree Capital* litigation constituted a public disclosure under the FCA and Spencer was an original source of information, and that the court therefore lacks jurisdiction under 31 U.S.C. § 3730(e)(4) to award attorney's fees and expenses to

Spencer with respect to the first and third claims against the Lockheed Defendants.  On the other hand, Becker asserts that he was the original source of the information upon which claims one and three were based, and his claims one and three survive the public disclosure bar even though Spencer's do not.  Becker contends that if the court rules in his favor with regard to this jurisdictional challenge, the court will need to revisit its March 31, 2009 ruling that Becker's claims against the Lockheed Defendants are barred under the first-to-file rule.  Thus, by this motion, Becker seeks to revive his entitlement to an award of attorney's fees and expenses as to the first and third claims against Lockheed.

In response to Becker's motion, Spencer contended that Becker filed his Jurisdictional Challenge and Motion to Stay merely to delay resolution of Spencer's fee award in an attempt to force Spencer to agree to share the award with Becker because Lockheed had previously indicated that Becker is not entitled to any such recovery.[2]  Spencer contended that the court should not revisit its 2009 decision denying as moot Loehr's and Johnson's motions to dismiss based on the public disclosures allegedly made in the New York *Greentree Capital* case.  Even if the court addresses the issue, Spencer contends Becker's motion should be denied because his public disclosure bar argument is not supported by the facts or applicable law.  Spencer asserts that there was no public disclosure as a result of the *Greentree Capital* litigation, and he qualifies as an original source.

In his reply brief, Becker clarifies that he (Becker) is not requesting the court to reconsider its ruling on Loehr's and Johnson's motions to dismiss on public disclosure grounds based on the

---

[2] Lockheed previously moved for dismissal of Becker's claims on public disclosure grounds, but it did so based on the *Andrew Loehr* litigation in California, and the court determined that there was no public disclosure as result of the *Andrew Loehr* litigation.

**Memorandum Opinion and Order - Page 7**

New York *Greentree Capital* case because the court never ruled on this issue and instead denied it as moot.

The magistrate judge recommended that Becker's Jurisdictional Challenge be denied reasoning that:

> Becker's arguments still lack merit. His central contention is that, in its 2009 ruling, the Court should have addressed the applicability of the public disclosure bar to the Lockheed Defendants   vis á vis the Greentree Capital case   before addressing the Lockheed Defendants' first-to-file challenge. The Court, however, had no cause to address whether the Greentree Capital case barred the Relators' claims against the Lockheed Defendants for one very simple reason   the Lockheed Defendants never raised that issue. Indeed, although Becker urges the Court to "now address the jurisdictional question which it declined to address in 2009," the Lockheed Defendants argued only that the *Loehr Litigation* was a public disclosure bar to the Relators' claims. (Doc. 119 at 10-21; Doc. 341 at 7). It was only Defendants Loehr and Johnson who raised a public disclosure bar based on the *Greentree Capital* case. (Doc. 181 at 2-4; Doc. 196 at 5-6). The Court dismissed that argument as moot after finding that the Relators had failed to state a claim against Loehr and Johnson. (Doc. 215 at 23).
>
> Becker suggests that the Court nevertheless must now address whether the public disclosure in the Greentree Capital case is a jurisdictional barrier to Spencer's raising Claims 1 and 3 against the Lockheed Defendants. However, the Court rejected that argument over three years ago when Becker contended that the Court should have *sua sponte* applied the Greentree Capital public-disclosure argument to the Lockheed Defendants before addressing the Lockheed Defendants' first-to-file argument. (Doc. 231 at 1, n.3 & 16) (*Becker's Motion for Certification of Order for Interlocutory Appeal*); (Doc. 256 at 5-6) (*Order denying Motion for Certification*, stating that the Court was not required "to scour the record, without motion or argument from [the Lockheed] Defendants, to determine if claims against those other Defendants are jurisdictionally prohibited"). Becker's current argument is merely a variation of that previously rejected contention, and the Court should not revisit it.

Report 7-8 (emphasis in original).

Becker contends that the Report: (1)  misconstrues the substance and purpose of his public disclosure motion; (2) does not address any of the Supreme Court and Fifth Circuit authority presented for the proposition that a district court cannot ignore a direct question affecting

**Memorandum Opinion and Order - Page 8**

jurisdiction; (3) does not take into account *Federal Recovery Services, Incorporated v. United States*, 72 F.3d 447 (5th Cir. 1996); (4) does not recognize that the jurisdictional challenge does not concern any of the court's past rulings and instead directly challenges the court's current authority to act; (5) appears to rest on the incorrect assumption that only a defendant can raise a jurisdictional challenge; (6) does not resolve conflicting statements made on the record by the court concerning the handling of jurisdictional matters; and (7) fails to address the actual substance of his jurisdictional challenge, and therefore his motion to stay is not moot.

It is unclear why Becker waited **seven** years after his and Spencer's cases were consolidated and unsealed to raise this issue. Nevertheless, after carefully reviewing the record, the parties' 2009 briefing on the public disclosure bar, and the court's prior rulings, it determines that the specific issue raised by Spencer's Jurisdictional Motion, that is, whether relators' first and third claims against the Lockheed Defendants are barred as a result of alleged public disclosures in *Greentree Capital* case, was not previously raised or addressed by the court in ruling on Defendants' various motions to dismiss.[3] Accordingly, to the extent Becker objected on the grounds that the magistrate judge did not address the merits of his motion, the objection is **sustained**, and the court addresses the issue now.

### B.      Standard Applicable to Public Disclosure Bar Challenges

Because a challenge to jurisdiction under the FCA public disclosure bar is "necessarily intertwined" with the merits, it is treated as a motion for summary judgment. *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 326 (5th Cir. 2011) (quoting *United States ex rel. Reagan v.*

---

[3] In light of the tortuous history of this case and previous briefing and rulings on the public disclosure issue, it is not surprising that the magistrate judge, who does not have the same level of familiarity with proceedings in the case as this court, believed that the issue had been addressed.

**Memorandum Opinion and Order - Page 9**

*East Tex. Med. Cent. Reg'l Healthcare Sys.*, 384 F.3d 168, 173-74 (5th Cir. 2004)).   Summary judgment is appropriate if, "viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute at to any material fact and the movant is entitled to judgment as a matter of law." *Jamison*, 649 F.3d at 326.

Section 3730(e)(4) of the FCA implicates the court's subject matter jurisdiction and provides in this regard:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed
>
>> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>>
>> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>>
>> (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A)(i)-(iii). The Fifth Circuit applies a "three-part test, asking "1) whether there has been a 'public disclosure' of allegations or transactions, 2) whether the qui tam action is 'based upon' such publicly disclosed allegations, and 3) if so, whether the relator is the 'original source' of the information." *Jamison*, 649 F.3d at 327 (quoting *Federal Recovery Servs., Inc. v. United States*, 72 F.3d 447, 450 (5th Cir. 1995)).   In applying this three-part test, courts are not required to follow the three steps in a rigid fashion and may combine the first two steps "because it allows the scope of the relator's action in step two to define the 'allegations or transactions' that must be publicly disclosed in step one." *Jamison*, 649 F.3d at 327.

**Memorandum Opinion and Order - Page 10**

For the public disclosure bar to apply, "the publicly disclosed allegations or transactions need only be as broad and as detailed as those in the relator's complaint, because that is all that is needed for the action to be 'based on' the publically disclosed allegations." *Id.* "An FCA qui tam action even partially based upon public allegations or transactions is nonetheless 'based upon' such allegations or transactions." *United States ex rel. Reagan*, 384 F.3d at 176. "Stated another way, [a relator] cannot avoid the jurisdictional bar simply by adding other claims that are substantively identical to those previously disclosed." *Federal Recovery Servs., Inc. v. Crescent City E.M.S.*, 72 F.3d 447, 451 (5th Cir. 1995). A claim is substantively identical when it merely alleges additional instances of fraud by a defendant when other instances of that defendant's fraudulent conduct have been publicly disclosed. *Id.*

With regard to the parties' burdens as to the first two steps, "once the opposing party has identified public documents that could plausibly contain allegations or transactions upon which the relator's action is based, the relator bears the burden of demonstrating that they do not." *Id.* Thus, for purposes of this summary judgment motion, Becker must first point to documents plausibly containing allegations or transactions on which Spencer's complaint is based. Then, to survive summary judgment, Spencer "must produce evidence sufficient to show that there is a genuine [dispute] of material fact as to whether his action was based on those public disclosures." *Id.* In evaluating whether Spencer has produced sufficient evidence to establish a genuine dispute of material fact, the court views the evidence produced by Spencer in the light most favorable to him. *Id.*

When, as here, the parties contend that the court should look to the relator's most recent amended complaint, the court should look first to the original complaint because a relator cannot use

an amended complaint to "create jurisdiction retroactively where it did not previously exist." *Id.* at 328 (citation omitted).  An amended complaint, however, is also relevant because "a court can lose jurisdiction over an otherwise sound action if the relator amends his complaint to remove the basis of the jurisdiction." *Id.* (summarizing holding in *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007)).  The court therefore considers Spencer's Original Complaint "to define the scope of his action and to determine whether it was based on public disclosures of allegations or transactions." *Id.*

C.      Analysis

Spencer's Original Complaint alleged claims against Lockheed; Young, a purchasing agent for Lockheed; TMI; and Todd Loftis ("Loftis"), former president and chief executive officer of TMI, for RICO violations[4] and section 3729 of the FCA.  Spencer's claims focus on a conspiracy between the Defendants. Rather than painting Lockheed as the victim, Spencer alleged in his Original Complaint alleged that TMI and Lockheed, through their respective agents, conspired to defraud the United States.  Spencer alleged that, unbeknownst to the United States, TMI and Lockheed conspired to defraud the United States by submitting fraudulently inflated invoices and claims to the United States for payment or approval as part of an unlawful enterprise that enabled both TMI and Lockheed to seek and be paid fraudulently inflated prices under the "cost plus contracts."  Pl.'s Orig. Compl. ¶¶ 30-35, 42-44.

Becker points to the complaint in the *Greentree Capital* case in support of his contention that the *Greentree Capital* complaint was a public disclosure of the TMI pricing scheme, and that Spencer's original claims were based upon the transactions disclosed in the New York action

---

[4] The RICO claim was subsequently dropped and is not relevant to the court's analysis.

because each claim was predicated on TMI's fraudulent pricing scheme.  Becker contends that the fraudulent transactions disclosed in the *Greentree Capital* complaint disclosed the fraud on the United States and pointed to Lockheed's role in knowingly passing along inflated costs.  The court disagrees.

Lockheed was not a defendant in *Greentree Capital*.  Becker's App. 1.  Moreover, Greentree Capital's claims of fraud against Loftis, Loehr, Johnson, and the Whittier Trust Company were based on Greentree Capital's contention that TMI's securities were sold to unwitting purchaser Greentree Capital at an inflated price without disclosing TMI's prior course of misconduct against its largest customer, Lockheed.  Although the alleged misconduct alluded to in the *Greentree Capital* complaint is TMI's alleged pricing scheme, Lockheed is repeatedly referred to and painted as a "victim" of TMI's fraud, not a co-conspirator.

Becker acknowledges as much but contends that certain allegations in the *Greentree Capital* complaint, such as the allegation that TMI's fraudulent prices were incorporated into Lockheed's claims for payment to the United States, who was the ultimate victim of TMI's fraud, were sufficient to alert the United States regarding the specific nature of the fraud and identify wrongdoers.  Becker asserts that, under section 3730(e)(4)(A), public disclosures "need only provide enough specific details about the fraudulent scheme and the types of actors involved in it, sufficient to set the government on the trail of fraud."  Becker's Br. 9 (quoting *Jamison*, 649 F.3d at 329), which in turn cites *In re Natural Gas Royalties*, 562 F.3d 1032, 1039 (10th Cir. 2009).

The public disclosure rule described by Becker has been applied by court's in cases involving "industry-wide" fraud against the government.  *Jamison*, 649 F.3d at 329 and n.11 (quoting *In re Natural Gas Royalties*, 562 F.3d 1032, 1039 (10th Cir. 2009)).  The fraud alleged by Greentree

Capital as to TMI did not involve or allude to industry-wide fraud against the government by others in the same industry and business as TMI.  The court is not aware of any cases in which this rule has been applied in cases such as this that do not involve industry-wide fraud, and the court  therefore questions its applicability to this case.  Moreover, based on the Eleventh Circuit's opinion in *Cooper v. Blue Cross & Blue Shield of Florida, Inc.*, 19 F.3d 562 (11th Cir.1994), the Fifth Circuit in *Jamison* cautioned against applying this rule and the reasoning behind *Natural Gas Royalties* too broadly.  *Jamison* therefore declined to apply the rule, reasoning:

> In *Cooper*, government reports indicated widespread fraud in the health insurance industry. The reports did not serve to lead the government to the defendant, however, because the industry was too large, and the industry-wide allegations were not specific enough. The court noted that barring a relator's suit in that circumstance would preclude any qui tam suit once widespread   but not universal   fraud in an industry was revealed. The government often knows on a general level that fraud is taking place and that it, and the taxpayers, are losing money. But it has difficulty identifying all of the individual actors engaged in the fraudulent activity. This casting of a net to catch all wrongdoers is precisely where the government needs the help of its "private attorneys general."

> By applying *Cooper*'s guidance, we see that the defendants' documents, considered alone, likely are not sufficient publically to disclose allegations specific to Beverly and McKesson. The DME Medicare supplier industry and the nursing home industry are large. The public disclosures do not indicate that fraud is universal or even widespread within them, but merely that OIG is "concerned that contractual joint venture arrangements are proliferating." Moreover, nothing in the documents would "set the government on the trail of" Beverly or McKesson in particular.

*Jamison*, 649 F.3d at 329-30 (citing *United States ex rel. Baltazar v. Warden*, 635 F.3d 866, 868 (7th Cir. 2011), as holding "that a public disclosure indicating that 57% of the Medicare claims from chiropractors are fraudulent was not sufficient to bar a suit against one chiropractor, because it still 'takes a provider-by-provider investigation to locate the wrongdoers'")).

**Memorandum Opinion and Order - Page 14**

Even assuming that this rule applies, the court concludes that Greentree Capital's repeated allegations regarding TMI's fraudulent misconduct against Lockheed and the government were not sufficient to alert the United States to Lockheed's alleged conspiratorial role and the extent of the conspiracy. Also, the publicly disclosed allegations and transactions at issue in *Greentree Capital* are not as broad or as nearly as detailed as those in Spencer's Original Complaint with regard to TMI's pricing scheme; and, again, there is nothing in the *Greentree Capital* complaint regarding Lockheed's role in the scheme and no allegations regarding the conspiracy at issue in this case. *See Jamison*, 649 F.3d at 327. Thus, resolving all reasonable doubts and inferences in the light most favorable to Spencer, the nonmovant, the court concludes that while the publicly disclosed information discloses in a general sense the subject matter of TMI's pricing scheme, it cannot be said to disclose the "allegations" and "transactions" upon which Spencer's conspiracy claims are based. This is not a securities fraud case arising from TMI's misconduct and failure to make disclosures in that regard; rather, the crux of Spencer's qui tam action is the conspiracy between TMI and Lockheed, involving the presentment of false statements and the use of false records to get claims paid by the United States in connection with the agreement between TMI and Lockheed.

Moreover, none of the material elements of the conspiracy was disclosed in the *Greentree Capital* complaint. Thus, it is simply too much of a stretch to conclude that TMI's and Lockheed's detailed conspiracy as alleged in Spencer's Original Complaint (and the Joint Amended Complaint), can be reached based solely on Greentree Capital's allegations regarding TMI's scheme to overcharge Lockheed and the methods it used to mislead Lockheed. The court's conclusion in this regard is consistent Congress's expressed intent "to prohibit qui tam actions only when either the allegations of fraud or the critical elements of the fraudulent transaction were in the public domain."

*United States ex rel. Springfield Rail Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994) (concluding that pay records publicly disclosed did not reveal fraud because they did not suggest that the defendant had made a misrepresentation); *United States ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 556 (N.D. Tex. 2010) (quoting *Springfield* and reaching same conclusion). Spencer has therefore met his burden as the summary judgment nonmovant and produced evidence that his first and third claims were not based on the alleged public disclosures in the *Greentree Capital* Complaint. Further, there are no allegations in the Joint Amended Complaint that would cause the court to reach a different conclusion.  In light of the court's ruling on the first and second steps of the public disclosure bar test, it need not consider whether Spencer qualifies as an "original source." *See Jamison*, 649 F.3d at 327.  Accordingly, the public disclosure bar does not apply, and the court has jurisdiction over Spencer's first and third claims in the Joint Amended Complaint.

The court therefore **denies** Qui Tam Plaintiff Becker's Motion on Public Disclosure Grounds (31 U.S.C. § 3730(e)(4)) Challenging the Court's Jurisdiction to Award Costs, Attorney's Fees and Expenses to Qui Tam Plaintiff Spencer, with Respect to the First and Third Claims in the Qui Tam Plaintiffs' Second Joint Amended Complaint (Doc. 341), and **denies as moot** Qui Tam Plaintiff Becker's Motion for Stay of Proceedings Regarding Recovery of Costs, Fees, and Expenses Pending Resolution of Jurisdictional Questions Regarding the First and Third Claims in the Qui Tam Plaintiffs' Second Joint Amended Complaint (Doc. 340).  The court's ruling on Becker's motion also moots his objections.

IV.   **Objections Regarding Attorney's Fees, Expenses, and Costs**

A.   **Lockheed**

1.   **Lockheed's Objections Regarding Recommended Award of $546,871.60 in Costs and Expenses**

a.   **Testimony of Douglas Herman**

Lockheed contends that the magistrate judge erred by failing to exclude or further discount the testimony of Douglas Herman ("Herman").  Herman is the Managing Director of UHY and testified regarding the e-discovery services that UHY provided to Spencer.  Lockheed contends that Herman's testimony should be excluded or discounted because Herman is biased and will benefit from any award to Spencer based on the agreement between UHY and Spencer.  The court concludes that any bias Herman may have goes to the weight of this evidence, not its admissibility.

The magistrate recognized that Herman may be biased because UHY's recovery is conditioned on Spencer's award of costs.  Rather than exclude his testimony, the magistrate judge discounted it in making her recommendation as to the amount of costs.  For support, the magistrate judge cited *United States v. Cervantes-Pacheco*, 826 F.2d 310, 316 (5th Cir. 1987) (holding that the credibility of the compensated witness is for the factfinder to decide).  Accordingly, the court concludes that the magistrate judge did not err in determining that Herman's testimony should be discounted rather than excluded.  The objection is therefore **overruled**.

b.   **$174,395.97 for Uploading ESI and Creating Search Index**

Lockheed contends that the magistrate judge erred by recommending an award of $174,395.97 for uploading ESI[5] and creating a search index. Lockheed contends: (1) Spencer's

---

[5] "ESI" refers to electronically stored information.

**Memorandum Opinion and Order - Page 17**

request to be reimbursed for nearly $1 million in e-discovery services is unreasonable and the magistrate's recommendation does not cite any authority holding that a request for expenses in the amount sought by Spencer for e-discovery is reasonable and reimbursable; (2) an award of $174,395.97 for uploading ESI and creating a search index is unfounded and arbitrary because it requires Lockheed to pay for Spencer's decision to request ESI in a format that was different from the format that his vendor actually wanted; and (3) the recommended award punishes Lockheed for Spencer's failure to submit detailed expense records because the actual cost of uploading and creating a search index "*may have been substantially less*" than the magistrate judge's $174,395.97 estimate.  Lockheed Obj. 7.  Lockheed contends, based on *Associated Builders & Contractors of Louisiana, Incorporated v. Orleans Parish School Board*, 919 F.2d 374, 380 (5th Cir. 1990),[6] that "recovery of expenses is limited to 'reasonable out-of-pocket expenses' which are 'part of the costs normally charged to a fee-paying client.'" Lockheed Obj. 6 (quoting *Associated Builders & Contractors of Louisiana, Inc.*, 919 F.2d at 380).

 *Associated Builders & Contractors of Louisiana, Incorporated v. Orleans Parish School Board* dealt with the issue of what expenses are recoverable under 42. U.S.C. § 1988 and held that "[w]hether . . . expenses are reasonable is committed to the sound discretion of the trial judge." *See id.*  The FCA does not limit recovery of expenses to those normally charged to a fee-paying client. *See* 31 U.S.C. § 3730(d)(1)-(2) (a qui tam plaintiff "shall . . . receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.").  Thus, Spencer

---

[6] Lockheed mistakenly cited to "919 F.3d 371"; however, this appears to have been a typographical error.

was entitled to recover reasonable expenses and costs that he incurred.  This case has been pending since 2005.

Herman states in his declaration that the fees charged by UHY are consistent with market rates and fees charged to UHY's other customers based on the level of service it provided to Spencer over more than 28 months.  Herman further states that of the $299,710.34 that UHY charged for data processing and uploading, $261,593.96 was for processing and uploading and creation of a Relativity[7] index.  He states that an additional $38,116.38 was incurred to repair broken or corrupt files produced by Lockheed.  Lockheed presented affidavit testimony of George Socha, the president of a company that provides e-discovery consulting and expert services, who opined that a reasonable fee for the services provided by UHY would be $20,000.

The Report states that Spencer provided documentation reflecting that he was billed $261,593.36 by UHY for reprocessing and uploading the data and creating a searchable index. The magistrate judge noted the parties' dispute.  The magistrate judge noted the conflicting evidence regarding the reasonableness of the amount charged by UHY.  She also noted the conflict in the evidence regarding whether Lockheed produced the files at issue in the agreed upon format and resolved this issue in Lockheed's favor.  The magistrate judge therefore concluded that Spencer was entitled to recover for uploading the data and creating a searchable index but not for repairing and reprocessing the data.

Based on the foregoing determination, the magistrate judge deducted the $38,116.38 allegedly incurred to repair broken or corrupt files produced by Lockheed.   She also reduced the amount sought by deducting for reprocessing costs.  Because Spencer's billing records did not

---

[7] Relativity is the name of the document review and management software used by UHY.

segregate the costs for reprocessing and uploading the data and creating a searchable index, the magistrate judge estimated that one-third of time billed by UHY was for reprocessing, one-third for was for uploading, and one-third was for creating an index and concluded that Spencer should only recover two-thirds of the time billed by UHY totaling $174,395.97 for uploading and creating an index. The magistrate therefore reduced the total amount sought ($299,710.34) by $125,314.17, which is slightly more than 30 percent of the total amount sought. Based on the court's review of and familiarity with the record, evidence, and applicable law, and the magistrate judge's determination that Herman's testimony should be discounted rather than excluded, the court finds no error in the magistrate's determination. Moreover, Lockheed's contention that the actual cost of uploading and creating a search index "*may have been substantially less*" than the magistrate judge's $174,395.97 estimate is purely speculative and not supported by evidence. Further, a court necessarily must rely on its measured discretion when presented with conflicting evidence. Frankly, this type of determination does not lend itself to mathematical precision; and the court finds the magistrate judge's decision is within the bounds of reasonableness. The court therefore **overrules** this objection.

### c.        $271,110.23 for Electronic Hosting Costs

Lockheed contends that the magistrate judge erred by recommending an award of $271,110.23 in electronic hosting costs. Lockheed contends that the Report does not cite any authority holding that these expenses are recoverable, and Spencer has failed to demonstrate that the expenses are reasonable and necessarily incurred. Lockheed contends that UHY billing Spencer $440,039 for hosting of and user access to the documents produced in the litigation is unreasonable

under the circumstances because Spencer used only five of these documents during the litigation and did not notice a single deposition.

The court determines that expenses for data hosting are recoverable under the FCA because, as already explained, the FCA does not limit the types of expenses that are recoverable under the statute.  31 U.S.C. § 3730(d)(1)-(2).  Additionally, as discussed herein more fully in the court's discussion of Spencer's objections, the magistrate judge determined that Spencer is only entitled to $257,985.23 for hosting fees incurred from February 2010 through September 2011, plus $13,125 for five user accounts rather than the six user accounts requested by Spencer.  Thus, the magistrate judge reduced the amount sought for hosting fees by almost 40 percent.

The court disagrees with Lockheed's contention that reasonableness is determined based on the number of documents used in the litigation.  Due to increasing amounts of electronic documents being created by individuals and companies and the relative ease of retrieving such documents, discovery in complex commercial cases such as this has evolved into an extensive undertaking with parties producing and culling through large quantities of electronic documents to identify key documents that will ultimately be used to establish a claim or defense.  Many of the documents produced and reviewed in such cases are never used in the litigation.  This, however, does not necessarily mean that the documents do not have to be reviewed by the parties for relevance by physically examining them or through the use of litigation software with searching capability to assist parties in identifying key documents.  Lockheed's objection in this regard is therefore without merit.  Finding that the magistrate judge exercised her discretion within the bounds of reasonableness in determining that Spencer is entitled to $257,985.23 for hosting fees incurred from February 2010 through September 2011, plus $13,125 for the five user accounts, the court **overrules** this objection.

**Memorandum Opinion and Order - Page 21**

#### d.      Application of Sales Tax to Filing Fees and Other Costs

In response to Spencer's Amended Motion for Attorney's Fees and Costs, Lockheed contended:

> Spencer seeks reimbursement for $40,552.21 in sales tax that was billed by UHY to Boyd & Associates on its May 31, 2011 invoice, which by itself includes hundreds of thousands of dollars of non-reimbursable costs. (Spencer's Billing Entries at 465.) Spencer cannot recover sales tax for charges that are not reimbursable in the first place. These costs should therefore be excluded from Spencer's total claim.

Lockheed's Br. 14 (Doc. 398). The May 31, 2011 invoice referred to in Lockheed's responsive brief appears to be a summary invoice prepared by UHY at the end of the project that indicates that UHY provided a total of $644,730.38 in services to Spencer from February 1, 2010, through May 31, 2011. *See* Doc. 397-1 at ECF p. 468; Lockheed's App. 52-54 (Doc. 399). The invoice also includes $40,552.21 for "Texas States Sales Tax" for a total invoice amount of $685,282.59. *Id.*

In addressing Lockheed's contention that $40,552.21 is for sales tax charged by UHY for services that are not reimbursable, the magistrate judge concluded based on her total calculation and reduction of costs that Spencer is entitled to recover a total of $546,871.60 billed by UHY. The magistrate judge explained that she reached this amount as follows: "$465,506.20 in court-ordered costs + $39,686.96 in unchallenged costs x 8.25% tax rate."[8] Report 22. The $465,506.20 in court-ordered costs and $39,686.96 in unchallenged costs is not derived from the May 31, 2011 invoice

---

[8] A majority of the costs and expenses that Spencer seeks to recover are for services performed by UHY from February 1, 2010, through May 31, 2011, totaling $644,730.38. An 8.25% tax rate was presumably applied by the magistrate judge because UHY's May 31, 2011 invoice states that the amount of sales tax charged is based on "Texas State Sales Tax," and the magistrate assumed that the 8.25% rate is the sales tax rate for Texas. The court notes, however, that it appears from the May 31, 2011 invoice that the sales tax charge of $40,552.21 was calculated using a sales tax rate of approximately 6.25%. The court also notes that the correct sales tax for Texas is 6.25%, but state law allows municipalities in Texas to collect a 1.00% sales tax and also permits regional transportation authorities to collect a 1.00% sales tax. In the city of Dallas, Texas, the 8.25% tax rate is based on the 6.25% state sales tax, a 1.00% sales tax for Dallas, and a 1.00% sales tax for the Dallas Area Rapid Transit Authority. Because Lockheed did not object that a different sales tax rate should have been applied to the sum of costs and expenses awarded for UHY's services, the court assumes for purposes of this memorandum and opinion that the applicable sales tax rate is 8.25%.

**Memorandum Opinion and Order - Page 22**

for $685,282.59, but instead from the total expenses and costs sought by Spencer in the amount of $944,610.51.[9]

In its objections to the Report, Lockheed contends that the magistrate judge erred by applying sales tax to filing fees and other costs that are not taxable or were not taxed. Lockheed therefore contends that it should not have to reimburse Spencer for these taxes and that the $3,274.17 in tax applied to the full amount of the "unchallenged costs" should be set aside. Lockheed Obj. 8. "Unchallenged costs" refer to the amount not challenged by Lockheed out of the total $944,610.51[10] in expenses sought by Spencer. Report 12. Lockheed asserts that it did not oppose the $39,686.96 in "unchallenged costs" because they consisted of costs that are typically recoverable such as filing fees, copying costs, printing costs, and transcripts, as well as the $20,000 amount for ESI extraction fees advocated by Lockheed. Alternatively, Lockheed contends that it is entitled to a reduction of $1,650 for the sales tax applied to the unchallenged costs minus the $20,000 it advocated for extracting ESI. Lockheed contends that even if the unchallenged costs are recoverable, they are not taxable or were not taxed.

Lockheed further contends that the magistrate judge erred in applying an 8.25% sales tax to hosting costs and user access fees for the period from June 2011 through October 2011 because UHY did not charge sales tax to Spencer for these services. Lockheed contends that it is entitled to an additional reduction of $8,400.36 which it asserts is the equivalent of "8.25% of $101,822.55, which

---

[9] Spencer's billing records reflect $954,285.24 in total costs. The $944,610.51 in costs takes into account the $9,625 credit that UHY provided to Spencer for seven user accounts. Report 12.

[10] Spencer's billing records reflect $954,285.24 in total costs. The $944,610.51 in costs takes into account the $9,625 credit that UHY provided to Spencer for seven user accounts. Report 12.

**Memorandum Opinion and Order - Page 23**

is the sum of 5 months of hosting costs ($98,697.55) plus 5 months of user access fees ($3,125.00)."[11] *Id.* 9.

Spencer does not address Lockheed's contention regarding the magistrate judge's application of sales tax to filing fees and other costs that are not taxable or were not taxed. Spencer contends in response only that UHY properly billed $40,552.21 in sales tax for services provided as reflected in the May 31, 2011 invoice for $644,730.38 and he is entitled to be reimbursed for the full $40,552.21.

Lockheed notes in its objections, and the court agrees, that it appears the magistrate judge's determination as to $546,871.60 award was reached "by adding $465,506.25 in court-ordered e-discovery costs to $39,686.96 in "unchallenged costs," for a total of $505,193.16, and then applying 8.25% Texas sales tax to the total." Lockheed Obj. 8 n.4. Thus, the magistrate judge added 8.25% in sales tax charges to the entire amount of expenses that she determined was recoverable.

As to Lockheed's objection to the application of sales tax to UHY's charges, the court concludes that May 31, 2011 invoice, which included charges for all services performed by UHY, included sales tax. Accordingly, the magistrate did not err in assessing sales tax to the UHY expenses that Spencer seeks to recover. The court, nevertheless, agrees that there does not appear to be any evidence in the record to support application of an 8.25% sales tax to the unchallenged amounts, other than the $20,000 that Lockheed acknowledges is reasonable for UHY's ESI extraction. It appears from Spencer's billing records that any sales tax incurred, for example for FedEx and other costs, is already accounted for in the amounts that Spencer seeks to recover for such costs. Thus,

---

[11] The magistrate judge determined that Spencer was entitled to a $625 monthly fee for user access for five persons. Report 17. Lockheed's calculation of $3,125 is based on five months of user access at $625 per month.

Lockheed is correct that an additional 8.25% sales tax should not have been assessed to $19,686.96 ($39,686.96 - $20,000) of the unchallenged costs. Lockheed does not point to evidence in the record to show that UHY did not charge tax for ESI extraction. Moreover, the record indicates that the disputed amount for ESI extraction charges was included in UHY's May 31, 2011 invoice, which did include sales tax. Lockheed's App. 52-54 (Doc. 399); *see also* Report 18-20 (discussing UHY ESI extraction and travel costs). The court therefore determines that Lockheed is not entitled to a further reduction in tax on the $20,000 in undisputed ESI extraction costs. Accordingly, the court concludes that Spencer's award of costs should be reduced by **$1,650**, for sales tax applied to the unchallenged costs, other than the $20,000 in undisputed ESI extraction costs. Accordingly, the court **sustains in part and overrules in part** this objection by Lockheed.

> ### 2. Lockheed's Objections Regarding Recommended Award of $1,761,206.28 in Attorney's Fees

> #### a. Clerical Work

Lockheed contends that the magistrate judge erred by not excluding all of Spencer's billings for clerical work. Specifically, Lockheed contends:

> The Magistrate Judge correctly ruled that a portion of Spencer's fees were nonreimbursable clerical expenses that "could have been performed by a secretary[,]" (Recommendation at 25), but then concluded that only 20% of the clerical expenses that Lockheed Martin identified were non-reimbursable. (Recommendation at 26.) Lockheed Martin submits that the full amount, $193,425.70, should be excluded.

Lockheed's Obj. 10.

The magistrate judge determined, after reviewing Spencer's billing records and the billing entries challenged by Lockheed, that "roughly 22% of the approximately 600 tasks that [Lockheed] challenge as 'administrative/clerical' in nature could have been performed by a secretary rather than by personnel who billed $110.00 to $150.00 per hour." Report 25. Taking into account the small

**Memorandum Opinion and Order – Page 25**

size of the Boyd & Associates law firm, she determined that the challenged costs should be reduced by 20 percent or $38,073.14 rather than the originally estimated 22 percent.   After carefully reviewing the record and challenged costs, the court finds that the magistrate judge's determination that some (approximately 22 percent) but not all of the challenged costs are administrative or clerical in nature is reasonable.   The court therefore **overrules** Lockheed's objection that the magistrate should have excluded or deducted for all of the challenged costs rather than the 22 percent identified by the magistrate judge as administrative or clerical.

### b.    Disputes Between Spencer and Becker

The magistrate judge reduced Spencer's award for fees incurred in conjunction with the relators' fee sharing agreement but determined that Lockheed was not entitled to a reduction for fees incurred as a result of the public disclosure bar dispute between Becker and Spencer.

Lockheed contends that the magistrate judge erred by not excluding all of Spencer's billings for disputes between Spencer and Becker.  Lockheed contends that all of the $140, 372 in attorney's fees incurred by Spencer in litigating Becker's Jurisdictional Challenge based on the public disclosure bar and other disputes between Becker and Spencer should be excluded rather than the $46,743.88 reduction recommended by the magistrate judge pertaining to the relator's fee sharing agreement.  With regard to Becker's Jurisdictional Challenge, Lockheed contends that this dispute lies exclusively between Becker and Spencer, and other than seeking a stay until the dispute between Becker and Spencer was resolved, Lockheed did not respond to the substance of either of Becker's or Spencer's arguments regarding jurisdiction.  Lockheed does not cite any legal authority in support of its objections, but it cited, in its response to Spencer's Motion for Attorney's Fees, *United States ex rel. Lefan v. General Electric Company*, 397 F. App'x 144, 150 (6th Cir. Sept. 3, 2010), and

*United States ex rel. Taxpayers Against Fraud v. General Electric Company*, 41 F.3d 1032, 1046 (6th Cir. 1994), for the proposition that a qui tam plaintiff is not entitled to recover attorney's fees for time spent litigating issues between relators "because the action 'did not directly involve the qui tam defendants.'" Lockheed Br. 15 n.31 (Doc. 398).  Lockheed also cited and quoted *United States ex rel. Thompson v. Walgreen Company*, 621 F. Supp. 2d 710, 727 (D.  Minn. 2009) ("The greater weight of authority disallows compensation for attorneys' fees and costs incurred in connection with the relator's share negotiation/litigation. Defendant here had no involvement in that collateral proceeding and should not be required to bear the expense."). *Id*.

Regarding the public disclosure bar dispute, Spencer originally argued in response to Lockheed's motion to stay that Becker's motion would not strip the court of jurisdiction or do away with Spencer's entitlement to a fee award because the motion only challenged Spencer's entitlement to fees for the first and third claims against Lockheed.  In response to Lockheed's objections to the Report, Spencer appears to acknowledge that Lockheed did not participate in the public disclosure bar dispute because he contends that "Lockheed was able to sit idly by and let Becker brief the position that the Court lacked jurisdiction over Spencer's request for fees." Spencer's Br. 15. Spencer nevertheless contends that Lockheed was not an "innocent bystander" in the public disclosure bar dispute and is not entitled to a reduction for the fees incurred as a result of this dispute because it: (1) actively opposed Spencer's request for attorney's fees and costs and "sought a stay in light of Becker's motions and benefitted from a reprieve or delay in paying Spencer's attorney's fees and costs"; and (2) had a stake in the outcome of the public disclosure bar dispute because resolution of this issue "might have limited the scope of the action or even resulted in Lockheed's dismissal." Spencer's Br. 15-16.  Spencer also contends that the magistrate erred by deducting fees

attributable to the relators' fee sharing agreement and contends that "[a] review of the invoice entries reveals a cumulative total of approximately $24,322 in time entries which mentioned, even in part, the sharing agreement." Spencer's Reply 9.

The magistrate judge acknowledged that courts in other jurisdiction have held that relators are not entitled to recover attorney's fees for litigation against a co-plaintiff regarding their share of a qui tam recovery. Based on the reasoning in *United States ex rel. Lefan v. General Electric Company*, the magistrate judge reduced the amount of fees sought by Spencer by $46,743.88, the amount that the magistrate judge determined represented the percentage of time that Spencer spent out of the total fees billed on negotiating a sharing agreement with Becker. As to the remaining hours disputed by Lockheed that were billed from approximately June 2011 forward, the magistrate determined that the litigation focused mainly on the settlement of the action that necessarily required Spencer to consider the impact of the sharing agreement. Because all parties, including Lockheed, were directly and actively involved in the settlement process, the magistrate judge determined that fees billed by Spencer thereafter are compensable even if they mentioned the sharing agreement in passing. Finding the magistrate judge's determination that Spencer's fee award should be reduced by $46,743.88 for fees attributable to the relators' fee sharing agreement to be reasonable, the court **overrules** Lockheed's objection to this portion of the Report. Further, because Spencer's billing records contained block billing, the court concluded that the magistrate judge did not err in estimating the amount of fees attributable to the relator's fee sharing agreement.

With regard to fees attributable to Becker's Jurisdictional Challenge and Motion to Stay, the magistrate judge concluded that Lockheed sought a stay in light of Becker's motions and benefited from a reprieve or delay in paying Spencer's attorney's fees and costs. Without addressing the

applicability of the cases cited by Lockheed, she determined that Lockheed was not entitled to a reduction for fees incurred by Spencer as a result of public disclosure bar dispute between Spencer and Becker.

In *United States ex rel. Lefan v. General Electric Company*, one of the cases cited by Lockheed, the relators litigated and prevailed in a first-to-file dispute with a third-party relator and defendant GE argued that it should not be required to pay the relator's fees for litigating the first-to-file issue because it "had nothing to do with advancing the matter relating to GE" and therefore should not factor into the relator's fee award against GE. 397 F. App'x at 149. The district court agreed and subtracted $10,967.75 from the award. *Id.* The relators appealed the district court's decision not to award fees for the first-to-file challenge. The Sixth Circuit affirmed the district court's denial of the relators' request for attorney's fees for the time spent litigating the first-to-file issue, reasoning that:

> [O]ur precedent precludes HMRP's recovery of litigation expenses related to the first-to-file issue because the action "did not directly involve the qui tam defendants." *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1046 (6th Cir. 1994). In *Taxpayers*, this court determined that the relators were not entitled to attorneys' fees for litigation against the Government regarding their share of a qui tam recovery. The court held that the defendant in that case, also General Electric Co., was not responsible for the fees because[:]
>
> > [a]lthough GE eagerly assisted in the government's efforts to reduce the relators' bounty, GE's role was comparatively peripheral. It had no legal standing or right to participate in the proceedings. Nothing in the record suggests that the government initiated its contest against the relators because of GE, and nothing suggests that GE prolonged the litigation process or could have hastened its conclusion.
>
> *Id*. This reasoning applies to the instant case. GE had no participation in, or apparently knowledge of, the first-to-file dispute. It neither initiated the contest nor had any control over its resolution. As GE had no role or interest in the first-to-file proceedings, we affirm the district court's denial of [Relators'] request for attorneys' fees for the time it spent litigating the first-to-file issue.

**Memorandum Opinion and Order - Page 29**

*United States ex rel. Lefan*, 397 F. App'x at 150 (quoting *United States ex rel. Taxpayers Against Fraud*, 41 F.3d at 1046 (footnote omitted).

The court finds the Sixth Circuit's reasoning persuasive.  At its core, Becker's public disclosure motion and request to stay the case, pending resolution of his public disclosure motion involved a dispute between the two relators as to whom is entitled to recover attorney's fees and costs in this case and nothing more.  Although Lockheed moved to stay the proceedings and requested the court to rule on Becker's Jurisdictional Challenge before deciding Spencer's Motion for Attorney's Fees, it did so for efficiency and economy reasons because it believed that the outcome of the public disclosure dispute would affect the court's determination as to which relator was entitled to a fee award.  Moreover, regardless of Lockheed's motives for seeking a stay pending resolution of Becker's Jurisdictional Challenge, the court was necessarily required to address the jurisdictional issue before ruling on Spencer's Motion for Attorney's Fees.  The court therefore disagrees that Lockheed's seeking a stay is sufficient to require it to pay all of the attorney's fees that Spencer incurred in the battle with Becker.  Likewise, Lockheed's opposition to Spencer's motion for attorney's fees is irrelevant to whether it actively participated in the public disclosure bar dispute between Becker and Spencer.

Lockheed did not initiate the public disclosure dispute between the relators, had no control over the resolution of the dispute, and its role in the dispute was "comparatively peripheral." Further, that it benefited incidentally as a result of another party's action is quite beside the point.  Accordingly, the court concludes that it should not be required to bear the fairly substantial expense for this dispute and **sustains** Lockheed's objection to this portion of the Report.  The court, however, determines that Lockheed is not entitled to a reduction for fees incurred as a result of its Motion to

Stay.  The court therefore concludes that Spencer, who ultimately prevailed in the public disclosure dispute, should not be compensated for the amount of attorney's fees and costs he incurred in connection with this dispute with Becker.  After reviewing Spencer's billing records, the court determines that entries totaling $65,495 were dedicated solely to the dispute between Spencer and Becker.  For billing entries that were block-billed and included time for Becker's motions and other matters, the magistrate judge reasonably estimated the amount of time attributable to Becker's motions as totaling $8,763.  The court will therefore reduce Spencer's fee award by **$74,258** for the attorney's fees incurred in responding to Becker's motions.

### c.       Disputes with Other Defendants

Lockheed contends that the magistrate judge erred by  not excluding Spencer's billings for disputes with other defendants, specifically Linda Loehr.  The magistrate judge determined that the claim against Loehr, "although not successful, was interrelated with the claims against the other Defendants and stemmed from the same facts. Accordingly, the Court should decline to reduce Spencer's attorneys' fees to a *pro rata* share based on the lack of success on his claim against Loehr."  Report 30.  Lockheed contends that the magistrate judge erred because the claims against Loehr:

> were very different from the claims against Lockheed Martin; namely, Spencer alleged that Linda Loehr was substituted as a defendant in Andrew Loehr's (her son's) lawsuit after her husband died, that Andrew Loehr alleged that Todd Loftis and other TMI employees were engaged in a scheme to defraud Lockheed Martin and the Government, that Loehr failed to stop Loftis after attending the Andrew Loehr deposition, and that she subsequently approved a March 2004 merger agreement stating that TMI was in compliance with federal procurement standards. Conversely, Spencer's allegations regarding Lockheed Martin centered around alleged bidrigging in the award of the Master Agreement to TMI, and alleged overcharging on the contract that was allegedly awarded through a rigged bid.

Lockheed Obj. 11 (internal citation omitted).  The Amended Complaint includes allegations that

Loehr either tacitly or expressly agreed to participate in the conspiracy between TMI and Lockheed

and benefited from the relationship and alleged fraudulent conduct.  The court therefore agrees with

the magistrate judge that the claims against Loehr and Lockheed are interrelated and Lockheed is not

entitled to a reduction on this basis. The objection is therefore **overruled**.

### d.    Review of Billing Entries

On this issue, the magistrate judge determined:

> Generally, attorneys' fees requested to prepare a fee application are compensable. *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996). Nevertheless, the fees must be reasonable and necessary. *See Hensley*, 461 U.S. at 433. Upon review of the parties' arguments, the caselaw, and the billing records in question, the Court concludes that a 30% reduction in the fees that Spencer requests is appropriate. The Court recognizes that Spencer's counsel necessarily spent time reviewing the firm's billing records in the exercise of his billing judgment as he was required to do. *Walker*, 99 F.3d at 770 (noting that counsel is required to demonstrate the exercise of billing judgment). Nevertheless, the undersigned believes that (1) the Lockheed Defendants should not be penalized because Spencer's counsel had to correct his billing records to eliminate duplicate and erroneous entries that were not attributable to them, and (2) the task could have been completed more efficiently. The Court also takes into consideration the fact that it found numerous administrative/clerical entries that had to be redacted from the records, suggesting that counsel's review was not as painstaking as the number of hours billed for reviewing the billing records suggests. For the above reasons, the Court should deduct $34,713.00 from the attorneys' fees owed to Spencer.

Report 30-31.

Lockheed contends that the magistrate judge should have excluded *all* of Spencer's time for

reviewing billing entries because they "were replete with non-compensable billings, such as an entry

for 'picking up pastries,' time spent celebrating a favorable court order, a single 24-day in which

Spencer's lead attorney purported to bill 32.6 hours, and other activities demonstrating that no

**Memorandum Opinion and Order - Page 32**

meaningful review of the billing entries was conducted." Lockheed Obj. 12.  Lockheed therefore

contends that a 30 percent reduction for time Spencer spent reviewing billing entries is insufficient.

Spencer counters that:

> The Magistrate correctly found that Spencer should recover for such billings, but
> erred in deducting $34,713.00 from the amount recoverable. Lockheed contends that
> Spencer should not recover any of these fees because in reviewing seven years' worth
> of billings, a handful of mistakes were found, for which Spencer's counsel has
> already made adjustments. Surprisingly, Lockheed also complained that counsel did
> not devote sufficient effort to managing the billing; as such, nothing should be
> deducted for the required management of the billings.

Spencer Br. 18.  For the reasons explained by the magistrate judge, the court determines that

Spencer's fee award should be reduced by $34,713 for hours billed for reviewing billing records and

**overrules** the objection.

### e.      Work Unrelated to the Case - TMI Bankruptcy

Lockheed contends that the magistrate judge erred by not excluding all of Spencer's billings

for work unrelated to the case.  In particular, Lockheed takes exception to the magistrate judge's

determination with regard to Spencer's fees for reviewing Defendant TMI's bankruptcy pleadings.

Spencer responds that his billings in this regard pertained to analysis of TMI's bankruptcy filings and

a Lockheed co-conspirator, who was a defendant in this action.   The magistrate judge determined

that Spencer's billings related to the TMI bankruptcy should not be reduced:

> Spencer is entitled to attorneys' fees for reviewing the pleadings in TMI's bankruptcy
> case and researching garnishment issues relating to Todd Loftis. In short, the claims
> against the Lockheed Defendants, TMI, and Todd Loftis arose out of the same facts,
> Spencer and the Government jointly sought relief against the bankrupt TMI, and
> Spencer's research related to the available damages.

Report 32.  Finding no error in the magistrate judge's determination, the court **overrules** this

objection.

### f.    Excessive Billings for Work Performed

Lockheed contends that the magistrate judge erred by not excluding all of Spencer's billings that were allegedly excessive for the work performed.  Although the magistrate judge concluded that $20,670 should be excluded, Lockheed contends that she articulated no reason for not excluding the other entries identified by Lockheed as excessive. Spencer contends in response that Lockheed's opinion that $56,160 in fees billed by Spencer are excessive is insufficient to support the requested reduction.  Spencer further complains that the magistrate judge included as part of her deduction two billing entries, even though she acknowledged that Spencer had already deleted the two duplicate entries.  The magistrate judge determined:

> The Lockheed Defendants next claim that Spencer's billing statements include $56,160.00 in fees for numerous entries that are excessive for the work performed. (Doc. 398 at 24) (citing App'x, Doc. 399 at 136; Doc. 399-3 at 177-80). Spencer responds that he has made appropriate adjustments to the few errors that the Lockheed Defendants have pointed out. (Doc. 406 at 12, 24). In relation to one double entry, counsel has deleted $8,760.00. (Doc. 408-6 at 10). Upon review of the parties' arguments, including those contained in their respective billing spreadsheets, the Court finds that several hours that counsel spent "reviewing" pleadings and summarizing emails were excessive, totaling $8,550.00. (Doc. 400-3 at 177-80). Additionally, Spencer's counsel agreed to remove one more duplicate entry totaling $3,360.00. (Doc. 408-6 at 12). The Court, thus, should deduct a total of $20,670.00 from Spencer's fee award.

Report 32-33.  Finding no error in the magistrate judge's determination, the court **overrules** Lockheed's objection.

No amounts were "doubly deducted" as contended by Spencer.  Spencer's Br. 18 (emphasis in original).  Although Spencer indicated his agreement to deduct the two duplicate entries, the entries still appear in his amended attorney's fees application, and the magistrate judge's determination to include these amounts merely served as a confirmation that these amounts would

be deducted from the total award as agreed by Spencer.  Accordingly, Spencer's contention in this regard is without merit.

### g.      Vague Billing Entries

Due to the vagueness of a small percentage of Spencer's billing entries identified by Lockheed, the magistrate determined that "an across-the-board reduction amounting to 10% of the requested cutbacks in this category is appropriate."  Report 34 (citing *Freiler v. Tangipahoa Parish Bd. of Educ.*, 185 F.3d 337, 349 (5th Cir. 1999) (noting that reducing the overall number of hours by a percentage did not constitute error).  The magistrate therefore recommended that the court reduce Spencer's attorneys' fees by $5,137.00 for vagueness.  Lockheed contends that the magistrate judge erred by not excluding all of Spencer's billing entries identified by Lockheed as vague. Lockheed asserts that Spencer's award should have been reduced by $51,373.  Spencer contends that the magistrate judge's determination in this regard is reasonable.  Finding no error in the magistrate judge's determination, the court **overrules** Lockheed's objection.

### h.      Redactions of Nonprivileged entries

The magistrate judge determined that no deductions for redacting nonprivileged billing entries was warranted because, while she previously indicated that she could see no reason why Spencer would need to redact any of the billing invoices, she found that the redactions were not made frivolously or in bad faith at the time they were made.  Report 35.  Lockheed contends that the magistrate judge should have excluded all of Spencer's billings (totaling $11,625) for redacting nonprivileged billing entries. Lockheed maintains that the case law is clear that billing entries are not privileged and the fee application places them at issue and waives any privilege. Because reasonableness and necessity of the fees sought, rather than Spencer's intent, is the test as to whether

he is entitled to recover fees for time spent redacting a large number of nonprivileged information contained in his billing entries, the court concludes that the magistrate judge erred in determining that Spencer's fee award should not be reduced by $11,625, the amount unreasonably incurred in redacting nonprivileged materials.   The court therefore **sustains** Lockheed's objection and will reduce Spencer's fee award by **$11,625**.

### i.        Failure to Exercise Billing Judgment

Lockheed contends that the magistrate judge erred by declining to reduce Spencer's fee award by an additional 15 percent for failing to exercise billing judgment. Based on the following billing entries, Lockheed contends that Spencer failed to exercise billing judgment: "$220 for a block-billed entry including time spent "pick[ing] up pastries for meeting"; and "time spent celebrating a favorable Court order."   Lockheed's Obj. 16.   After setting forth the law applicable to billing judgment, the magistrate judge declined to further reduce Spencer's fee award, reasoning that:

> Upon review of the parties' arguments, the caselaw, and counsel's billing records, the undersigned concludes that counsel has produced sufficient evidence that he exercised billing judgment. In addition to his sworn statement and the entries in his timesheets indicating that he dedicated substantial time to revising and compiling the timesheets for submission to the Court, there are notations in the bills themselves that indicate that considerable time was written off.  *See, e.g.*, Doc. 407-3 at 8, 11, 14-16, 21-22, 24, 29, 31-32, 38. Accordingly, the Court will not reduce Spencer's fee award for failure to exercise billing judgment.

Report 37.  Finding no error in the magistrate judge's determination, the court **overrules** this objection.  Moreover, deductions for the specific matters identified by Lockheed appear to have already been accounted for in the magistrate judge's recommendation that Spencer's fee award be reduced by  $34,713 for his review of billing errors.   Accordingly, Lockheed is not entitled an additional 15 percent reduction on this ground.

### j.      Fees Compared to Level of Success

Lockheed contends that the magistrate judge erred in not reducing Spencer's fee award on the grounds that it is disproportionate to his level of success in the litigation. Finding no error in the magistrate judge's determination, the court **overrules** this objection. Morever, the court has further reduced Spencer's award for the reasons herein discussed and determines that no further reduction is warranted.

### B.      Spencer

Spencer raises thirteen objections pertaining to the magistrate judge's determination that Spencer's attorney's fees and costs should be reduced. As previously noted, the magistrate judge recommended that Spencer be awarded $1,761,206.28 in attorney's fees and $550,930.54 in costs. Spencer contends that he is entitled to recover $1,892,856.30 in attorney's fees and $1,015,147.73 in costs. For the reasons that follow, the court will overrule Spencer's objections.

### 1.      Award of Less than Full Amount of Fees, Costs, and Expenses

Spencer contends that the magistrate's determination that he should be awarded less than the full amount of attorney's fees, costs, and expenses,[12] is "inappropriate and unfair." Spencer does not explain why he believes the magistrate's determination is "inappropriate and unfair." Instead, he simply cites to the declaration of attorney Samuel L. Boyd ("Boyd"). The court concludes that this

---

[12] The court uses the terms costs and expenses in this opinion interchangeably. Spencer appears to complain about the magistrate judge's similar interchangeable use of these terms and contends that she should have used the specific terms ("costs" or "expenses") as they appear in the applicable statutes. Spencer's Obj. 7 n.2. The court, however, determines that any such usage of these terms does not change the result of the court's ruling on Spencer's objections or the court's determination as to the magistrate judge's findings and recommendation because, as the magistrate judge correctly noted, while the award of fees, costs, and expenses under the FCA is mandatory, the amount of the award is discretionary. Report 8.

**Memorandum Opinion and Order - Page 37**

general objection is not sufficiently specific and will not expend scarce judicial resources to try to determine the nature of this objection.  The objection is therefore **overruled**.

### 2.      Burden of Proof

Spencer contends that the magistrate judge correctly concluded that the Fair Claims Act ("FCA") provides for the award of attorney's fees, court costs, and expenses but applied the wrong burden of proof.  Spencer contends that the magistrate judge erroneously concluded that the prevailing party must demonstrate its entitlement to any challenged court costs and erred to the extent that she applied this standard to Spencer's request for expenses and attorney's fees.  With regard to attorney's fees, Spencer contends that the party seeking fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications, but the party seeking reduction of attorney's fees has the burden of showing that a reduction is warranted.  Spencer does not point to any specific instances in which the magistrate judge incorrectly applied the standards applicable to his request for attorney's fees, costs, and expenses.  Instead, he appears to speculate only that the magistrate may have applied the wrong standard. Accordingly, this objection is not sufficiently specific.  Moreover, after reviewing the magistrate judge's findings and recommendation, the court determines that she stated and applied the correct standard or standards applicable to the parties' burdens of proof.  The objection is therefore **overruled**.

### 3.      Repair of Broken and Corrupt Data Files Received from Lockheed

Spencer contends that the magistrate judge's determination that Spencer should not recover

$38,116.38 and $87,197.39,[13] which represent the amounts that an electronic discovery vendor billed Spencer to repair and reprocess allegedly corrupt data files produced by Lockheed.  Spencer and Lockheed dispute whether the data produced by Lockheed was corrupt.  Lockheed argued, and the magistrate agreed, that regardless of whether the data was corrupt, Spencer could have and should have simply requested Lockheed to reproduce the data files at no cost rather than embarking on the expensive undertaking of repairing and reprocessing the data.  The magistrate judge notes, and Spencer acknowledges, that on other occasions, Spencer requested Lockheed to reproduce data files at no cost.  Spencer, however, provides no reason in his objections as to why he could not have requested Lockheed to reproduce these data files at no cost.  Instead, he simply argues that the magistrate judge's determination in this regard amounted to inappropriate "second-guess[ing]" of his decision to have the vendor repair and reprocess the corrupt files.  This objection is nonsensical. The court determines that Spencer's objection is without merit and **overrules** it because he has not established that the large amount spent to repair and reprocess the allegedly corrupt files, which could have been replaced by Lockheed at no cost, was reasonable or necessarily incurred.  *See United States ex rel. Longhi v. Lithium Power Tech., Inc*., 575 F.3d 458, 475 (5th Cir. 2009) ("Section 3730(d)(1) of the FCA states that a relator in a successful qui tam action is entitled to receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.").  These expenses were not necessarily incurred and therefore are not reasonable.

---

[13] The recommended deduction in the amount of $87,187.39 represents one-third of the total amount ($261,593.36) requested by Spencer for reprocessing, uploading, and creating a search index for the allegedly corrupt data produced by Lockheed.  The magistrate judge recommended that Spencer be awarded $176,395.97 for uploading the data and creating a search index.

4.       **Mathematical Error**

Spencer contends that the magistrate judge correctly noted that he requested $440,039.80 for data hosting but incorrectly determined that the total monthly itemizations submitted by Spencer totaled only $376,421.03. According to Spencer, the hosting costs reflected on his Exhibit A - Historical Hosting & User Fees, Doc. 407-1 at 15 totals $440,039.80 and this amount therefore should have been used by the magistrate judge as the starting point and total amount from which deductions were made. *See* Spencer's Reply App. 15 (Doc. 407-1). Lockheed contends that the magistrate judge correctly calculated the total amount of hosting fees set forth on this exhibit for the period of February 2010 to September 2011.

The magistrate judge concluded that Spencer is entitled to recover all data hosting charges, "except for those he incurred from the period of October 2011 through April 2012." Report 17. The magistrate judge notes that the hosting fees from October 2011 through April 2012 total $118,436.80 ($19,739.30 per month multiplied by six months) and concluded that this amount should be subtracted from the total amount of hosting fees in Spencer's Exhibit A.[14] The magistrate judge then concluded that Spencer is entitled to $257,985.23 for hosting fees, "which represents the total of UHY's hosting charges from February 2010 through September 2011." *Id.*

According to the court's calculation, the magistrate judge's determination, based on Exhibit A, that Spencer incurred $257,985.23 in hosting charges from February 2010 to September 2011 is correct. In reaching this determination as to hosting charges, she considered the fee amounts in the middle column of Exhibit A that is labeled "Fees (@ $39 per GB, per Month)" for the period of

---

[14] The hosting fees from October 2011 to April 2012 actually total $138,176.57; however, as explained herein, the magistrate judge's calculation of the hosting fees to be awarded for the time period from February 2010 through September 2011 is correct, and her calculation of fees that should not be awarded is irrelevant to her determination that hosting fees totaling $257,985.23 for the period of February 2010 through September 2011 should be awarded.

February 2010 to September 2011.  Spencer's Reply App. 15.  Spencer's calculation of $440,039.80

for hosting fees includes the fees in the middle column, as well as the amounts for user fees in the

far right column of  Exhibit A.  The magistrate judge, however, considered separately Spencer's

request for user fees, and Spencer does not explain why the amount for users fees should be included

in the calculation of hosting charges.  Accordingly, finding no error in the magistrate judge's

calculation of hosting charges, the court **overrules** this objection.

### 5.        Data Hosting Incurred During Settlement Negotiations

Spencer contends:

> The Magistrate speculates that Spencer should have found some less costly way to
> preserve the database of electronically stored information between October 2011,
> when a settlement "in principal" between the United States and Lockheed was
> reached, and April of 2012 when the settlement was finally executed, Doc. 421 at 17,
> and thus concludes that Spencer is not entitled to recover for data hosting charges of
> $118,435.80 incurred during that time.

Spencer's Obj. 10.  Spencer contends that neither the magistrate judge nor Lockheed has suggested

a less costly way of ensuring that the database would be available if the settlement was not finalized.

Spencer asserts that he had no way of knowing that it would take Lockheed and the United States

seven months to finalize the settlement, particularly since he did not participate in these settlement

negotiations.  In addition, Spencer contends that removing the data from the database and reloading

it would have been "time consuming and costly" in the event that the settlement was not finalized.

*Id.* at 11.  For support, Spencer relies on the declaration of his attorney, who states as follows:

> With regard to the Magistrate's finding that Spencer is not entitled to recover
> for data hosting charges of $118,435.80 incurred from October 2011 through April
> 2012, because Spencer's counsel should have found some less costly way to preserve
> the database of electronically stored information between October 2011, when a
> settlement "in principle" between the United States, relators and Lockheed was
> reached, and April of 2012 when the settlement was finally executed by Lockheed:

Neither my client, Mr. Spencer, nor anyone else knew (1) whether Lockheed would agree to the final settlement terms and conditions demanded by the Government, (2) how long it would take Lockheed to agree to specific settlement terms and conditions, and (3) whether Spencer's expense of off-loading and re-loading the data in the event of settlement failure would be more costly than waiting on Lockheed's decision. Neither Lockheed nor the Magistrate has suggested a less costly way of ensuring that the database would be available if the settlement in principle fell through and was not concluded. The estimated costs of nearly $100,000 for an unloading, storing and reloading process was a large obligation to incur when Lockheed simply needed to approve what it had approved in principle in October of 2011   a process usually accomplished in a matter of days or weeks rather than months. The Government and the Relators could not force Lockheed to do anything, nor did Lockheed or its counsel confide in my firm the length of time it would take for the process to resolve Lockheed's issues. Any guess by my firm would have been rampant speculation, and I cannot manage litigation expenses on that basis. Since uncertainty surrounded the time required to get Lockheed to execute the settlement, it isn't fair to penalize Spencer, who had to make a smart litigation decision without the benefit of an accurate future-predicting crystal ball. My UHY consultants and I decided that it would be less expensive to continue to maintain the database, as I expected Lockheed would surely sign off "soon." I did not know of a less costly way of preserving the database, as was necessary in view of the contingent reality that Lockheed could possibly have refused to execute a final settlement. Lockheed and the United States, the real party in interest, controlled the settlement negotiations, and Spencer had no way of expediting the process or decision making, or of knowing how long the negotiations would take or whether Lockheed would refuse to approve the Government's terms and conditions. The hosting costs were immediately discontinued when Lockheed ultimately approved the final settlement document and this Court entered its Order dismissing claims against Lockheed. It was not within the talent of any outsider to guess what Lockheed would do, but surely Lockheed had control of what it would agree to do. Spencer didn't choose or desire the delay of settlement. Nor did Spencer enjoy or want the continuing IT costs. The reason that the settlement in principle was not approved by Lockheed for 6-7 months is something known only to Lockheed. It is unfair for the Relator to be financially punished for events resulting from the failure of other parties to bring the settlement to a close. The amount of the $118,435.80 reduction should be added back into the statutory amount awarded to Spencer.

Spencer's Decl. 3, ¶ 4 (Doc. 425-1).  The court preliminarily notes that it does not appreciate the unprofessional and condescending tone of counsel's declaration.  Further, while Spencer states in his motion that it would have been "time consuming and costly" to remove and reload the data if settlement was not reached and his counsel states, "[t]he estimated costs of nearly $100,000 for an

unloading, storing and reloading process was a large obligation to incur," both statements are conclusory and unsupported by credible evidence.[15]  Moreover, contrary to Spencer's assertion, he had the burden of establishing the reasonableness of the costs incurred during this time period, and his entitlement to such costs is not dependent on whether Lockheed or the magistrate judge has suggested a less costly way of ensuring that the database would be available if the settlement fell through. The objection is therefore **overruled**.

### 6.      Database Use Accounts

In response to Spencer's Motion for Attorney's Fees, Lockheed acknowledged that UHY had reduced the number of users given access to the document database from thirteen to six but questioned why six database user accounts were necessary when Spencer's counsel is a two-person law firm.  In his reply brief, Spencer noted that UHY had provided a credit of $9,625 for unused user access accounts and contended, based on Herman's testimony, that the hosting and user access fees billed by UHY are "reasonable, credible and clearly justifiable."  Spencer's Reply 19-20.  Spencer, however, does not appear to have addressed Lockheed's contention that, aside from the reduction in user accounts, Spencer has not shown why six user accounts were needed.  The magistrate judge agreed with Lockheed and determined:

> [A]lthough UHY reduced the number of users given access to the data from 13 to six, there does not appear to be any reason why that many accounts were necessary given counsel's representation that his firm consists of only two attorneys and two or three full or parttime support staff. Accordingly, the Court should allow compensation only for five user accounts.

---

[15] As already discussed, the court concluded that the magistrate judge correctly determined that Herman's testimony should be discounted.

**Memorandum Opinion and Order - Page 43**

Report 17. For the first time in his objections to the Report, Spencer's counsel Boyd states in a declaration: "The sixth user was Mr. Spencer. Mr. Spencer worked long and hard on UHY's system in researching issues material to the outcome. Mr. Spencer accessed the database throughout the process until the settlement in principle was reached in Washington, D.C." Spencer's Obj. App. 4 (Doc. 425-1). In response to Lockheed's contention that Boyd's declaration constitutes new evidence that should not be considered, Spencer asserts that courts have discretion whether to consider new evidence in deciding objections to the magistrate judge's report.

Even assuming that Spencer accessed the database regularly as Boyd asserts, this still does not explain why six accounts were necessary when Spencer's billing records reflect that four persons with the initials ML, SLB, RW, and MKT[16] accessed the database, and none appears to have accessed the database on a regular daily basis throughout the litigation or at the same time. Accordingly, the magistrate judge did not err in reducing the reimbursable user accounts to five. The objection is therefore **overruled**.

### 7. Forensic Imaging of TMI's Hard Drives

In response to Spencer's Motion for Attorney's Fees, Lockheed contended that the amount of expenses sought by Spencer for ESI extraction or forensic imaging of TMI's hard drives and related travel costs ($104,716.10) is unreasonable in comparison to the amount spent by Lockheed for similar services. Lockheed therefore argued that Spencer's costs for these services should be reduced by $84,716.10. Spencer countered that the expenses were reasonable because the services performed by UHY were different than those performed by Lockheed's vendor. Spencer contended

---

[16] Of these persons, only ML appears to have accessed the database more than the others, followed by SLB, but both only accessed the database sporadically throughout the time period in issue. According to Spencer's billing records, RW appears to had a number of communications with other persons, including Spencer, regarding the database but only accessed the database a handful of times. MKT similarly accessed, or did work in, the database only a few times.

that UHY provided two examiners to image dozens of hard drives at a fixed cost per hard drive for

a total of $61,890; the cost of the associated media was $12,750; and related travel costs were

$10,206.10.  In its reply brief, Lockheed contended that Spencer's approach was to copy everything

regardless of whether it was relevant, whereas Lockheed's vendor, based on information obtained

from the Government's investigation, conducted a targeted extraction of information from the TMI

hard drives, which resulted in their imaging less than a dozen documents and avoiding extraction of

large quantities of irrelevant documents belonging to employees who were not involved in the fraud.

The magistrate determined:

> Upon consideration of the parties' arguments, the law, and the equities, the
> Court finds that Spencer is entitled to recover $20,000.00 for their ESI extraction and
> travel costs.  The Court finds particularly persuasive the Lockheed Defendants'
> argument that Spencer could have conducted a more targeted search for relevant
> documents, thereby saving considerable time and associated expense.  Spencer's
> course of action was not prudent under the circumstances, considering that he could
> have conducted depositions to determine how best to conduct more limited
> discovery, rather than copy all materials even those that were highly unlikely to
> contain relevant information.  Accordingly, the Court should deduct from Spencer's
> cost award the sum of $64,846.10, resulting in an award of **$20,000.00.**

Report 19-20.  In his objections to this portion of the Report, Spencer contends there was no one to

depose because TMI was bankrupt and had been dissolved for many years and Loftis, TMI's former

president, was in federal prison.  Spencer further asserts that Lockheed, as a co-conspirator, had no

incentive "to uncover documents demonstrating its complicity, and that as TMI's co-conspirator, it

already knew who at TMI was involved or had knowledge."  Spencer's Obj. 4-5.  Spencer therefore

contends that the magistrate judge erred in reducing his expenses for forensic imaging and related

costs.  The court disagrees.

Spencer's contention that Lockheed had no incentive to uncover documents to support its

defense in this case is conclusory and speculative, and fails to address why he was unable to conduct

a targeted search of the hard drives through the use of key word searches or having UHY provide a

map of the hard drives to assist in the preliminary identification of key words or areas that might

contain relevant information.  With the availability of technology and the capability of e-discovery

vendors today in this area, the court concludes that it was unreasonable for Spencer to simply image

all of the hard drives without at least first considering or attempting a more targeted and focused

extraction.  Also, lack of familiarity with technology in this regard is not an excuse and does not

relieve parties or their attorneys of their duty to ensure that the services performed and fees charged

by third party vendors are reasonable, particularly when recovery of such expenses is sought in

litigation.  The court therefore **overrules** this objection.

### 8.    Project Management Costs

Spencer contends that the magistrate judge erred in determining that he is not entitled to

reimbursement for any of his project management costs totaling $38,514.48.  Based on Boyd's

declaration, Spencer asserts:

> IT management of the electronic database is critical, especially when poor quality
> electronic evidence is produced. All complex cases of this magnitude require
> professional IT support such as that provided by UHY at Spencer's request. The
> playing field would certainly tip towards the wealthier party (FCA wrongdoer) if this
> critical expense is not allowed. It is extremely difficult for small and medium FCA
> firms to finance litigation for years only to deny reimbursement for a major
> participant in the electronic evidence wars which now consume modern complex
> litigation. *See* Boyd Decl. ¶ 7.

Spencer's Obj. 13-14.  Spencer's David and Goliath analogy fails to address Lockheed's objection

to these expenses and the magistrate's stated reasons for not allowing Spencer to recover expenses

for project management costs.  Specifically, the magistrate judge determined:

> There is no description of the services provided, and on many days the hours billed
> were minimal, *e.g.*, 30 minutes to a few hours. Mr. Herman represents that this
> project manager was dedicated solely to this matter and could not substantively

manage any other UHY projects for several periods of time. *Id.* at 9. The records indicate, however, that the project manager worked for relatively short bursts of time on this case and often went many days, sometimes weeks, and once for several months without doing any work on the case at all. *Id.* at 19-21.

Upon review of the parties' arguments and supporting documentation, as well as consideration of the equities, the Court recommends denial of reimbursement for any of these charges. The record does not reflect the need for a project manager dedicated solely to this case. Even if the Court was inclined to award reimbursement for the hourly costs incurred, UHY did not describe any tasks in relation to the hours logged, so the Court cannot determine if the tasks were necessary or even related to the instant case. Similarly, UHY's invoice did not describe the nature of the $3,245.73 in other unspecified costs. (Doc. 399 at 50). Given the burden of proof, Spencer is not entitled to reimbursement of those costs.

Report 20-21. For the reasons stated by the magistrate judge, the court concludes that Spencer is not

entitled to recover these costs. The objection is therefore **overruled**.

### 9.    Sales Tax

Spencer contends that he is:

entitled to sales tax on the amounts of the reductions objected to in the previous paragraphs 1-9. The Magistrate did not recommend disallowing sales taxes on amounts she recommended to be paid. To the extent the District Court declines to adopt all or part of the Magistrate's recommended reductions in Spencer's fee, expense and costs award, sales tax should be added to such additional awards. However, not all of UHY's services were taxable, and taxes should be added to those amounts for which UHY objectively invoiced for sales taxes, in the amount of $40,552.21.

Spencer's Obj. 14. For the reasons already discussed, the court concludes that Spencer's award of

costs should be reduced by $1,650, for sales tax applied to the unchallenged costs, other than the

$20,000 in undisputed ESI extraction costs. The objection is therefore **overruled**.

### 10.    Administrative and Clerical Tasks

Spencer objects to the magistrate judge's determination that: "roughly 22% of the

approximately 600 tasks that the Lockheed Defendants challenge as administrative/clerical in nature

could have been performed by a secretary rather than by personnel who billed $110.00 to $150.00 per hour and that an adjustment is warranted." Spencer's Obj. 14.  Spencer further contends that "a 20% across the board reduction" of the amounts objected to by Lockheed and reduction of his attorneys' fees by $38,073.14" is "unsupported by any fact" and excessive.  *Id.*  In defense of the fees sought, Spencer maintains, based on Boyd's declaration, that "The use of legal assistants at times to perform administrative/clerical tasks while performing their legal assistant duties is more efficient than handing off to administrative staff unfamiliar with the case; this is particularly so when the small firm has no secretaries, as is the case at Boyd & Associates." *Id*. at 14-15.  Spencer asserts that "[b]ecause the finding is unsupported, unfair and undermines the fee shifting policies, the reduction constitutes an abuse of discretion." *Id.* at 15.  The court disagrees that the reduction recommended by the magistrate is unsupported or constitutes an abuse of discretion.  The objection is therefore **overruled**.

### 11.    Costs of Litigation Related to Becker

Spencer objects to the magistrate judge's "reliance on *United States ex rel. Taxpayers Against Fraud v. General Electric Co.*, 41 F.3d 1032, 1046 (6th Cir. 1994), in her finding that 'the litigation that related directly to the sharing agreement involved approximately one-third of the time disputed by the Lockheed Defendants'   prior to June 2011   was not recoverable, and her reduction of Spencer's attorneys' fees by $46,743.88." Spencer's Obj. 15-16.  Spencer contends that there has been no litigation regarding the relator's share in this action and the disputed fees in this case are more similar to those in *Kelley v. Metropolitan County Board of Education*, 773 F.2d 677 (6th Cir. 1985) (en banc), *cert. denied*, 474 U.S. 1083 (1986), a desegregation case "in which the defendant school board was ordered to pay the prevailing plaintiffs not only the attorneys' fees incurred by the

plaintiffs in the course of their desegregation action against the board but also the additional fees incurred by the plaintiffs as a result of extended litigation brought about by third-party intervenors." Spencer's Obj. 16 (quoting *United States ex rel. Taxpayers Against Fraud*, 41 F.3d at 1045-46). Spencer acknowledges that *Kelley* was cited and distinguished by *Taxpayers Against Fraud*.

For the reasons discussed, the court concludes that the magistrate judge's determination that Spencer's fee award should be reduced by $46,743.88 for fees attributable to the relators' fee sharing agreement is correct. As noted previously, the court also concludes that Spencer's fee award should be further reduced by **$74,258** for the attorney's fees incurred in responding to Becker's motions. The objection is therefore **overruled**.

### 12.    Fee Application and Litigation of Fee Award

"Spencer objects to the Magistrate's 30 percent reduction in Spencer's attorneys' fees for preparing his fee application and litigating the fee award, a reduction of $34,713." Spencer contends that the magistrate judge:

> grossly underestimated the tasks involved in preparing seven (7) years of billing records. Counsel had to confirm all of the entries to ensure that they were indeed intended to be for this case and that they were compatible with the timeline of events in this case. Additionally, since such a long time was involved, it was necessary to review records not only of current but also former employees for accuracy, including nine (9) persons for whom fees could be awarded and "FC" (File Clerk), whose entries had to be omitted from the fee request. *See* Boyd Decl. ¶ 10. Surprisingly, Lockheed also complained that counsel did not devote sufficient effort to managing the billing; as such, nothing should be deducted for the required management of the billings.

Spencer's Obj. 15-16. Spencer's objection in this regard pertains to the court's prior discussion regarding the time Spencer billed for reviewing billing entries. For the reasons discussed, the court concludes that the magistrate judge's determination that Spencer's fee award should be reduced by $34,713 is correct. The court therefore **overrules** this objection.

**Memorandum Opinion and Order - Page 49**

### 13.    Reduction for Duplicative Billing

Spencer contends that the magistrate judge erred in determining that two duplicate billing entries for $8,760 and $3,360 should be deducted from his fee about because this would constitute a double reduction.  The court previously addressed Spencer's contention in this regard in addressing Lockheed's objections.  For the reasons explained, the objection is therefore **overruled**.

## V.    Conclusion

Except for the motions to stay, which are reviewed under a different standard, the court has made a de novo review of the portions of the magistrate's findings and conclusion that were objected to by the parties.  After careful consideration of the parties' motions, briefing, evidence, applicable law, the record in this case, and the findings and conclusions of the magistrate judge, the court determines that the findings and conclusions of the magistrate judge are correct **except as herein stated**.  The court determines that the award of expenses and costs should be reduced by $1,650 from that recommended in the Report and that the award of attorney's fees should be reduced by $85,883 from the amount recommended.  The court therefore **sustains in part and overrules as moot in part** Becker's objections made in support of his Jurisdictional Challenge and Motion to Stay; **overrules** Spencer's objections to the Report regarding Spencer's Motion for Attorney's Fees; **sustains in part and overrules in part** Lockheed's objections to the Report regarding Spencer's Motion for Attorney's Fees; and **accepts as modified** the magistrate judge's findings and conclusions as those of the court. Accordingly, the court **denies** Becker's Jurisdictional Challenge (Doc. 341); **denies as moot** Becker's Motion to Stay (Doc. 340) and Lockheed's Motion to Stay (Doc. 353); and **grants** Spencer's Motion for Attorneys' Fees (Doc. 365) to the extent that Spencer

**Memorandum Opinion and Order - Page 50**

be awarded **$1,675,323.28** in attorneys' fees and **$549,280.54** in costs.  Accordingly, Lockheed shall

pay to Spencer the amount of **$1,675,323.28** in attorneys' fees and **$549,280.54** in costs.[17]

      This litigation has become protracted; however, at some point all litigation must come to an

end.  Considerable but scarce judicial resources have been expended.  The court has ruled on the

issue of attorney's fees and does not expect to deal with further to-and-fro between the parties.

Indeed, the Supreme Court has cautioned, "A request for attorney's fees should not result in a second

major litigation."  *Hensley v. Eckerhart*, 461 U.S.424, 437 (1983).  The parties, however, have

ignored this admonition.  **The court reiterates this admonition**.  Accordingly, except for a clerical

error, a matter relating to any supplemental fee request, or an intervening change in the law, the court

is not inclined to discuss or write further on the issue of attorney's fees and costs in this action.  The

parties are aware of their appellate options, which they should exercise if they believe that the court

has ruled contrary to law, but litigation will end at this level.  **In this vein, if any motion is filed for**

**reconsideration or to amend or alter the judgment, and the court finds such motion is without**

**merit or good cause to be lacking, the court will impose monetary sanctions against the**

**offending attorney or party.  The parties are strongly warned not to test the court patience in**

**this regard**.

---

[17] The hourly rate requested by Plaintiff's counsel Samuel Boyd is $600 per hour. The court makes no determination as to the reasonableness of this rate.  Lockheed did not object to the hourly rate, and the court, based upon its experience and familiarity in making fee awards, did not consider it to be necessarily excessive for a person of Mr. Boyd's ability, experience, and years as an attorney; however, the court did not conduct a critical and detailed analysis of the reasonableness of the hourly rate requested rate by Mr. Boyd, and this opinion is not to be used as authority that this court held that an hourly rate of $600 was reasonable for Mr. Boyd.  As previously stated, Lockheed did not object, which was interpreted by the court to mean that it believed the hourly rate was reasonable.

**It is so ordered** this 31st day of March, 2013.

Sam A. Lindsay
United States District Judge